# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LEANNE WITHROW,[1]
*on behalf of herself and all persons similarly*
*situated,*

                *Plaintiff*

    v.

UNITED STATES OF AMERICA,
c/o Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530;

SCOTT KUPOR, in his official capacity as
Director of the Office of Personnel
Management
1900 E St. NW
Washington, DC 20415;

OFFICE OF PERSONNEL MANAGEMENT
1900 E St. NW
Washington, DC 20415;

MICHAEL RIGAS, in his official capacity as
Acting Administrator of the General Services
Administration
1800 F St. NW
Washington, DC 20405;

GENERAL SERVICES ADMINISTRATION
1800 F St. NW
Washington, DC 20405;

ANDREW FOIS, in his official capacity as
Chairman of the Administrative Conference of
the United States
1120 20th St. NW
Suite 706 South
Washington, DC 20036;

Civil Action No. 1:25-4073

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), the Plaintiff's residential address is being filed under
seal with the Court in a separate Notice of Filing.

1

TRAVIS ADKINS, in his official capacity as
Chief Executive Officer of the African
Development Foundation
1400 I Street NW
Suite 1000
Washington, DC 20005-2248;

MARY G. RYAN, in her official capacity as
Administrator of the Alcohol and Tobacco Tax
and Trade Bureau
1310 G Street NW
Box 12
Washington, DC 20005;

PATRICIA A. SOLIMENE, in her official
capacity as Director of the Bureau of
Engraving & Printing
301 14th Street SW
Washington, D.C. 20228;

TIMOTHY GRIBBEN, in his official capacity
as Commissioner of the Bureau of the Fiscal
Service
3201 Pennsy Drive
Building E
Landover, MD 20785;

JOHN RATCLIFFE, in his official capacity as
Director of the Central Intelligence Agency
930 Dolley Madison Blvd.
McLean, VA 22101;

RAHUL VARMA, in his official capacity as
Acting Director of the Commodity Future
Trading Commission
1155 21st Street NW
Washington, DC 20581;

RUSSELL VOUGHT, in his official capacity
as Acting Director of the Consumer Financial
Protection Board
1700 G Street NW
Washington, DC 20552;

PETER A. FELDMAN, in his official capacity
as Acting Chairman of the Consumer Product
Safety Commission
4300 East West Highway
Bethesda, MD 20814;

MICHAEL D. SMITH, in his official capacity
as Chief Executive Officer of the Corporation
for National and Community Service
(AmeriCorps)
250 E. Street SW
Washington, DC 20525;

PATRICIA L. LEE, in her official capacity as
Board Member of the Defense Nuclear
Facilities Safety Board
625 Indiana Ave. NW
Suite 700
Washington, DC 20004;

BROOKE L. ROLLINS, in her official
capacity as Secretary of the Department of
Agriculture
1400 Independence Avenue SW
Washington, DC 20250;

HOWARD LUTNICK, in his official capacity
as Secretary of the Department of Commerce
1401 Constitution Ave. NW
Washington, DC 20230;

PETE HEGSETH, in his official capacity as
Secretary of the Department of Defense
1400 Defense Pentagon,
Washington, DC 20301-1400;

LINDA E. MCMAHON, in her official
capacity as Secretary of the Department of
Education
400 Maryland Avenue SW
Washington, DC 20202;

CHRIS WRIGHT, in his official capacity as
Secretary of the Department of Energy
1000 Independence Avenue SW
Washington, DC 20585;

ROBERT KENNEDY, in his official capacity
as Secretary of the Department of Health and
Human Services
200 Independence Avenue SW
Washington, DC 2021;

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security
Department of Homeland Security
Washington, DC 20528;

SCOTT TURNER, in his official capacity as
Secretary of the Department of Housing and
Urban Development
451 Seventh Street SW
Washington, DC 20410;

DOUG BURGUM, in his official capacity as
Secretary of the Department of Interior
1849 C Street NW
Washington, DC 20240;

PAM BONDI, in her official capacity as
Attorney General of the Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530;

LORI CHAVEZ-DEREMER, in her official
capacity as Secretary of the Department of
Labor
200 Constitution Ave. NW
Washington, DC 20210;

MARCO RUBIO, in his official capacity as
Secretary of the Department of State
2201 C Street NW
Washington, DC 20520;

LOREN J. SCIURBA, in his official capacity
as Deputy Inspector General of the Department
of the Treasury Inspector General
1500 Pennsylvania Avenue NW
Room 4436
Washington, DC 20220;

4

SEAN DUFFY, in his official capacity as
Secretary of the Department of Transportation
1200 New Jersey Avenue, SE
Washington, DC 20590;

DOUGLAS A. COLLINS, in his official
capacity as Secretary of the Department of
Veterans Affairs
810 Vermont Avenue NW
Washington, DC 20420;

LEE ZELDIN, in his official capacity as
Administrator of the Environmental Protection
Agency
1200 Pennsylvania Avenue NW
Washington, DC 20460;

ANDREA R. LUCAS, in his official capacity
as Chair of the Equal Employment
Opportunity Commission
131 M Street NE
Washington, DC 20507;

JOHN JOVANOVIC, in his official capacity
as President and Chairman of the Export-
Import Bank of the United States
811 Vermont Avenue NW
Washington, DC 20571;

JEFFERY HALL, in his official capacity as
Chairman and Chief Executive Officer of the
Farm Credit Administration
1501 Farm Credit Drive
McLean, VA 22102;

BRENDON CARR, in his official capacity as
Chairman of the Federal Communications
Commission
45 L Street NE
Washington, DC 20554;

TRAVIS HILL, in his official capacity as
Acting Chairman of the Federal Deposit
Insurance Corporation
550 17th Street NW
Washington, DC 20429;

SHANA M. BROUSSARD, in her official
capacity as Chair of the Federal Election
Commission
1050 First Street NE
Washington, DC 20463;

COLLEEN DUFFY KIKO, in her official
capacity as Chairman of the Federal Labor
Relations Authority
1400 K St. NW
Washington, DC 20424;

LOUIS E. SOLA, in his official capacity as
Commissioner of the Federal Maritime
Commission
800 North Capitol St. NW
Washington, DC 20573;

ANNA DAVIS, in her official capacity as
General Counsel, Performing the Duties of the
Director of the Federal Mediation and
Conciliation Service
250 E. St. SW
Washington, DC 2027;

MARY LU JORDAN, in her official capacity
as Commissioner of the Federal Mine Safety
and Health Review Commission
1331 Pennsylvania Avenue NW
Suite 520N
Washington, DC 20004;

JEROME H. POWELL, in his official capacity
as Chair of the Federal Reserve System
20th & C Streets NW
Washington, DC 20551;

MICHAEL F. GERBER, in his official
capacity as Chair of the Federal Retirement
Thrift Investment Board
77 K Street NE
Suite 1000
Washington, DC 20002;

ANDREW FERGUSON, in his official
capacity as Chair of the Federal Trade
Commission
600 Pennsylvania Avenue NW
Washington, DC 20436;

ANDREA GACKI, in her official capacity as
Director of the Financial Crimes Enforcement
Network
P.O. Box 39
Vienna, VA 22183;

RODNEY BOYD, in his official capacity as
Adjutant General of the Illinois National
Guard
1301 N. MacArthur Blvd.
Springfield, IL 62702;

EDDY ARRIOLA, in his official capacity as
Board Chair of the Inter-American Foundation
1331 Pennsylvania Ave NW
Suite 1200
Washington, DC 20004;

SCOTT BESSENT, in his official capacity as
Acting Commissioner of the Internal Revenue
Service
1111 Constitution Ave. NW
Washington, DC 20224;

BEN BLACK, in his official capacity as Chief
Executive Officer of the International
Development Finance Corporation
1100 New York Avenue NW
Washington, DC 20527;

HENRY J. KERNER, in his official capacity
as Acting Chairman of the Merit Systems
Protection Board
1615 M St. NW
Washington, DC 20419;

SEAN DUFFY, in his official capacity as
Acting Administrator of the National
Aeronautics and Space Administration
300 Hidden Figures Way SW
Washington, DC 20546;

MARCO RUBIO, in his official capacity as
Acting Archivist of the United States of the
National Archives and Records Administration
700 Pennsylvania Ave. NW
Washington, DC 20408;

WILLIAM SCHARF, in his official capacity
as Chairman of the National Capital Planning
Commission
401 9th St. NW North Lobby
Suite 500
Washington, DC 20004;

KYLE S. HAUPTMAN, in his official
capacity as Chairman of the National Credit
Union Administration
1775 Duke Street
Alexandria, VA 22314;

MICHAEL MCDONALD, in his official
capacity as Acting Chairman of the National
Foundation On The Arts and The Humanities
400 7th Street SW
Washington, DC 20506;

DAVID PROUTY, in his official capacity as
Board Member of the National Labor
Relations Board
1015 Half Street, SE
Washington, DC 20570;

LOREN E. SWEATT, in her official capacity
as Chair of the National Mediation Board
1301 K St. NW
Suite 250 East
Washington, DC 20005;

ROGER HARRIS, in his official capacity as
President of the National Railroad Passenger
Corporation (Amtrak)
1 Massachusetts Ave. NW
Washington, DC 20001;

BRIAN W. STONE, in his official capacity as
Chief of Staff, Performing the duties of the
Director of the National Science Foundation
2415 Eisenhower Ave.
Alexandria, Virginia, 22314;

JENNIFER HOMENDY, in her official
capacity as Chairperson of the National
Transportation Safety Board
490 L'Enfant Plaza SW
Washington, DC 20594;

DAVID A. WRIGHT, in his official capacity
as Chairman of the Nuclear Regulatory
Commission
11555 Rockville Pike
Rockville, Maryland 20852-2738;

JONATHAN L. SNARE, in his official
capacity as Commissioner of the Occupational
Safety and Health Review Commission
1120 20th Street NW 9th Floor
Washington, DC 20036;

ERIC UELAND, in his official capacity as
Acting Director of the Office of Government
Ethics
250 E. Street SW
Suite 750
Washington, DC 20024;

JAMIESON GREER, in his official capacity
as Acting Special Counsel of the Office of
Special Counsel
1730 M Street NW
Suite 218
Washington, DC 20036-4505;

JONATHAN V. GOULD, in his official
capacity as Comptroller of the Office of the
Comptroller of the Currency
400 7th St. SW
Washington, DC 20219;

TULSI GABBARD, in her official capacity as
Director of the Office of the Director of
National Intelligence
Office of the Director of National Intelligence
Washington, DC 20511;

PAUL SHEA, in his official capacity as Chief
Executive Officer of the Peace Corps
1275 First Street NE
Washington, DC 20526;

JANET DHILLON, in her official capacity as
Director of the Pension Benefit Guaranty
Corporation
445 12th Street SW
Washington, DC 20024;

ROBERT G. TAUB, in his official capacity as
Vice Chairman of the Postal Regulatory
Commission
901 New York Ave NW
Suite 200
Washington, DC 20268;

ERHARD R. CHORLÉ, in his official capacity
as Chairman of the Railroad Retirement Board
844 North Rush Street
Chicago, IL 60611;

PAUL S. ATKINS, in his official capacity as
Chair of the Securities and Exchange
Commission
100 F Street NE
Washington, DC 20549;

CRAIG T. BROWN, in his official capacity as
Acting Director of the Selective Service
System
1501 Wilson Blvd.
Arlington, VA 22209-2425;

KELLY LOEFFLER, in her official capacity
as Administrator of the Small Business
Administration
409 3rd St. SW
Washington, DC 20416;

FRANK J. BISIGNANO, in his official
capacity as Commissioner of the Social
Security Administration
6401 Security Blvd.
Baltimore, MD 21235;

DON MOUL, in his official capacity as
President & Chief Executive Officer of the
Tennessee Valley Authority
400 W. Summit Hill Dr.
Knoxville, TN 37902;

THOMAS R. HARDY, in his official capacity
as Acting Director of the Trade and
Development Agency
1101 Wilson Blvd.
Suite 1100
Arlington, VA 22209;

HEATHER M. HILL, in her official capacity
as Acting Inspector General of the Treasury
Inspector General for Tax Administration
901 D Street SW
Suite 600
Washington, D.C. 20024;

KRISTIE MCNALLY, in her official capacity
as Acting Director of the U.S. Mint
801 9th Street NW
Washington, DC 20220;

KARI LAKE , in her official capacity as
Senior Advisor of the United States Agency
for Global Media
330 Independence Ave. SW
Washington, DC 20237;

RUSSELL VOUGHT, in his official capacity
as Acting Administrator of the United States
Agency for International Development
1300 Pennsylvania Ave. NW
Washington, DC 20523;

ROCHELLE GARZA, in her official capacity
as Chair of the United States Commission on
Civil Rights
1331 Pennsylvania Ave. NW
Suite 1150
Washington, DC 20425;

AMY A. KARPEL, in her official capacity as
Chair of the United States International Trade
Commission
500 E Street SW
Washington, DC 20436;

and

DAVID STEINER, in his official capacity as
Postmaster General and Chief Executive
Officer of the United States Postal Service
475 L'Enfant Plaza SW
Washington, DC 20260,

*Defendants.*

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(Employment Discrimination Based on Sex in Violation of Title VII)
(Agency Action Contrary to Law in Violation of the Administrative Procedure Act)
(Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act)

Plaintiff LeAnne Withrow ("Plaintiff" or "Ms. Withrow"), by and through her attorneys, brings this action on her own behalf and on behalf of a class of those similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, and alleges as follows.

## INTRODUCTION

1.      LeAnne Withrow has honorably served her country since 2010. She spent thirteen years as a soldier in the Illinois Army National Guard before retiring in 2023. Since retirement, she has continued her service as a civilian federal government employee in the Illinois National Guard, where she supports servicemembers and their families within the Illinois National Guard, currently as the Lead Military and Family Readiness Specialist at Camp Lincoln in Springfield, Illinois. She has been repeatedly recognized for her outstanding service.

2.      Almost a decade ago, while Ms. Withrow was still a soldier, she came out as a transgender woman in accordance with then-applicable regulations governing gender transition during military service. She continued to serve her country through her transition, with an unwavering commitment to the soldiers, families, and veterans with whom she works.

3.      Like any other employee, Ms. Withrow has to use the restroom at some point during the workday. In Ms. Withrow's own words: "I want to help soldiers, families, veterans—and then I want to go home at the end of the day. At some point in between, I will probably need to use the bathroom."[2]

4.      And until a few months ago, she was able to do so, without issue.

5.       Indeed, for the past decade—through three different administrations—all federal employees have had a recognized legal right to use restrooms at work consistent with their

---

[2] Solcyré Burga, *'Walking On Eggshells': Meet the Trans Woman Fighting Trump's Bathroom Ban,* TIME MAGAZINE, May 9, 2025, https://time.com/7283672/trump-transgender-military-bathroom-ban/ [https://perma.cc/B55V-T7KY].

gender identity pursuant to the U.S. Equal Employment Opportunity Commission (EEOC) decision in *Lusardi v. Department of the Army*.[3] In that 2015 case, the EEOC's Office of Federal Operations held that the Army discriminated against a transgender employee by preventing her from using the same restrooms as other female employees.

6.      Consistent with *Lusardi*, since 2016, the General Services Administration ("GSA"), which is responsible for the management of federal properties, has directed (in guidance published in the Federal Register) that federal agencies occupying space under GSA's jurisdiction, custody, or control must allow individuals to use restrooms consistent with their gender identity.[4]

7.      In 2017, as required by *Lusardi*, the Office of Personnel Management (OPM) directed that "agencies should allow access to restrooms . . . consistent with the employee's gender identity." [5] It reiterated that direction in 2023, instructing all executive agencies that "under Title VII, agencies should allow access to common and single-user restrooms corresponding to an employee's gender identity."[6]

8.      All of that changed during the first few days of President Trump's second Administration. Executive Order 14168 (the "Executive Order" or "EO 14168") titled

---

[3] EEOC Appeal No. 0120133395, 2015 WL 1607756 (Apr. 1, 2015).

[4] Federal Management Regulation: Nondiscrimination Clarification in the Federal Workplace, 81 Fed. Reg. 55148 (Aug. 18, 2016).

[5] U.S. Office of Personnel Management, Guidance Regarding Gender Identity and Inclusion in the Federal Workplace (Jan. 18, 2017), *available at* https://www.nrc.gov/docs/ML1702/ML17023A024.pdf [https://perma.cc/58NK-34FL].

[6] U.S. Office of Personnel Management, Guidance Regarding Gender Identity and Inclusion in the Federal Workplace (Mar. 31, 2023), *available at* https://web.archive.org/web/20240815180906/https://www.opm.gov/policy-data-oversight/diversity-equity-inclusion-and-accessibility/reference-materials/guidance-regarding-gender-identity-and-inclusion-in-the-federal-workplace.pdf [https://perma.cc/T2CU-39TL].

"Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," issued by President Donald J. Trump,[7] directs agencies of the federal government to exclude transgender and intersex people from single-sex spaces that align with their gender identity. It requires these agencies to "tak[e] appropriate action to ensure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity." The Executive Order defines "sex" as "an individual's immutable biological classification as either male or female." The Order then defines those terms using the biologically incoherent standard of whether "a person belong[s], at conception, to the sex that produces" either "the large reproductive cell" (female) or the "small reproductive cell" (male).

9.      This Executive Order was the Administration's first step in its campaign to systematically attack and deny the very existence of transgender people. The same campaign ignores the complexity of "biological sex" and the reality of intersex people--individuals born with bodies that do not fit neatly into simplistic definitions of "male" or "female."

10.     On January 29, 2025, without notice, comment, or deliberation, and ignoring the requirements of Title VII and the EEOC's decision in *Lusardi*, OPM issued a memorandum (the "OPM Memorandum") directing agencies to ensure that restrooms are "designated by biological sex."[8] Because gender identity is not determined by "biological classification as either male or female" as defined in the Executive Order, the effect of the OPM Memorandum was to direct

---

[7] Exec. Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025).

[8] *See* Charles Ezell, *Memorandum Re: Initial Guidance Regarding President Trump's Executive Order* Defending Women, Office of Personnel Management (Jan. 29, 2025), https://www.opm.gov/media/yvlh1r3i/opm-memo-initial-guidance-regarding-trump-executive-order-defending-women-1-29-2025-final.pdf [https://perma.cc/3L6Q-APXT].

agencies across the Executive Branch to deny their employees access to restrooms consistent with their gender identity.

11.    In May 2025, GSA published a Federal Register notice (the "GSA Rescission") withdrawing its 2016 directive that federal agencies using space managed by GSA must allow individuals to use restrooms consistent with their gender identity.[9]

12.    Agencies across the federal government, including the Department of Defense and National Guard Bureau, have implemented the OPM Memorandum, instating policies that prohibit transgender and intersex federal employees from using restrooms consistent with their gender identity.

13.    Before the OPM Memorandum and its implementation across the Executive Branch, Ms. Withrow used the women's restrooms at her workplace, other federal buildings, and other National Guard facilities. No one raised any concerns. Other transgender employees and intersex employees of the United States government likewise used restrooms consistent with their gender identity without incident before the OPM Memorandum and its implementation across the federal government.

14.    Now, most days when she goes to work, Ms. Withrow plans ahead to minimize her need to use the restroom during her workday. She starves herself—skipping breakfast almost every day and generally lunch as well. When she eats lunch, it is usually a granola bar or a spoonful of peanut butter, except on special occasions or when she can be reasonably certain she

---

[9] Federal Management Regulation; Nondiscrimination Clarification in the Federal Workplace; Rescission, General Services Administration, 90 Fed. Reg, 19658 (May 9, 2025); *see also* Federal Management Regulation; Nondiscrimination Clarification in the Federal Workplace, General Services Administration, 81 Fed. Reg. 55148 (Aug. 18, 2016); Federal Management Regulation; Nondiscrimination Clarification in the Federal Workplace; Correction, General Services Administration, 81 Fed. Reg. 63134 (Sept. 14, 2016).

will not be required to leave her building for any extended period. And she dehydrates herself—most days drinking a single cup of coffee and drinking as little water as possible.

15.     There is only one single-user restroom she can use at work. Meanwhile, none of the other buildings at Camp Lincoln have any restrooms she can use, and she is constantly worried that she will be called into an urgent meeting in one of those buildings. Of the twelve National Guard facilities that she must visit to supervise the work of other department employees, eight do not have any single-user restrooms. One such facility is more than six miles from the nearest town. That means a trip to use the restroom — which requires exiting a secure gate, traveling across the installation, into town, into a private business to use the restroom, and then back again—requires at least a 45 minute round trip.

16.     The disparate treatment of transgender and intersex employees constitutes discrimination in terms and conditions of employment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII).

17.     The issuance of the OPM Memorandum and the withdrawal of prior GSA directives regarding access to restrooms are final agency actions that are arbitrary and capricious in violation of the Administrative Procedure Act (APA), including because each agency failed to account for federal employees' reliance interests and failed to consider existing federal standards. 5 U.S.C. § 706(2)(A). Each action also violates the APA because it is contrary to law, including Title VII.

18.     Ms. Withrow and members of the Class seek declaratory and injunctive relief to set aside the unlawful actions of Defendants, remediate violations of their civil rights, and allow them to use restroom facilities consistent with their gender identity.

## JURISDICTION AND VENUE

19.    Ms. Withrow brings this suit under Title VII and the Administrative Procedure Act. The Court has federal question jurisdiction over this action under 28 U.S.C. § 1331. The Court has jurisdiction to review final agency actions under 5 U.S.C. § 702.

20.    An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant the relief requested pursuant to 28 U.S.C. §§ 2201-2202; 5 U.S.C. §§ 702, 703, 705, and 706; and Federal Rules of Civil Procedure 57 and 65.

21.    Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because this is a "judicial district in the State in which the unlawful employment practice is alleged to have been committed." Venue is also proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(A) because Defendants are the United States, agencies of the United States, and officers or employees of those federal agencies who are sued in their official capacity, and at least one Defendant is headquartered in the District of Columbia. Further, a substantial part of the events or omissions giving rise to Ms. Withrow's claims occurred in the District. *See* 28 U.S.C. § 1391(e)(1)(B).

## ADMINISTRATIVE EXHAUSTION

22.    Ms. Withrow filed a class complaint of discrimination on May 5, 2025 with the National Guard Bureau's Illinois National Guard Equal Opportunity Office, the Office of the Secretary of Defense Office of Equal Employment Opportunity Programs, and the U.S. Office of Personnel Management Equal Employment Opportunity Office. On May 8, 2025, the National Guard Bureau transmitted the complaint to the U.S. Equal Employment Opportunity Commission (EEOC), which issued an Acknowledgement Order on July 9, 2025. The class complaint included Title VII claims on behalf of Ms. Withrow and a putative class of all transgender and intersex federal employees who have been prohibited from utilizing restrooms

consistent with their gender. More than 180 days have elapsed since that filing, which satisfies the requirement for exhaustion of administrative remedies under Title VII. 42 U.S.C. § 2000e-16(c).

23.     The filing transmitted to the EEOC also asserted claims under the Administrative Procedure Act and therefore satisfies the requirement for exhaustion of administrative remedies under the Civil Service Reform Act (CSRA), Pub. L. No. 95-454, 92 Stat. 1111.

**PARTIES**

**A.     Plaintiff**

24.     Plaintiff LeAnne Withrow is a transgender woman who has served her country in various capacities since 2010, when she first joined the Illinois National Guard. Ms. Withrow rose to the rank of staff sergeant and served as a Chief Public Affairs Noncommissioned Officer. Throughout her military career, Ms. Withrow participated in many major exercises and prominent events around the globe including the 2012 NATO Conference, Operation Ulchi Freedom Guardian 13, Operation Ready Response, Exercises Eager Lion 19, Arctic Eagle 20, and Arctic Eagle-Patriot 22, as well as deploying to Guantanamo Bay, Cuba, in support of Operation Enduring Freedom and Joint Task Force Honor 2015-2016.

25.     Ms. Withrow garnered numerous awards for exemplary military service to her country. Her military decorations include the Meritorious Service Medal, "awarded for outstanding achievement or meritorious service to the United States."[10] She has also received an Army Commendation Medal, Joint Meritorious Unit Award, Army Achievement Medal with two Oak Leaf Clusters, Army Reserve Component Achievement Medal with three Oak Leaf Clusters,

---

[10] Exec. Order 11488, *Establishing the Meritorious Service Medal*, 34 Fed. Reg. 915 (Jan. 16, 1969).

National Defense Service Medal, Global War On Terrorism Expeditionary Medal, Global War on

Terrorism Service Medal, Armed Forces Reserve Medal with Bronze Hourglass and M Device,

and Illinois National Guard Abraham Lincoln Medal of Freedom.

26.     Ms. Withrow came out as transgender in 2016 shortly after President Obama

lifted the previous ban on transgender military service members. She became the first openly

transgender Illinois National Guard soldier, and in November 2019, the Department of Defense

database on military personnel (Defense Enrollment Eligibility Reporting System (DEERS)) was

updated to correctly reflect her sex as female.

27.     Ms. Withrow retired from military service in the Illinois National Guard in 2023.

Since August 2016, she has continued her service to her country as a civilian federal employee of

the Illinois National Guard, part of the National Guard Bureau of the Department of Defense.

28.     Ms. Withrow's civilian employment with the Illinois National Guard has included

service as an Equal Employment Opportunity Specialist and as a Family Programs Specialist.

She currently serves as the Title 5 Lead Military and Family Readiness Specialist at Camp

Lincoln, Springfield, Illinois, a position she has held since September 2021.

29.     Ms. Withrow has been recognized for her outstanding performance in these

civilian roles, receiving a Sustained Superior Performance commendation from the Adjutant

General of the Illinois National Guard in 2019 and another Superior Performance commendation

from the Adjutant General in 2022.

**B.      Defendants**

**1.      The Title VII Defendants**

30.     Defendant United States of America includes all federal government agencies and

departments responsible for the implementation of agency-specific policies mandated by the

Executive Order and OPM Memorandum. Pursuant to 10 U.S.C. § 10508(b)(3)(C), the United

States is the proper defendant in a civil action brought by a civilian employee of the National

Guard following a complaint of discrimination filed with the EEOC.

31.    Defendant Andrew Fois is the Chairman of the Administrative Conference of the

United States. He is sued in his official capacity.

32.    Defendant Travis Adkins is the Chief Executive Officer of the African

Development Foundation. He is sued in his official capacity.

33.    Defendant Mary G. Ryan is the Administrator of the Alcohol and Tobacco Tax and

Trade Bureau. She is sued in her official capacity.

34.    Defendant Patricia A. Solimene is the Director of the Bureau of Engraving &

Printing . She is sued in her official capacity.

35.    Defendant Timothy Gribben is the Commissioner of the Bureau of the Fiscal

Service. He is sued in his official capacity.

36.    Defendant John Ratcliffe is the Director of the Central Intelligence Agency. He is

sued in his official capacity.

37.    Defendant Rahul Varma is the Acting Director of the Commodity Future Trading

Commission. He is sued in his official capacity.

38.    Defendant Russell Vought is the Acting Director of the Consumer Financial

Protection Board. He is sued in his official capacity.

39.    Defendant Peter A. Feldman is the Acting Chairman of the Consumer Product

Safety Commission. He is sued in his official capacity.

40.    Defendant Michael D. Smith is the Chief Executive Officer of the Corporation for

National and Community Service (AmeriCorps). He is sued in his official capacity.

41.     Defendant Patricia L. Lee is the Board Member of the Defense Nuclear Facilities Safety Board. She is sued in her official capacity.

42.     Defendant Brooke L. Rollins is the Secretary of the Department of Agriculture. She is sued in her official capacity.

43.     Defendant Howard Lutnick is the Secretary of the Department of Commerce. He is sued in his official capacity.

44.     Defendant Pete Hegseth is the Secretary of the Department of Defense. He is sued in his official capacity.

45.     Defendant Linda E. McMahon is the Secretary of the Department of Education. She is sued in her official capacity.

46.     Defendant Chris Wright is the Secretary of the Department of Energy. He is sued in his official capacity.

47.     Defendant Robert Kennedy is the Secretary of the Department of Health and Human Services. He is sued in his official capacity.

48.     Defendant Kristi Noem is the Secretary of the Department of Homeland Security. She is sued in her official capacity.

49.     Defendant Scott Turner is the Secretary of the Department of Housing and Urban Development. He is sued in his official capacity.

50.     Defendant Doug Burgum is the Secretary of the Department of Interior. He is sued in his official capacity.

51.     Defendant Pam Bondi is the Attorney General of the Department of Justice. She is sued in her official capacity.

52.    Defendant Lori Chavez-DeRemer is the Secretary of the Department of Labor. She is sued in her official capacity.

53.    Defendant Marco Rubio is the Secretary of the Department of State. He is sued in his official capacity.

54.    Defendant Loren J. Sciurba is the Deputy Inspector General of the Department of the Treasury Inspector General. He is sued in his official capacity.

55.    Defendant Sean Duffy is the Secretary of the Department of Transportation. He is sued in his official capacity.

56.    Defendant Douglas A. Collins is the Secretary of the Department of Veterans Affairs. He is sued in his official capacity.

57.    Defendant Lee Zeldin is the Administrator of the Environmental Protection Agency. He is sued in his official capacity.

58.    Defendant Andrea R. Lucas is the Chair of the Equal Employment Opportunity Commission. He is sued in his official capacity.

59.    Defendant John Jovanovic is the President and Chairman of the Export-Import Bank of the United States. He is sued in his official capacity.

60.    Defendant Jeffery Hall is the Chairman and Chief Executive Officer of the Farm Credit Administration. He is sued in his official capacity.

61.    Defendant Brendon Carr is the Chairman of the Federal Communications Commission. He is sued in his official capacity.

62.    Defendant Travis Hill is the Acting Chairman of the Federal Deposit Insurance Corporation. He is sued in his official capacity.

63.     Defendant Shana M. Broussard is the Chair of the Federal Election Commission. She is sued in her official capacity.

64.     Defendant Colleen Duffy Kiko is the Chairman of the Federal Labor Relations Authority. She is sued in her official capacity.

65.     Defendant Louis E. Sola is the Commissioner of the Federal Maritime Commission. He is sued in his official capacity.

66.     Defendant Anna Davis is the General Counsel, Performing the Duties of the Director of the Federal Mediation and Conciliation Service. She is sued in her official capacity.

67.     Defendant Mary Lu Jordan is the Commissioner of the Federal Mine Safety and Health Review Commission. She is sued in her official capacity.

68.     Defendant Jerome H. Powell is the Chair of the Federal Reserve System. He is sued in his official capacity.

69.     Defendant Michael F. Gerber is the Chair of the Federal Retirement Thrift Investment Board. He is sued in his official capacity.

70.     Defendant Andrew Ferguson is the Chair of the Federal Trade Commission. He is sued in his official capacity.

71.     Defendant Andrea Gacki is the Director of the Financial Crimes Enforcement Network. She is sued in her official capacity.

72.     Defendant Michael Rigas is the Acting Administrator of the General Services Administration. He is sued in his official capacity.

73.     Defendant Rodney Boyd is the Adjutant General of the Illinois National Guard. He is sued in his official capacity.

74.     Defendant Eddy Arriola is the Board Chair of the Inter-American Foundation. She is sued in his official capacity.

75.     Defendant Scott Bessent is the Acting Commissioner of the Internal Revenue Service. He is sued in his official capacity.

76.     Defendant Ben Black is the Chief Executive Officer of the International Development Finance Corporation. He is sued in his official capacity.

77.     Defendant Henry J. Kerner is the Acting Chairman of the Merit Systems Protection Board. He is sued in his official capacity.

78.     Defendant Sean Duffy is the Acting Administrator of the National Aeronautics and Space Administration. He is sued in his official capacity.

79.     Defendant Marco Rubio is the Acting Archivist of the United States of the National Archives and Records Administration. She is sued in her official capacity.

80.     Defendant William Scharf is the Chairman of the National Capital Planning Commission. He is sued in his official capacity.

81.     Defendant Kyle S. Hauptman is the Chairman of the National Credit Union Administration. He is sued in his official capacity.

82.     Defendant Michael McDonald is the Acting Chairman of the National Foundation On The Arts and The Humanities. He is sued in his official capacity.

83.     Defendant David Prouty is the Board Member of the National Labor Relations Board. He is sued in his official capacity.

84.     Defendant Loren E. Sweatt is the Chair of the National Mediation Board. She is sued in her official capacity.

85.    Defendant Roger Harris is the President of the National Railroad Passenger Corporation (Amtrak). He is sued in his official capacity.

86.    Defendant Brian W. Stone is the Chief of Staff, Performing the duties of the Director of the National Science Foundation. He is sued in his official capacity.

87.    Defendant Jennifer Homendy is the Chairperson of the National Transportation Safety Board. She is sued in her official capacity.

88.    Defendant David A. Wright is the Chairman of the Nuclear Regulatory Commission. He is sued in his official capacity.

89.    Defendant Jonathan L. Snare is the Commissioner of the Occupational Safety and Health Review Commission. He is sued in his official capacity.

90.    Defendant Eric Ueland is the Acting Director of the Office of Government Ethics. He is sued in his official capacity.

91.    Defendant Scott Kupor is the Director of the Office of Personnel Management. He is sued in his official capacity.

92.    Defendant Jamieson Greer is the Acting Special Counsel of the Office of Special Counsel. He is sued in his official capacity.

93.    Defendant Jonathan V. Gould is the Comptroller of the Office of the Comptroller of the Currency. He is sued in his official capacity.

94.    Defendant Tulsi Gabbard is the Director of the Office of the Director of National Intelligence. She is sued in her official capacity.

95.    Defendant Paul Shea is the Chief Executive Officer of the Peace Corps. He is sued in his official capacity.

96.     Defendant Janet Dhillon is the Director of the Pension Benefit Guaranty Corporation. She is sued in her official capacity.

97.     Defendant Robert G. Taub is the Vice Chairman of the Postal Regulatory Commission. He is sued in his official capacity.

98.     Defendant Erhard R. Chorlé is the Chairman of the Railroad Retirement Board. He is sued in his official capacity.

99.     Defendant Paul S. Atkins is the Chair of the Securities and Exchange Commission. He is sued in his official capacity.

100.    Defendant Craig T. Brown is the Acting Director of the Selective Service System. He is sued in his official capacity.

101.    Defendant Kelly Loeffler is the Administrator of the Small Business Administration. She is sued in her official capacity.

102.    Defendant Frank J. Bisignano is the Commissioner of the Social Security Administration. He is sued in his official capacity.

103.    Defendant Don Moul is the President & Chief Executive Officer of the Tennessee Valley Authority. He is sued in his official capacity.

104.    Defendant Thomas R. Hardy is the Acting Director of the Trade and Development Agency. He is sued in his official capacity.

105.    Defendant Heather M. Hill is the Acting Inspector General of the Treasury Inspector General for Tax Administration. She is sued in her official capacity.

106.    Defendant Kristie McNally is the Acting Director of the U.S. Mint. She is sued in her official capacity.

107.    Defendant Kari Lake is the Senior Advisor of the United States Agency for Global Media. She is sued in her official capacity.

108.    Defendant Russell Vought is the Acting Administrator of the United States Agency for International Development. He is sued in his official capacity.

109.    Defendant Rochelle Garza is the Chair of the United States Commission on Civil Rights. She is sued in her official capacity.

110.    Defendant Amy A. Karpel is the Chair of the United States International Trade Commission. She is sued in her official capacity.

111.    Defendant David Steiner is the Postmaster General and Chief Executive Officer of the United States Postal Service. He is sued in his official capacity.

112.    The Defendants identified in Paragraphs 30 to 111 and the United States are collectively referred to as the "Title VII Defendants." Defendants Rigas and Kupor are Title VII Defendants only with respect to claims brought on behalf of class members that are employees of the Office of Personnel Management or the General Services Administration.

**2.    The APA Defendants**

113.    Defendant Scott Kupor is the Director of the U.S. Office of Personnel Management. He is sued in his official capacity.

114.    Defendant the U.S. Office of Personnel Management is a federal agency that serves as the chief human resources agency and personnel policy manager for the federal government.

115.    Defendant Michael Rigas is the Acting Administrator of the General Services Administration. He is sued in his official capacity.

116.    Defendant U.S. General Services Administration is responsible for the management of federal property.

117.    Defendants Kupor, U.S. Office of Personnel Management, Rigas, U.S. General Services Administration, and the United States are collectively referred to as the "APA Defendants."

## FACTUAL ALLEGATIONS

118.    Transgender and intersex people have long served their country as employees of the federal government. And like many transgender and intersex people, transgender and intersex federal employees have far too often encountered discrimination and hostility in their places of work. The challenged policies that restrict federal employee bathroom use are recent forms of such discrimination.

119.    Transgender and intersex federal employees are harmed by the Defendants' efforts to restrict the bathroom use of federal government employees based on so-called "biological sex."

**A.    Background on Gender Identity and Transgender and Intersex People**

**1.    Gender Identity and Biological Aspects of Sex.**

120.    "Sex assigned at birth" refers to the designation of sex generally noted on a person's birth certificate shortly after birth, almost always based on the appearance of an infant's external genitalia. The term "biological sex" is less precise than "sex assigned at birth" because it does not account for variations among the different biological components of sex within a particular person, which include not only gender identity, but also chromosomes, gonads (glands that produce hormones and gametes), other anatomy (internal and external reproductive parts), and secondary sex characteristics.

121.    Gender identity is a person's fundamental, internal sense of themselves as belonging to a particular gender. There is a medical consensus that gender identity cannot be consciously changed or "turned off" and that efforts to change a person's gender identity are

29

unethical and harmful to a person's health and well-being. Although the precise etiology of

gender identity is not fully known, there is a scientific consensus that gender identity has

biological roots.

122.    A transgender person is someone who has a gender identity that differs from their

sex assigned at birth. A transgender woman has a female gender identity but was designated as

male at birth. A transgender man has a male gender identity but was designated female at birth.

123.    An intersex person (sometimes referred to as a person with "differences of sexual

development") is someone born with a combination of sex characteristics, including

chromosome patterns, hormone production or response, internal reproductive organs, or external

genitalia, that do not fit typical binary notions of male or female bodies. Intersex variations

differ; some intersex traits may be discovered at birth, some may not be discovered until puberty,

and some may never be discovered. Some intersex variations cause intersex people to produce

neither sperm nor ova, or produce one or the other, but have external genitalia typically

associated with a different sex.

124.    Most intersex people are assigned a binary sex designation at birth based on

external genitalia. Some intersex people have a gender identity that matches their sex assigned at

birth, while others do not. For this reason, some intersex people may identify as transgender in

addition to being intersex.

125.    Because of such variations in sex characteristics, the "biological sex" of an

intersex person may not be easily categorized as either "male" or "female."

126.    The various components of "biological sex" may similarly diverge for transgender

individuals. For example, in addition to having a gender identity that is incongruent with their

sex assigned at birth, a transgender person who receives gender-affirming medical care may have

some biological characteristics consistent with their sex assigned birth but have other sex characteristics that align with their gender identity.

127.    According to an August 2025 report by the Williams Institute at UCLA based on survey data, 2.8 million Americans, or 1.0% of all American over the age of 13 (and 0.8% of those over the age of 18), identify as transgender.[11]

128.    According to estimates by the United Nations, between 0.05% and 1.7% of the population is born with intersex traits—meaning there are potentially as many as 5.6 million intersex people in the United States.[12]

129.    The Executive Order and OPM Memoranda adopt a definition of sex that precludes transgender people and people with certain intersex conditions from being recognized consistent with their gender identity. The Executive Order defines "sex" as "an individual's immutable biological classification as either male or female." § 2(a). The Order then defines those terms using the biologically incoherent standard of whether "a person belong[s], at conception, to the sex that produces" either "the large reproductive cell" (female) or the "small reproductive cell" (male). §§ 2(d) & (e).

130.    As part of its implementation of the Executive Order, the OPM Memorandum uses the term "biological sex," which echoes the terminology of the Executive Order, and directs

---

[11] Jody Herman et al., *How Many Adults and Youth Identify as Transgender in the United States?*, Williams Institute, UCLA School of Law 1 (2025), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Pop-Update-Aug-2025.pdf [https://perma.cc/6PP4-2P7U].

[12] United Nations Free & Equal, *Intersex People*, Office of the United Nations High Commissioner for Human Rights 1 (September 2025), https://www.unfe.org/sites/default/files/download/Intersex%20factsheet%202025%20-%20EN.pdf [https://perma.cc/DF96-YUZB].

that restrooms at "[f]ederal worksites designated for women, girls, or females (or for men, boys, or males)" must be "designated by biological sex and not gender identity."

131.    "Biological sex" as defined by the Executive Order and used in the OPM Memorandum do not acknowledge or account for the existence of transgender and intersex people. With respect to transgender people, the Executive Order and OPM Memorandum inaccurately assert that "gender identity" is "disconnected from biology reality" and "does not provide a meaningful basis for identification." With respect to intersex people, the Executive Order and OPM Memorandum wrongly assume that all persons belong to a sex that produces either a "large reproductive cell" or a "small reproductive cell" *at conception*. This is scientifically incorrect.

**2.    The Importance of Transgender and Intersex Individuals Being Able To Use Restrooms Consistent with Their Gender Identity.**

132.    Gender dysphoria is a medically recognized condition defined by a marked incongruence between a person's gender identity and the sex they were assigned at birth.

133.    The recognized standard of care for gender dysphoria, supported by all major medical associations and reflecting the professional consensus, includes as a component social affirmation; thus, treatment for gender dysphoria typically includes living one's life consistently with one's gender identity, including using restrooms that reflect one's gender identity.

134.    The American Medical Association (AMA) has concluded: "Evidence confirms that policies excluding transgender individuals from facilities consistent with their gender identity have detrimental effects on the health, safety and well-being of those individuals."[13]

---

[13] American Medical Ass'n, Issue Brief: Transgender Individuals' Access to Public Facilities (2025), https://www.ama-assn.org/system/files/transgender-public-facilities-issue-brief.pdf [https://perma.cc/8CWN-9Z8A] (citing E.g. Lance Weinhardt et al., *Transgender and Gender Nonconforming Youths' Public Facilities Use and Psychological Well-Being: A Mixed-Method Study*, 2 Transgender Health 1, 140-50 (Oct. 2017); Kristie Seelman, *Transgender Adults' Access*

135.    The AMA also notes that excluding transgender individuals from facilities consistent with their gender identity can "undermine well-established treatment protocols for gender dysphoria, expose these individuals to stigma and discrimination as well as potential harassment and abuse and impair their social and emotional development, leading to poorer health outcomes throughout life."[14]

136.    When transgender women and men attempt to use a restroom that aligns with a "biological classification as either male or female" as defined by the Executive Order (*i.e.*, the restroom that does *not* align with their gender identity), they are more likely to be verbally harassed for doing so, or even blocked from accessing the facility because they are perceived as being in the "wrong restroom".[15] Ms. Withrow is a woman, dresses like a woman, and is perceived as a woman by people who interact with her. Individuals seeing her enter the men's restroom might try to prevent her from doing so or physically harm her, as has happened to other transgender people.

137.    Preventing transgender individuals from accessing restrooms consistent with their gender identity can affect their physical health. Nearly one-third of transgender people, like Ms. Withrow, report that they limited the amount they ate or drank at least once in the previous year so they did not need to use a public restroom. Fifty-four percent of transgender individuals

---

to College Bathrooms and Housing and the Relationship to Suicidality*, 63 J. Homosexuality 10, 1378-99 (Feb. 2016); Carolyn Port et al., *"Kicked out": LGBTQ youths' bathroom experiences and preferences*, 56 J. Adolescence 107-12 (Apr. 2017)).

[14] *Id.* (citing Jody Herman, *Gendered Restrooms and Minority Stress: The Public Regulation of Gender and its Impact on Transgender People's Lives*, 19 J. Pub. Mgmt. & Soc. Pol'y 1, 65-80 (2013); Am. Psychoanalytic Ass'n, Position Statement on Attempts to Change Sexual Orientation, Gender Identity, or Gender Expression (2012)).

[15] Jody Herman et al., *Safety and Privacy in Public Restrooms and Other Gendered Facilities*, Williams Institute, UCLA School of Law 1 (2025), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Bathroom-Access-Feb-2025.pdf [https://perma.cc/G6H9-T3WK].

have reported physical problems from avoiding restrooms at work or in public, including dehydration and continence issues. Eight percent of transgender individuals reported having a kidney or urinary tract infection, or another kidney-related medical issue, because they avoided restrooms.[16]

138.    There is no credible evidence that allowing transgender people access to restrooms aligning with their gender identity jeopardizes the safety or privacy of non-transgender users of those restrooms.[17] Academic scholarship confirms that "fears of increased safety and privacy violations" are not empirically grounded.[18]

139.    Intersex individuals whose gender identity does not align with their "biological classification as either male or female" as defined in the Executive Order and their "biological sex" as the term is used in the OPM Memorandum suffer the same harms to their physical and mental health as transgender individuals when prevented from using restrooms that align with their gender identity.

---

[16] *Id.* (citing Sandy James, Jody Herman, et al., Nat'l Ctr. Transgender Equality, The Report of the 2015 U.S. Transgender Survey (Dec. 2016); Jody Herman, Gendered Restrooms and Minority Stress: The Public Regulation of Gender and its Impact on Transgender People's Lives, 19 J. Pub. Mgmt. & Soc. Pol'y 1, 65-80 (2013).

[17] *Id* at 1.

[18] Amira Hasenbush et al., *Gender Identity Nondiscrimination Laws in Public Accommodations: A Review of Evidence Regarding Safety and Privacy in Public Restrooms, Locker Rooms, and Changing Rooms*, 16 Sexuality Rsch. & Soc. Pol'y 70, 81 (2018), https://escholarship.org/content/qt4rs4n6h0/qt4rs4n6h0_noSplash_8740e92d7f24b6c89dbd4bd4d27fbbcb.pdf https://escholarship.org/content/qt4rs4n6h0/qt4rs4n6h0_noSplash_8740e92d7f24b6c89dbd4bd4d27fbbcb.pdf [https://perma.cc/U52D-W7NC].

**B.    Transgender and Intersex Federal Employees' Access to Restroom Facilities Before the Executive Order**

140.    In 2012, in *Macy* v. *Dep't of Justice*,[19] the Equal Employment Opportunity Commission recognized that discrimination based on transgender status is sex discrimination in violation of Title VII. And in 2015, in *Lusardi* v. *Dep't of the Army*,[20] the EEOC's Office of Federal Operations ruled that denying an employee access to a common restroom consistent with the employee's gender identity is sex discrimination.

141.    Decisions issued by the EEOC's Office of Federal Operations are binding on the federal government. When the EEOC rules against a federal employee, the employee may pursue litigation in federal court. But when the EEOC rules against the federal government, that decision is binding and cannot be further appealed. Since it was issued in 2015, the *Lusardi* decision has protected the ability of all transgender federal employees to use restroom facilities consistent with their gender identity.

142.    The Department of Justice, which enforced Title VII against state and local governments, likewise recognized in 2014 that discrimination against transgender individuals constitutes sex discrimination.[21]

143.    On August 8, 2016, GSA, which is responsible for the management of federal properties, issued GSA Bulletin 2016-B, Nondiscrimination Clarification in the Federal Workplace, to the heads of all federal agencies, and published the Bulletin in the Federal Register. Consistent with the EEOC's decision in *Lusardi* and DOJ interpretations of Title VII,

---

[19] EEOC Appeal No. 0120120821, 2012 WL 1435995 (Apr. 12, 2012).

[20] EEOC Appeal No. 0120133395, 2015 WL 1607756 (Mar. 27, 2015).

[21] U.S. Dep't of Justice, Treatment of Transgender Employment Discrimination Claims (Dec. 15, 2014), https://www.justice.gov/file/188671/download [https://perma.cc/AQW3-X6B7].

GSA recognized that "the prohibition against sex discrimination in the Federal Management Regulation [41 CFR part 102-74, section 102-74.445] also prohibits discrimination due to gender identity, which includes discrimination based on an individual's transgender status."[22]

144.    The GSA directive specifically addressed access to restroom facilities, requiring that transgender federal employees be permitted to use a restroom consistent with their gender identity and informing agencies operating in GSA buildings that transgender employees could not be forced to use single-occupancy restrooms:

> Federal agencies occupying space under the jurisdiction, custody, or control of GSA must allow individuals to use restroom facilities and related areas consistent with their gender identity. As consistent with guidance by DOJ and ED, the self-identification of gender identity by any individual is sufficient to establish which restroom or other single-sex facilities should be used. As noted by ED, EEOC, DOJ and OPM, transgender individuals do not have to be undergoing or have completed any medical procedure, nor can they be required to show proof of surgery to be treated in accordance with their gender identity and obtain access to the restroom corresponding with their gender identity. Further, Federal agencies may not restrict only transgender individuals to only use single-occupancy restrooms, such as family or accessible facilities open to all genders. However, Federal agencies may make individual-user options available to all individuals who voluntarily seek additional privacy.[23]

145.    The GSA directive remained in place throughout the first Trump Administration and through the Biden Administration.

---

[22] Federal Management Regulation: Nondiscrimination Clarification in the Federal Workplace, 81 Fed. Reg. 55148 (Aug. 18, 2016).

[23] *Id.*

146.    In 2017, OPM issued *Guidance Regarding the Employment of Transgender Individuals in the Federal Workplace*, which, as required by *Lusardi*, directed that agencies must allow employees to use restrooms "consistent with the employee's gender identity."[24]

147.    In 2023, in light of the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), which held that Title VII's prohibition on sex discrimination includes discrimination on the basis of gender identity and sexual orientation, OPM updated its *Guidance Regarding the Employment of Transgender Individuals in the Federal Workplace*. OPM directed agencies to "revise and implement their policies, practices, and any associated trainings so that they afford a non-discriminatory and inclusive work environment to applicants and employees irrespective of their sex, gender identity, gender expression, or sexual orientation, consistent with current law and executive policy."[25] The OPM's 2023 directive stated:

> As the EEOC has explained, under Title VII, agencies should allow access to common and single-user restrooms and other facilities corresponding to an employee's gender identity. Agencies should not condition this access on an employee having undergone or providing proof of any gender affirming surgeries or other medical procedures. Agencies should not limit an employee to use facilities that are located at an unreasonable distance from the employee's work station, or inconsistent with the employee's gender identity. Agencies should not restrict any employee to a single-user facility instead of common facilities; agencies can, however, make a single-user facility available to all employees who might choose to use it.[26]

---

[24] U.S. Office of Personnel Management, Guidance Regarding Gender Identity and Inclusion in the Federal Workplace (Jan. 18, 2017), *available at* https://www.nrc.gov/docs/ML1702/ML17023A024.pdf [https://perma.cc/58NK-34FL].

[25] U.S. Office of Personnel Management, Guidance Regarding Gender Identity and Inclusion in the Federal Workplace (Mar. 31, 2023), *available at* https://www.govinfo.gov/content/pkg/GOVPUB-PM-PURL-gpo158848/pdf/GOVPUB-PM-PURL-gpo158848.pdf [https://perma.cc/T2CU-39TL].

[26] *Id.*

148.    Notwithstanding the subsequent fearmongering of this second Trump

Administration, the prior directives did not lead to attacks on the "dignity, safety, and well-

being"[27] of others. Defendants have never claimed—and upon information and belief there is no

evidence—that implementation of and compliance with *Lusardi*, the 2016 GSA policy, or the

2017 and 2023 OPM guidance resulted in any interference with effective and efficient

government operations or any harm to non-transgender or non-intersex employees who shared

restrooms with their transgender or intersex colleagues.

**C.    President Trump's Executive Order**

149.    Donald J. Trump issued the Executive Order on January 20, 2025, the day he was

inaugurated for the second time as President of the United States.

150.    The stated purpose of the Executive Order was to protect women from "men

[who] self-identify as women . . . gain[ing] access to intimate single-sex spaces and activities

designed for women," which the Executive Order says "fundamentally attack[s] women by

depriving them of their dignity, safety, and well-being." The Executive Order sets forth a

biologically incoherent definition of sex, linking it to an individual's production, at conception,

of large or small reproductive cells. The Executive Order rejects the existence of gender identity

altogether, let alone the possibility that someone's gender identity can differ from their sex.

§ 2(a)-(f). In doing so, it rejects medical consensus and science.

151.    The Executive Order adopts a fringe, unscientific term to refer to an incongruence

between gender identity and sex, describing it as a "false" "inchoate social concept." It bans the

United States from funding or even using language that "inculcates gender ideology." *Id*. §§ 2(f),

3(e).

---

[27] EO 14168, at § 1.

152.    The Executive Order fails to acknowledge the scientific reality that sex consists of multiple factors and that individuals may be born with variations in their sex characteristics.

153.    Section 4(d) of the Executive Order provides that agencies of the federal government must "tak[e] appropriate action to ensure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity."

154.    Days later, President Trump issued a barrage of other orders targeting transgender people. One bans transgender people from serving in the military and states that being transgender "conflicts with a soldier's commitment to an honorable, truthful, and disciplined lifestyle, even in one's personal life." As justification, the order declares that "expressing a false 'gender identity' divergent from an individual's sex cannot satisfy the rigorous standards necessary for military service" and "is not consistent with the humility and selflessness required of a service member."[28] Another order directs the immediate defunding of medical institutions that provide gender-affirming medical care to transgender people under the age of nineteen, declaring that such treatment "will be a stain on our Nation's history."[29] Such language, like the Executive Order at issue in this case, expressly and unequivocally evidences discriminatory intent toward transgender people.

155.    Federal courts have declared portions of the Executive Order unconstitutional. *See Schlacter v. United States*, No. CV GLR-25-1344, 2025 WL 2606101, at *10 (D. Md. Sept. 9, 2025); *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1214 (N.D. Cal. 2025); *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 445 (D. Md. 2025); *Rhode Island Latino Arts v. Nat'l Endowment for the Arts*, 777 F. Supp. 3d 87, 109 (D.R.I. 2025).

---

[28] Prioritizing Military Excellence & Readiness, 90 Fed. Reg. 8757 (Feb. 3, 2025).

[29] Protecting Children From Chemical and Surgical Mutilation, 90 Fed. Reg. 8771 (Feb. 3, 2025).

156.    Courts have also found that the Executive Order is based on animus against transgender people. *See Talbott v. United States*, No. 25-CV-00240 (ACR), 2025 WL 842332, at *36 (D.D.C. Mar. 18, 2025); *Washington v. Trump*, No. 2:25-CV-00244-LK, 2025 WL 659057, at *24 (W.D. Wash. Feb. 28, 2025) (concluding that the "Executive Order . . . reflects a bare desire to harm a politically unpopular group, as its underlying actual purpose" and noting that "[i]ts language, which declares that it is 'false' that 'males can identify as . . . women and vice versa' and that the only identity that is 'true' in 'reality' is one's biological sex, denies and denigrates the very existence of transgender people—despite the evidence that they do exist and have as long as human history has been recorded.") (cleaned up); *In Re: Administrative Subpoena No. 25-143-019,* No.1:25-MC-91324-MJJ, 2025 WL 2607784, at *1, *7 (D. Mass. Sept. 9, 2025), (noting the Administration has made "its disapproval of the transgender community well known" and quashing a DOJ subpoena issued "to harass and intimidate [Boston Children's Hospital] to stop providing [gender affirming medical] care, and to dissuade patients from seeking such care.").

**D.    U.S. Office of Personnel Management Guidance, GSA Rescission of its 2016 Directive, and Implementation of the Executive Order Across the Federal Government**

157.    Two agencies led the implementation of the Executive Order across the federal government.

158.    On January 29, 2025, Charles Ezell issued the OPM Memorandum to the "Heads and Acting Heads of Departments and Agencies" regarding the Executive Order. The OPM Memorandum directed each agency head, including the head of the Department of Defense, to— no later than 5:00 p.m. EST on January 31, 2025—"[e]nsure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by biological sex and not

gender identity."[30] Beyond a reference to the Executive Order, the OPM Memorandum provided no justification for the change in government policy.

159.    On July 10, 2025, Ezell issued a second memorandum (the "Updated OPM Memorandum") which states that it "fully replaces and supersedes" the OPM Memorandum.[31] The Updated OPM Memorandum reiterates that agencies should have already taken steps based on the prior OPM Memorandum, including having ensured that restrooms are "designated by biological sex and not gender identity."

160.    Each of these memoranda (collectively, "OPM Memoranda") is final agency action, as each marks the consummation of OPM's decisionmaking process with respect to the government's policy for use of restrooms for federal employees, and impacts the rights of, and could impose legal consequences on, federal employees.[32]

161.    On May 9, 2025, the GSA withdrew its 2016 bulletin that had interpreted the nondiscrimination requirements of federal law to require that transgender federal employees be permitted to use restrooms consistent with their gender identity. Federal Management

---

[30] *See* Charles Ezell, Memorandum Re: Initial Guidance Regarding President Trump's Executive Order *Defending Women*, Jan. 29, 2025, https://www.opm.gov/media/yvlh1r3i/opm-memo-initial-guidance-regarding-trump-executive-order-defending-women-1-29-2025-final.pdf [https://perma.cc/3L6Q-APXT].

[31] *See* Charles Ezell, Memorandum Re: Updated Guidance Regarding President Trump's Executive Order *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Jul. 10, 2025, https://www.opm.gov/chcoc/latest-memos/updated-guidance-regarding-executive-order-14168-defending-women-from-gender-ideology-extremism-and-restoring-biological-truth-to-the-federal-government.pdf [https://perma.cc/9EWP-QEED].

[32] *See F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009) (the APA "make[s] no distinction .. between initial agency action and subsequent agency action undoing or revising that action").

Regulation; Nondiscrimination Clarification in the Federal Workplace; Rescission, 90 Fed. Reg.

19658 (May 9, 2025). GSA's rescission of this bulletin is final agency action.

162.    Following issuance of the initial OPM Memorandum, agencies and agency heads,

including the Title VII Defendants, began taking actions to "ensure that" restrooms are

"designated by biological sex" as defined in the Executive Order, and not by "gender identity."

163.    On January 31, 2025, Secretary of Defense Pete Hegseth issued a memorandum

(the "Hegseth Memorandum") for senior Pentagon leadership, commanders of the combatant

commands, and Defense agency and Department of Defense field activity directors. The Hegseth

Memorandum states that the "president has given us our marching orders in his Executive Order

14168" and that "[e]ffective immediately, the Department of Defense will remove all traces of

gender ideology." The Hegseth Memorandum directed all Department of Defense components,

including the National Guard Bureau in which Ms. Withrow is employed, to "[e]nsure that

intimate spaces designated for women, girls, or females (or for men, boys, or males) are

designated by sex and not identity." The Hegseth Memorandum directed the Office of the

Undersecretary of Defense for Personnel and Readiness to "send a task and oversee

implementation of these actions."[33] The Hegseth Memorandum provided no justification for the

change in government policy based on the dignity, safety, and well-being of government

employees or the need for effective and efficient government operations.

---

[33] *See* Peter Hegseth, Memorandum Re: Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, Jan. 31, 2025, https://www.af.mil/Portals/1/documents/2025SAF/2025013_-_SD_Memo_-_Defending_Women_(002).pdf [Archived at https://web.archive.org/web/20250522163432/https://www.af.mil/Portals/1/documents/2025SAF/2025013_-_SD_Memo_-_Defending_Women_(002).pdf].

164.    On January 31, 2025, Darin S. Selnick, performing the Duties of the Under
Secretary of Defense for Personnel and Readiness, issued a memorandum (the "Selnick
Memorandum") for all Department of Defense civilian employees regarding "Department of
Defense Implementation of Executive Order 14168, 'Defending Women from Gender Ideology
Extremism and Restoring Biological Truth to the Federal Government,'" referencing the
Executive Order and OPM Memorandum, and stating that the "Department of Defense will take
prompt action to ensure that all programs and activities align with [the] principles" of the
Executive Order.[34] The Selnick Memorandum provided no justification for the change in
government policy based on the dignity, safety, and well-being of government employees or the
need for effective and efficient government operations.

165.    On February 2, 2025, Colonel Matthew Garrison, Chief of Joint Staff for the
Illinois National Guard, distributed a "quick reference guide on the executive orders and
subsequent [National Guard Bureau] guidance with relevance to ILNG," prepared by the Illinois
National Guard Human Resource Office, entitled "ILNG-HRO, EO-PM Summary Impact," to all
full-time employees of the Illinois National Guard (the "Garrison Memorandum"). That
document summarized the Executive Order, noting that it required the agency to "ensure intimate
spaces are designated by biological sex," and that the Illinois National Guard would "need to
confirm compliance with . . . restrooms." The Garrison Memorandum provided no justification
for the change in government policy based on the dignity, safety, and well-being of government
employees or the need for effective and efficient government operations.

---

[34] *See* Darin Selnick, Memorandum Re: Department of Defense Implementation of Executive
Order 14168, Jan. 31, 2025, https://www.dcpas.osd.mil/sites/default/files/2025-
02/department_of_defense_implementation_of_eo_14168-
_defending_women_from_gender_ideology_extremism_and_restoring_biological_truth_to_the_
federal_government.pdf [https://perma.cc/LRM2-QHR8].

166.    On February 28, 2025, General Steven S. Nordhaus, Chief of the National Guard Bureau, issued a memorandum (the "Nordhaus Memorandum") for the Adjutants General and the Commanding General of the District of Columbia regarding "Actions on Defending Women Executive Order" referencing the OPM Memorandum and Hegseth Memorandum, directing completion by March 28, 2025 of actions including "[e]nsur[ing] that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity." The Nordhaus Memorandum provided no justification for the change in government policy based on the dignity, safety, and well-being of government employees or the need for effective and efficient government operations.

167.    Upon information and belief, pursuant to the instructions in the OPM Memoranda, agencies and agency heads across the federal government, including the Title VII Defendants, have likewise banned transgender and intersex federal employees from using restrooms that align with their gender identity. The agency-specific implementing actions, including the Hegseth Memorandum, Selnick Memorandum, Garrison Memorandum, and Nordhaus Memorandum, as well as similar actions taken by agencies across the Executive Branch to implement the Executive Order and OPM Memoranda, are referred to collectively in this Complaint as the "Agency Implementation Actions."

**E.    The Impact of the Executive Order, the OPM Memoranda, the GSA Rescission, and the Agency Implementation Actions on Ms. Withrow and the Class**

168.    As a result of the Executive Order, the OPM Memoranda, the GSA Rescission, and Agency Implementation Actions, Ms. Withrow has been instructed by National Guard Bureau supervisors within her chain of command use women's restrooms even though they align with her gender identity.

169.    If Ms. Withrow uses the women's restroom that aligns with her gender, the National Guard Bureau could discipline her for violating the Administration's policy, the OPM Memoranda, the Agency Implementation Actions, and her supervisors' instructions.

170.    When possible, Ms. Withrow tries to work around this discriminatory policy by using single-user restrooms. This is not an easy task. There is only one single-user restroom available for her use on the entire 160-acre campus of Camp Lincoln, the Illinois National Guard Headquarters where Ms. Withrow works.

171.    Ms. Withrow cannot rely on always being close to that restroom. For example, Ms. Withrow participates in a regular weekly Commander's Update Brief with the Chief of Staff of the Illinois National Guard and the Joint Staff, which takes place in a different building from the one with the single-user restroom, and she is at times called without prior notice to meetings in that building or other buildings at Camp Lincoln that have no restroom that Ms. Withrow is able to use.

172.    It is not feasible for Ms. Withrow to leave meetings in other buildings, or to travel across the entire building she is in, to use the sole single-user restroom available to her at Camp Lincoln. She cannot tell the Chief of Staff of the Illinois National Guard that she needs a fifteen-minute restroom break from a meeting with him, which is the time that would be required to leave his building, travel to the building with the single-user restroom, and then travel to and badge into the Chief of Staff's building. To do so would be unprofessional and embarrassing. Other federal employees would not face such obstacles to simply doing their jobs.

173.    As part of her job, Ms. Withrow is also required to regularly visit each of twelve National Guard field offices throughout Illinois to supervise the work of other National Guard employees in her department and to ensure that family assistance centers are running properly by

assessing, training, and interacting with the staff there and ensuring conformity to standards.. Of these, eight field offices lack a single-user restroom. One of those facilities is fifteen to twenty minutes from the nearest town, not counting time spent at the security gate.

174.    Ms. Withrow's supervisor suggested that Ms. Withrow limit the duration of her visits to field offices without a single-user restroom so that she does not need to use a restroom. That is infeasible because such visits regularly require her to spend four or more hours at each field office to fulfill her Guard responsibilities, which include ensuring that family assistance centers are running properly. Reducing the time of her visits could impact her ability to do her job as effectively, which is not an option for Ms. Withrow.

175.    Every day she goes to work, Ms. Withrow is required to make decisions about whether she can eat or consume liquids. Meetings may get moved or arrive unscheduled, and she does not know when or in what building they might happen, which means that planning to use the restroom is a constant concern, all day, every day.

176.    The policy changes and new requirements have imposed severe impositions on Ms. Withrow. They impact her health and her life. To limit her need to use the restroom, Ms. Withrow almost never eats breakfast, rarely eats lunch, and drinks less than the equivalent of one 17 oz. bottle of water at work on most days.

177.    The actions of Defendants have caused Ms. Withrow to suffer physical and emotional distress and have limited her ability to effectively perform her job and serve the soldiers of the Illinois National Guard and their families. Prior to the Executive Order, the OPM Memoranda, the GSA Rescission, and Agency Implementation Actions, Ms. Withrow used the women's restrooms at Camp Lincoln and other National Guard facilities without any issues

raised by her employer or coworkers. Before Defendants' actions, restroom use was not a constant worry for Ms. Withrow.

178.    Using a men's restroom would immediately disclose to everyone in the vicinity that Ms. Withrow is transgender. Ms. Withrow would feel unsafe, humiliated, and degraded using a men's restroom, which does not align with her gender. If Ms. Withrow used the men's restroom, it would be disruptive to campus operations at Camp Lincoln. Ms. Withrow is a woman, dresses like a woman, and is perceived as a woman by people who interact with her. Individuals seeing her enter the men's restroom might try to prevent her from doing so or physically harm her, as has happened to other transgender people. Other people might ask her to explain her reason for using the restroom, which would be invasive and would cause emotional distress, including humiliation, discomfort, or embarrassment.

179.    Indeed, there is a medical consensus that being forced to use a restroom that does not align with a person's gender identity can lead to or exacerbate gender dysphoria, a mental health condition that can arise when someone experiences clinical distress due to the incongruence between their sex assigned at birth and gender identity.

180.    If Ms. Withrow or other transgender or intersex employees choose to disregard the requirements set forth in the OPM Memoranda, GSA Rescission, and the Agency Implementation Actions, they put their employment in jeopardy and risk discipline or other punishment.

181.    Upon information and belief, transgender and intersex employees across all agencies of the federal government have similarly been prohibited from using restrooms that align with their gender identity but not their sex as defined in the Executive Order.

## CLASS ACTION ALLEGATIONS

182.    Ms. Withrow brings this action on her own behalf and on behalf of a class of

those similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil

Procedure.

183.    Ms. Withrow seeks certification of the following Class:

> All current and future civilian employees of the named defendants
> and their agencies whose gender identity differs from their
> "biological classification as either male or female" as defined in
> EO 14168 and who have been or will be prevented from using
> restrooms that align with their gender identity.

184.    Excluded from the Class is any member of the family of any Judge or Magistrate

presiding over this action.

185.    Transgender employees are part of the Class, because their gender identity differs

from their "biological classification as either male or female" as defined in EO 14168. Intersex

employees are also part of the Class, for one of two reasons. Either they do not fit into either of

the scientifically inaccurate definitions of "male or female," or their gender identity differs from

their "biological classification as either male or female" as defined in EO 14168.

186.    As defined, the Class meets all the requirements of Rule 23(a).

187.    The Class is so numerous that joinder of all members of the Class is impractical.

While the precise number of class members is unknown, according to the U.S. Office of

Personnel Management's 2023 Federal Employee Viewpoint Survey Results, 2,421 federal

employees identified as transgender. The survey's 39 percent response rate suggests that there

were approximately 6,200 transgender federal employees as of 2023.[35]

---

[35] *See* Off. of Pers. Mgmt., *Federal Employee Viewpoint Survey Results* (2023),
https://web.archive.org/web/20241213172749/https://www.opm.gov/fevs/reports/governmentwid
ereports/governmentwide-reports/governmentwide-management-report/2023/2023-
governmentwide-managementreport.pdf [https://perma.cc/XJ5A-7WS7]. The version of the 2023

188.    There are questions of fact and law common to the Class, including:

a.    whether the Title VII Defendants' actions to implement the OPM Memoranda and GSA Rescission by prohibiting members of the Class from using restrooms consistent with their gender identity discriminate on the basis of sex in violation of Title VII;

b.    whether the Title VII Defendants' actions to implement the OPM Memoranda and GSA Rescission by prohibiting members of the Class from using restrooms consistent with their gender identity discriminate constitute a "pattern or practice of discrimination" based on sex in violation of Title VII;

c.    whether the OPM Memoranda and GSA Rescission are arbitrary, capricious, an abuse of discretion, contrary to law, or otherwise contrary to the APA; and

d.    whether the OPM Memoranda and the GSA Recission violate the Federal Property and Administrative Services Act of 1949, as amended, which provides that "[w]ith respect to a program or activity carried on or receiving federal assistance under this subtitle, an individual may not be excluded from participation, denied benefits, or otherwise discriminated against based on sex." 40 U.S.C. § 122.

189.    Ms. Withrow's claims are typical of the claims of the Class she represents. She is transgender and has been excluded from restrooms that align with her gender identity by reason

---

Federal Employee Viewpoint Survey on Respondent OPM's website has been "[r]edacted in response to EO 14151 Ending Radical and Wasteful Government DEI Programs and Preferencing" to remove information regarding the number of transgender federal employees that responded to the survey. *See* Off. of Pers. Mgmt., *Federal Employee Viewpoint Survey Results Revised Edition* (Apr. 2025), https://www.opm.gov/fevs/reports/governmentwide-reports/governmentwidereports/governmentwide-management-report/2023/2023-governmentwide-management-report.pdf [https://perma.cc/J6CG-U4QJ].

of the conduct of Defendants. Intersex federal employees who have been excluded from restrooms that align with their gender identity suffer the same harm as Ms. Withrow and transgender members of the Class. Upon information and belief, the Executive Order, OPM Memoranda, and the GSA Rescission have been implemented consistently across the federal government, disparately treating Ms. Withrow and Class members on the basis of sex, and constituting a pattern and practice of sex discrimination, in violation of Title VII. Defendants' policies and actions have caused and continue to cause Ms. Withrow emotional distress and physical discomfort, and similarly have harmed and continue to harm all Class members. Further, Ms. Withrow seeks the same injunctive and declaratory relief as all Class members.

190.    Ms. Withrow will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in similar litigation, including class actions. Ms. Withrow is committed to the vigorous prosecution of this suit and has no interests that are adverse to the Class. Ms. Withrow is represented by experienced counsel with the law firm of Arnold & Porter Kaye Scholer LLP, the attorneys of the American Civil Liberties Union Foundation, the Roger Baldwin Foundation of ACLU, Inc., the American Civil Liberties Union Foundation of the District of Columbia, and Democracy Forward Foundation as her representatives. The attorneys who are appearing in this matter have extensive experience in complex civil rights litigation and class action litigation. They also have extensive experience representing transgender litigants. Ms. Withrow's counsel describe their credentials more fully in their forthcoming motion for class certification.

191.    The requirements of Rule 23(b)(2) are met because Defendants have acted, or will act, on grounds generally applicable to the Class, and final injunctive relief and declaratory relief are appropriate respecting the Class as a whole. Defendants have implemented the Executive

Order consistently across the federal government pursuant to the OPM Memoranda and GSA Rescission, leading to all members of the Class suffering the same injury. Declaratory relief that the OPM Memoranda, the GSA Rescission, and Agency Implementation Actions are unlawful, an injunction against their enforcement, and vacatur of the OPM Memoranda and GSA Rescission under the Administrative Procedure Act would all benefit the entire Class in the same way and remedy the same injuries suffered by the entire Class.

## FIRST CLAIM FOR RELIEF

### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
### (Against the Title VII Defendants)

192.    Title VII states that "[a]ll personnel actions affecting [federal] employees . . . shall be made free from any discrimination based on . . . sex." 42 U.S.C. § 2000e-16(a).

193.    Discrimination based on transgender or intersex status is discrimination "based on . . . sex" under Title VII.

194.    Through the Agency Implementation Actions that have prevented Ms. Withrow and Class Members from using restrooms that align with their gender identity, the Title VII Defendants have discriminated against Ms. Withrow and the Class on the basis of sex with respect to a personnel action under Title VII.

## SECOND CLAIM FOR RELIEF

### Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A)—
### Agency Action Not in Accordance with Law
### (Against the APA Defendants)

195.    The Administrative Procedure Act provides that courts "shall . . . hold unlawful and set aside agency action . . . not in accordance with law." 5 U.S.C. § 706(2).

196.    The OPM Memoranda and GSA Rescission are reviewable final agency actions because each (1) "marks the consummation of the agency's decisionmaking process" and (2) is

an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation modified).

197.    The OPM Memoranda and GSA Rescission are contrary to law because they conflict with Title VII by discriminating on the basis of sex for the reasons described above.

198.    The OPM Memoranda and GSA Rescission are contrary to law because they conflict with the Federal Property and Administrative Services Act of 1949, as amended, which provides that "[w]ith respect to a program or activity carried on or receiving federal assistance under this subtitle, an individual may not be excluded from participation, denied benefits, or otherwise discriminated against based on sex." 40 U.S.C. § 122.

199.    In implementing 40 U.S.C. § 122, the GSA has recognized that "[f]ederal agencies must not discriminate by segregation or otherwise against any person or persons because of . . . sex . . . by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided on the property." 42 C.F.R. § 102-74.445.

200.    Discrimination based on intersex or transgender status is discrimination "based on sex," under 40 U.S.C. § 122 and discrimination "because of . . . sex" under 42 C.F.R. § 102-74.445.

201.    Because the OPM Memoranda and GSA Rescission conflict with Title VII and the Federal Property and Administrative Services Act of 1949, they are contrary to law and must be "h[e]ld unlawful and set aside." 5 U.S.C. §§ 706(2).

## THIRD CLAIM FOR RELIEF

### Administrative Procedure Act, 5 U.S.C. §§ 706(2)—
### Arbitrary and Capricious Agency Action
### (Against the APA Defendants)

202.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia*, "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. §§ 706(2), 702(2)(A).

203.    The OPM Memoranda and GSA Rescission are reviewable final agency actions because each (1) "marks the consummation of the agency's decisionmaking process" and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation modified).

204.    An agency cannot depart from prior policies without acknowledging that it is making such a change and explaining its reasoning for doing so. Agencies must "examine the relevant data and articulate a satisfactory explanation" when altering or rescinding a rule or policy.[36] And they must specifically consider the reliance interests of those who may be impacted by a change in their policies.[37]

205.    The OPM Memoranda and GSA Rescission are arbitrary and capricious because they are based on "unsupported assertions," lack "reliable evidence,"[38] and "rest[] on a factual premise that is unsupported by substantial evidence."[39] For example, the OPM Memoranda incorporate the definitions of the Executive Order, defining "male" and "female" as a person

---

[36] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009).

[37] *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30-31 (2020).

[38] *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,* 437 F.3d 75, 83 (D.C. Cir. 2006).

[39] *Genuine Parts Co. v. Env't Prot. Agency, 890 F.3d 304, 346* (D.C. Cir. 2018).

who "at conception" "belong[s]" to the sex that produces the large or small reproductive cell—but embryos with either XX or XY chromosomes have undifferentiated reproductive cells during the initial period after conception.

206.    In addition, grouping all people into "male" and "female" based on which reproductive cell is likely to be produced ignores the established biological reality that some individuals are intersex and do not, at conception, belong to a sex that produces either large or small reproductive cells.

207.    Further, the challenged agency actions are arbitrary, capricious, and an abuse of discretion because the APA Defendants have failed to provide a reasoned explanation for their decision to deny federal employees the ability to use a restroom consistent with their gender identity.

208.    The APA Defendants have failed to consider significant and viable alternatives to the actions taken and have failed to give a reasoned explanation for the rejection of such alternatives, including the policy that had been in place for years before the Executive Order and challenged agency actions.[40].

209.    The APA Defendants have also failed to consider or address numerous crucial aspects of the change in policy, including a failure to consider or address the effects on transgender and intersex employees, including the effects on their health, and their ability to effectively perform their government duties.

210.    The OPM Memoranda and GSA Rescission fail to consider or explain the implications for existing reliance interests, including the reliance of Ms. Withrow and thousands of transgender and intersex federal employees on the existing policy.

---

[40] *See Am. Radio Relay League, Inc. v. F.C.C., 524 F.3d 227, 242* (D.C. Cir. 2008).

211.    An agency rule is also "arbitrary and capricious if the agency has . . . entirely

failed to consider an important aspect of the problem."[41] In promulgating the OPM Memoranda

and GSA Rescission, the APA Defendants entirely failed to consider multiple important aspects

of the problem, including but not limited to:

    a.    The threats to safety and privacy when transgender and intersex people are forced

        to use restrooms inconsistent with their gender identity.

    b.    The health risks to transgender and intersex federal employees when they are

        prevented from accessing restrooms consistent with their gender identity.

    c.    Other legal requirements or standards that may be implicated by the changes they

        implement, including the EEOC's existing precedents, the requirements of the

        Federal Property and Administrative Services Act of 1949, and Title VII's

        protection against discrimination on the basis of gender identity, as recognized by

        the Supreme Court in *Bostock*.

212.    Because the OPM Memorandum and GSA Rescission are "arbitrary, capricious,

[and] an abuse of discretion," they must be "h[e]ld unlawful and set aside." 5 U.S.C. §§ 706(2),

702(2)(A).

### PRAYER FOR RELIEF

WHEREFORE, Ms. Withrow requests that this Court grant the following relief:

(A)    Certify a Class of all current and future civilian employees of the named

defendants and their agencies whose gender identity differs from their "biological classification

as either male or female" as defined in EO 14168 and who have been or will be prevented from

---

[41] *Motor Vehicle Mfrs. Ass'n* 463 U.S. at 43 (1983).

using restrooms that align with their gender identity; appoint Ms. Withrow as Class

representative; and appoint undersigned counsel as Class counsel;

(B)     With respect to the Title VII Defendants:

    a.     Enter permanent injunctive and declaratory relief, including but not limited to a declaration that the actions of the Title VII Defendants violate Title VII;

    b.     Enjoin the Title VII Defendants, including their officers, employees, contractors, and agents, from implementing or enforcing any policy or practice that prevents Ms. Withrow and members of the Class from using restrooms that align with their gender identity; and

    c.     Order the Title VII Defendants, including their officers, employees, contractors, and agents, to provide and continue providing Ms. Withrow and members of the Class access to restrooms that align with their gender identity;

    d.     Award nominal damages to Ms. Withrow.

(C)     With respect to the APA Defendants:

    a.     Declare that the OPM Memorandum and GSA Rescission violate the APA; and

    b.     Vacate the OPM Memorandum and the GSA Rescission as unlawful under the APA;

(D)     Award Ms. Withrow at least nominal damages, and her costs and reasonable

attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 2000e, and any other applicable

source of law; and

(E)     Grant any other and further relief this Court deems just, proper, and appropriate.

Dated: November 20, 2025

Respectfully Submitted,

/s/  Shana Knizhnik

Shana Knizhnik (D.D.C. Bar No. 120840)
Harper Seldin (pro hac vice forthcoming)
Joshua Block (pro hac vice forthcoming)
Barbara Schwabauer (pro hac vice
forthcoming)
American Civil Liberties Union Foundation
125 Broad St., New York, NY 10004
917-716-0609
sknizhnik@aclu.org
hseldin@aclu.org
jblock@aclu.org
bschwabauer@aclu.org

Michael Perloff (D.C. Bar No. 1601047)
Scott Michelman (D.C. Bar No. 1006945)
ACLU Foundation of the District of
Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
202-601-4267
smichelman@acludc.org
mperloff@acludc.org

Kaitlyn Golden (Bar No. 1022111)
Madeline Gitomer (Bar No. 1023447)
Paul Wolfson (Bar No. 414759)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
202-701-1789
kgolden@democracyforward.org
mgitomer@democracyforward.org
pwolfson@democracyforward.org

Michelle Teresa García (pro hac vice
forthcoming)
Priyanka Menon (pro hac vice forthcoming)
Roger Baldwin Foundation of ACLU, Inc.
150 N Michigan, Suite 600
Chicago, IL 60601
312-201-9740 ext. 319
mgarcia@aclu-il.org
pmenon@aclu-il.org

Jonathan Gleklen (D.C. Bar No. 443660)
Rachel Forman (pro hac vice forthcoming)
Darrel Pae (pro hac vice forthcoming)
Sangeeta Shastry (pro hac vice forthcoming)
Whitney Turk (pro hac vice forthcoming)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
202-942-5000
jonathan.gleklen@arnoldporter.com
rachel.forman@arnoldporter.com
darrell.pae@arnoldporter.com
sangeeta.shastry@arnoldporter.com
whitney.turk@arnoldporter.com

Allissa Pollard (pro hac vice forthcoming)
Christopher Odell (pro hac vice forthcoming)
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street | Suite 4000
Houston, TX 77002-2755
713-576-2451
allissa.pollard@arnoldporter.com
christopher.odell@arnoldporter.com

Summer Perez (pro hac vice forthcoming)
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
212-836-7314
summer.perez@arnoldporter.com