**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEANNE WITHROW,
*on behalf of herself and all persons similarly situated,*

*Plaintiff*

v.

UNITED STATES OF AMERICA et al.,

*Defendants.*

Civil Action No. 1:25-cv-04073

<u>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**</u>

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii

I.  INTRODUCTION ........................................................................................................1

II.  FACTUAL BACKGROUND ........................................................................................4

    A.  Gender Identity and Transgender and Intersex People ...........................................4

        1.  Gender Identity ...............................................................................................4

        2.  Transgender and Intersex People ...................................................................5

    B.  Transgender and Intersex Federal Employees' Access to Restrooms Before the Executive Order .......................................................................................................6

    C.  The Executive Order, OPM Memoranda, GSA Rescission, and Agency Implementation Actions .........................................................................................8

    D.  The OPM Memoranda and GSA Rescission ...........................................................9

        1.  The Agency Implementation Actions ...........................................................9

    D.  Plaintiff LeAnne Withrow ....................................................................................11

III.  ARGUMENT .............................................................................................................12

    A.  Legal Standard for Class Certification ..................................................................13

    B.  The Proposed Class Satisfies the Requirements of Rule 23(a) .............................14

        1.  Joinder of All Class Members Is Impracticable...........................................14

        2.  The Class Presents Common Questions of Law and Fact. .........................16

        3.  Ms. Withrow's Claims Are Typical of Those of the Class.........................17

        4.  The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Class. .................................................................................18

    C.  The Proposed Class Meets the Requirements of Rule 23(b) .................................19

    D.  The Court Should Appoint Ms. Withrow's Attorneys as Class Counsel...............21

IV.  CONCLUSION...........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afghan & Iraqi Allies v. Pompeo*,
334 F.R.D. 449 (D.D.C. 2020)........................................................................16, 18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................20

* *Bynum v. Dist. of Columbia*,
214 F.R.D. 27 (D.D.C. 2003)........................................................................16, 18

* *D.L. v. Dist. of Columbia*,
302 F.R.D. 1 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017)..................14, 15

*In re Dist. of Columbia*,
792 F.3d 96 (D.C. Cir. 2015)........................................................................20

*Garnett v. Zeilinger*,
301 F. Supp. 3d 199 (D.D.C. 2018)..............................................................14, 19

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020)..............................5

*Hecox v. Little*,
104 F.4th 1061 (9th Cir. 2024) ................................................................4, 5, 6

*Howard v. Liquidity Servs. Inc.*,
322 F.R.D. 103 (D.D.C. 2017)........................................................................22

*Huisha-Huisha v. Mayorkas*,
560 F. Supp. 3d 146 (D.D.C. 2021) ...............................................................21

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019)..............................................................15, 16, 19

*Kifafi v. Hilton Hotels Ret. Plan*,
189 F.R.D. 174 (D.D.C. 1999)........................................................................16

*L.G.M.L. v. Noem*,
No. CV 25-2942 (TJK), 2025 WL 2671690 (D.D.C. Sept. 18, 2025)....................18

*Lusardi v. Department of the Army*,
EEOC Appeal No. 0120133395, 2015 WL 1607756 (April 1, 2015) ..................1, 7

*Macy* v. *Dep't of Justice*,
  EEOC Appeal No. 0120120821, 2012 WL 1435995 (Apr. 12, 2012)....................................7

*N.S. v. Hughes*,
  335 F.R.D. 337 (D.D.C. 2020), *clarified sub nom. N.S. v. Dixon*, No. 1:20-cv-
  101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020) ........................................14

* *O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ..................................................................18, 21

* *R.I.L-R. v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) .............................................................17, 18, 20

*Ramirez v. U.S. Immigr. & Customs Enf't*,
  338 F. Supp. 3d 1 (D.D.C. 2018)..............................................................14, 17, 18

*Ross v. Lockheed Martin Corp.*,
  267 F. Supp. 3d 174 (D.D.C. 2017) ...............................................................13

*Samma v. United States Dep't of Def.*,
  2020 WL 4501000 (D.D.C. Aug. 4, 2020) .........................................................22

* *Thorpe v. Dist. of Columbia*,
  303 F.R.D. 120 (D.D.C. 2014)........................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..................................................................... *passim*

**Other Authorities**

Exec. Order 14168, *Defending Women From Gender Ideology Extremism and
  Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615
  (Jan. 20, 2025)................................................................................ *passim*

Fed. R. Civ. P. 23 ............................................................................ *passim*

Jessica A. Clarke, *Sex Assigned at Birth*, 122 Colum. L. Rev. 1821, 1823–50
  (Nov. 2022)...........................................................................................4, 5, 6

Jessica N. Fish & Stephen T. Russell, *Sexual Orientation and Gender Identity
  Change Efforts are Unethical and Harmful*................................................4

Jody L. Herman et al., *How Many Adults and Youth Identify as Transgender in
  the United States?* .........................................................................................5

Memorandum Re: Updated Guidance Regarding President Trump's Executive
    Order *Defending Women from Gender Ideology Extremism and Restoring
    Biological Truth to the Federal Government*, Jul. 10, 2025,
    https://www.opm.gov/chcoc/latest-memos/updated-guidance-regarding-
    executive-order-14168-defending-women-from-gender-ideology-extremism-
    and-restoring-biological-truth-to-the-federal-government.pdf
    [https://perma.cc/9EWP-QEED]................................................................................2

National Academies of Sciences, Engineering, and Medicine, *Measuring Sex,
    Gender Identity, and Sexual Orientation* 139 (2022) [hereinafter *Measuring
    Sex*], *available at*
    https://www.ncbi.nlm.nih.gov/books/NBK578625/pdf/Bookshelf_NBK57862
    5.pdf [https://perma.cc/RGQ6-ZRHF].....................................................................6

OPM, *Federal Employee Viewpoint Survey Results* (2023),
    https://web.archive.org/web/20241213172749/https://www.opm.gov/fevs/repo
    rts/governmentwidereports/governmentwide-reports/governmentwide-
    management-report/2023/2023-governmentwidemanagementreport.pdf
    [https://perma.cc/XJ5A-7WS7] ...............................................................................5

OPM, *Federal Employee Viewpoint Survey Results Revised Edition* (Apr. 2025),
    https://www.opm.gov/fevs/reports/governmentwide-
    reports/governmentwidereports/governmentwide-management-
    report/2023/2023-governmentwide-management-report.pdf
    [https://perma.cc/J6CG-U4QJ] ................................................................................5

OPM, Federal Management Regulation: Nondiscrimination Clarification in the
    Federal Workplace, 81 Fed. Reg. 55148 (Aug. 18, 2016)....................................1, 7

OPM, Guidance Regarding Gender Identity and Inclusion in the Federal
    Workplace 3 (Mar. 31, 2023), *available at*
    https://web.archive.org/web/20240815180906/https://www.opm.gov/policy-
    data-oversight/diversity-equity-inclusion-and-accessibility/reference-
    materials/guidance-regarding-gender-identity-and-inclusion-in-the-federal-
    workplace.pdf [https://perma.cc/T2CU-39TL]........................................................2

OPM, Guidance Regarding Gender Identity and Inclusion in the Federal
    Workplace (Jan. 18, 2017), *available at*
    https://www.nrc.gov/docs/ML1702/ML17023A024.pdf
    [https://perma.cc/58NK-34FL] ................................................................................1

OPM, Guidance Regarding Gender Identity and Inclusion in the Federal
    Workplace (Mar. 31, 2023), *available at*
    https://web.archive.org/web/20240815180906/https://www.opm.gov/policy-
    data-oversight/diversity-equity-inclusion-and-accessibility/reference-
    materials/guidance-regarding-gender-identity-and-inclusion-in-the-federal-
    workplace.pdf [https://perma.cc/T2CU-39TL];.......................................................2

U.S. Dep't of Justice, Treatment of Transgender Employment Discrimination
     Claims (Dec. 15, 2014), https://www.justice.gov/file/188671/download
     [https://perma.cc/AQW3-X6B7]................................................................................7

United Nations Free & Equal, *Intersex People*, Office of the United Nations High
     Commissioner for Human Rights 1 (September 2025),
     https://www.unfe.org/sites/default/files/download/Intersex%20factsheet%202
     025%20-%20EN.pdf [https://perma.cc/DF96-YUZB] ............................................6

## I.    INTRODUCTION

Plaintiff ("LeAnne Withrow") and the putative class she seeks to represent current or future employees of the Executive Branch of the federal government whose gender identity differs from their "biological classification as either male or female," as defined in Executive Order 14168 (the "Executive Order"), and who have been or will be prohibited from using restrooms that align with their gender identity. Ms. Withrow is a transgender woman who has served since August 2016 as a commended civilian federal government employee in the Illinois National Guard and who served as a decorated staff sergeant in the Illinois Army National Guard until 2023.

For the past decade—through three different administrations—all federal employees have had a recognized legal right to use restrooms at work consistent with their gender identity pursuant to the U.S. Equal Employment Opportunity Commission ("EEOC") decision in *Lusardi v. Department of the Army*, EEOC Appeal No. 0120133395, 2015 WL 1607756 (April 1, 2015). In that 2015 case, the EEOC's Office of Federal Operations held that the Army discriminated against a transgender employee by preventing her from using the same restrooms as other female employees. Consistent with *Lusardi*, in 2016 the General Services Administration ("GSA"), which is responsible for the management of federal properties, has directed (in guidance published in the Federal Register) that federal agencies occupying space under GSA's jurisdiction, custody, or control must allow individuals to use restrooms consistent with their gender identity.[1]  And in 2017, as required by *Lusardi*, the Office of Personnel Management ("OPM"), directed that "agencies should allow access to restrooms . . . consistent with the employee's gender identity."[2]

---

[1] Federal Management Regulation: Nondiscrimination Clarification in the Federal Workplace, 81 Fed. Reg. 55148 (Aug. 18, 2016).

[2] U.S. Office of Personnel Management, Guidance Regarding Gender Identity and Inclusion in the Federal Workplace (Jan. 18, 2017), *available at* https://www.nrc.gov/docs/ML1702/ML17023A024.pdf [https://perma.cc/58NK-34FL].

It reiterated that direction in 2023, instructing all executive agencies that "under Title VII, agencies should allow access to common and single-user restrooms corresponding to an employee's gender identity."[3]  Under these policies, Ms. Withrow used the women's bathrooms at her workplace and other National Guard facilities—and did so without any issues raised by other women or anyone else. Other transgender and intersex employees of the United States government likewise used restrooms consistent with their gender identities.

However, since January of this year, Ms. Withrow and those similarly situated to her have been barred from using restrooms consistent with their gender identities because of President Trump's Executive Order, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (the "Executive Order"),[4] and its implementation by Defendants, including through memoranda issued by OPM (the "OPM Memoranda"),[5] the GSA's publication of a Federal Register notice withdrawing its prior direction regarding access to restrooms by transgender employees (the "GSA Rescission"),[6] and by actions

---

[3] U.S. Office of Personnel Management, Guidance Regarding Gender Identity and Inclusion in the Federal Workplace 3 (Mar. 31, 2023), *available at* https://web.archive.org/web/20240815180906/https://www.opm.gov/policy-data-oversight/diversity-equity-inclusion-and-accessibility/reference-materials/guidance-regarding-gender-identity-and-inclusion-in-the-federal-workplace.pdf [https://perma.cc/T2CU-39TL].

[4] Exec. Order 14168, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025).

[5] U.S. Office of Personnel Management, Guidance Regarding Gender Identity and Inclusion in the Federal Workplace (Mar. 31, 2023), *available at* https://web.archive.org/web/20240815180906/https://www.opm.gov/policy-data-oversight/diversity-equity-inclusion-and-accessibility/reference-materials/guidance-regarding-gender-identity-and-inclusion-in-the-federal-workplace.pdf [https://perma.cc/T2CU-39TL]; Charles Ezell, Memorandum Re: Updated Guidance Regarding President Trump's Executive Order *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Jul. 10, 2025, https://www.opm.gov/chcoc/latest-memos/updated-guidance-regarding-executive-order-14168-defending-women-from-gender-ideology-extremism-and-restoring-biological-truth-to-the-federal-government.pdf [https://perma.cc/9EWP-QEED].

[6] Federal Management Regulation; Nondiscrimination Clarification in the Federal Workplace; Rescission, General Services Administration, 90 Fed. Reg. 19658 (May 9, 2025).

by agencies across the federal government to implement the Executive Order and OPM Memoranda (the "Agency Implementation Actions"). Ms. Withrow, and those similarly situated to her, face harm to their health and safety because of the actions of Defendants.

In this action under Title VII and the Administrative Procedure Act, Ms. Withrow seeks declaratory and permanent injunctive relief prohibiting Defendants (including their contractors, employees, and agents) from enforcing the OPM Memoranda, GSA Rescission, and Agency Implementation Actions and requiring Defendants to provide and continue providing Ms. Withrow and the putative class members access to restrooms that align with their gender identities. Ms. Withrow and the putative class also seek relief declaring the OPM Memoranda and GSA Rescission unlawful and vacating them. *See* Dkt. 1 (hereinafter "Compl.") at 55–56 (Prayer for Relief)).

Ms. Withrow respectfully moves for an order certifying the following class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All current and future civilian employees of the named defendants and their agencies whose gender identity differs from their "biological classification as either male or female" as defined in EO 14168 and who have been or will be prevented from using restrooms that align with their gender identity.

The proposed class readily satisfies the requirements of Rule 23. Regarding Rule 23(a), joinder is impracticable because the class includes approximately 6,200 current members and an unknown number of future ones. The class claims raise common questions that will generate common answers, including whether the challenged policies violate Title VII and the APA. Moreover, Ms. Withrow's claims are typical of the class members whom she seeks to represent, and she will fairly and adequately protect their interests—as will her experienced counsel.

The proposed class satisfies Rule 23(b)(2) because Defendants have acted, or will act, on grounds that apply generally to the class. Specifically, Defendants are denying employees access

to restrooms that align with their gender identity pursuant to the OPM Memoranda, GSA Rescission, and Agency Implementation Actions consistently across the Executive Branch and causing the same injury to all putative class members.

For these reasons, the class should be certified, with Ms. Withrow as class representative, and the undersigned as class counsel.

## II.    FACTUAL BACKGROUND

### A.    Gender Identity and Transgender and Intersex People

#### 1.    Gender Identity

Gender identity is a person's fundamental, internal sense of themselves as male, female, a blend of both, or neither.[7]  There is a medical consensus that gender identity is innate and that efforts to change a person's gender identity are unethical and harmful to a person's health and well-being.[8]

The concept of a person's "sex" refers to multiple physiologic attributes, such as chromosomes, gonads (glands that produce hormones and gametes), and other anatomy (internal and external reproductive parts); secondary sex characteristics that usually develop during puberty; and gender identity.[9]  "Sex assigned at birth" refers to the designation of sex generally noted on a birth certificate shortly after birth, almost always based solely on the appearance of an infant's external genitalia.[10]  The term "biological sex" is less precise than "sex assigned at birth" because

---

[7] *See, e.g.*, *Hecox v. Little*, 104 F.4th 1061, 1068 (9th Cir. 2024) (citing Joshua D. Safer & Vin Tangpricha, *Care of Transgender Persons*, 381 N. Eng. J. Med. 2451, 2451 (2019)).

[8] *See, e.g.*, Jessica N. Fish & Stephen T. Russell, *Sexual Orientation and Gender Identity Change Efforts are Unethical and Harmful*, 110 Am. J. Pub. Health 1113 (Aug. 2020) ("Major professional organizations oppose [sexual orientation and gender identity change efforts] (e.g., the American Medical Association, the American Psychological Association).").

[9] *Hecox*, 104 F.4th at 1068.

[10] *See, e.g.*, Jessica A. Clarke, *Sex Assigned at Birth*, 122 Colum. L. Rev. 1821, 1823–50 (Nov. 2022).

it does not account, for example, for intersex conditions and gender identity.[11]

## 2. Transgender and Intersex People

Transgender people have a gender identity that differs from their sex assigned at birth—which, as noted above, is an assignment typically based only upon external genital anatomy.[12]  A transgender woman is a person who was designated as male sex at birth but has a female gender identity; a transgender man is a person who was designated as female at birth but has a male gender identity.[13]  A transgender person cannot simply turn off gender identity, in precisely the same way as a non-transgender person (also known as "cisgender" person) cannot turn off gender identity.[14]

According to an August 2025 report by the Williams Institute at the University of California, Los Angeles, based on survey data, 2.8 million Americans identify as transgender.[15]  Defendant's own survey data show that 2,421 federal employees identified as transgender. Indeed, by extrapolating the survey's 39 percent response rate, there were approximately 6,200 transgender federal employees as of 2023.[16]

---

[11] *See id.*

[12] *See, e.g.*, *Hecox*, 104 F.4th at 1068–69.

[13] *Id.*

[14] *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 612 (4th Cir. 2020), *as amended* (Aug. 28, 2020).

[15] Decl. of J. Gleklen (Ex. 1) at ¶ 8 (citing Jody L. Herman et al., *How Many Adults and Youth Identify as Transgender in the United States?*, Williams Inst., UCLA Sch. of L. 1 (2025), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Pop-Update-Aug-2025.pdf [https://perma.cc/6PP4-2P7U]).

[16] *See* Decl. of J. Gleklen (Ex. 1) at ¶ 7 (citing Off. of Pers. Mgmt., *Federal Employee Viewpoint Survey Results* (2023), https://web.archive.org/web/20241213172749/https://www.opm.gov/fevs/reports/governmentwidereports/governmentwide-reports/governmentwide-management-report/2023/2023-governmentwide-managementreport.pdf [https://perma.cc/XJ5A-7WS7]. The version of the 2023 Federal Employee Viewpoint Survey on the U.S. Office of Personnel Management's website has been "[r]edacted in response to EO 14151 Ending Radical and Wasteful Government DEI Programs and Preferencing" to remove information regarding the number of transgender federal employees that responded to the survey. *See* Off. of Pers. Mgmt., *Federal Employee Viewpoint Survey Results Revised Edition* (Apr. 2025), https://www.opm.gov/fevs/reports/governmentwide-reports/governmentwidereports/governmentwide-management-report/2023/2023-

Intersex people, or people with "differences of sexual development," are born with a combination of sex characteristics—including chromosome patterns, hormone production or response, internal reproductive organs, or external genitalia—that do not fit typical binary notions of male or female bodies.[17]  Some intersex traits may be discovered at birth, some may not be discovered until puberty, and some may never be discovered.[18]  Some intersex variations cause intersex people to produce neither sperm nor ova, or produce one or the other, but to have external genitalia typically associated with the "opposite" sex.[19]  Like transgender individuals, most intersex people are assigned a binary sex designation at birth based solely on external genitalia.[20]  Some intersex people have a gender identity that matches their sex assigned at birth, while others do not—and may identify as transgender in addition to being intersex.[21]

According to estimates by the United Nations, between 0.05% and 1.7% of the population is born with intersex traits—meaning there are potentially as many as 5.6 million intersex people in the United States.[22]

### B.    Transgender and Intersex Federal Employees' Access to Restrooms Before the Executive Order

In 2012, in *Macy* v. *Dep't of Justice*, EEOC Appeal No. 0120120821, 2012 WL 1435995

---

governmentwide-management-report.pdf [https://perma.cc/J6CG-U4QJ].).

[17] *See, e.g.*, *Hecox*, 104 F.4th at 1069.

[18] *See, e.g.*, National Academies of Sciences, Engineering, and Medicine, *Measuring Sex, Gender Identity, and Sexual Orientation* 139 (2022) [hereinafter *Measuring Sex*], *available at* https://www.ncbi.nlm.nih.gov/books/NBK578625/pdf/Bookshelf_NBK578625.pdf [https://perma.cc/RGQ6-ZRHF].

[19] *See, e.g.*, *Hecox*, 104 F.4th at 1076.

[20] *See, e.g.*, *Sex Assigned at Birth*, 122 Colum. L. Rev. at 1828, 1854.

[21] *See, e.g.*, *Measuring Sex*, *supra* n.18, at 143.

[22] Decl. of J. Gleklen (Ex. 1) at ¶ 9 (citing United Nations Free & Equal, *Intersex People*, Office of the United Nations High Commissioner for Human Rights 1 (September 2025), https://www.unfe.org/sites/default/files/download/Intersex%20factsheet%202025%20-%20EN.pdf [https://perma.cc/DF96-YUZB]).

(Apr. 12, 2012), the Equal Employment Opportunity Commission recognized that discrimination based on transgender status is sex discrimination in violation of Title VII. And in 2015, in *Lusardi* v. *Dep't of the Army*, EEOC Appeal No. 0120133395, 2015 WL 1607756 (Mar. 27, 2015), the EEOC's Office of Federal Operations (whose decisions are binding on the federal government) ruled that denying an employee access to a common restroom consistent with the employee's gender identity is sex discrimination. The Department of Justice, which enforces Title VII against state and local governments, likewise recognized in 2014 that discrimination against transgender individuals constitutes sex discrimination.[23]

On August 8, 2016, the GSA, which is responsible for the management of federal properties, issued GSA Bulletin 2016-B1 to the heads of all federal agencies.[24] Consistent with the EEOC and DOJ interpretations of Title VII, GSA recognized that "the prohibition against sex discrimination in the Federal Management Regulation [41 CFR part 102-74, section 102-74.445] also prohibits discrimination due to gender identity, which includes discrimination based on an individual's transgender status."

The GSA directive specifically addressed access to restrooms, requiring that transgender federal employees be permitted to use a bathroom consistent with their gender identity and could not be forced to use single-occupancy restrooms.[25] The directive's requirement allowing for use of restrooms consistent with gender identity also permitted intersex federal employees the same access.

In 2017, OPM issued *Guidance Regarding the Employment of Transgender Individuals in*

---

[23] U.S. Dep't of Justice, Treatment of Transgender Employment Discrimination Claims (Dec. 15, 2014), https://www.justice.gov/file/188671/download [https://perma.cc/AQW3-X6B7].

[24] Federal Management Regulation; Nondiscrimination Clarification in the Federal Workplace, 81 Fed. Reg. 55148 (Aug. 18, 2016).

[25] *Id.*

*the Federal Workplace*, which stated: "[O]nce the employee has begun working in the gender that reflects the employee's gender identity, agencies should allow access to restrooms . . . consistent with the employee's gender identity."[26]  In 2023, OPM issued an updated *Guidance Regarding the Employment of Transgender Individuals in the Federal Workplace*, which provided that, "As the EEOC has explained, under Title VII, agencies should allow access to common and single-user restrooms and other facilities corresponding to an employee's gender identity."[27]

The GSA directive and the OPM's 2017 and 2023 guidance ensured that every employee in the Executive Branch was able to use restrooms that were consistent with the employee's gender identity until January of this year.

### C.    The Executive Order, OPM Memoranda, GSA Rescission, and Agency Implementation Actions

President Trump's Executive Order fundamentally rejects acknowledgment of the existence of transgender and intersex individuals. It scraps nearly a decade of federal government policy, spanning three presidential administrations, that proscribed discrimination against transgender and intersex individuals and recognized employee's right to use restrooms that accord with their gender identities.

Specifically, Section 4(d) of the Executive Order directs federal agencies to "tak[e] appropriate action to ensure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity."  The Executive Order sets forth a biologically incoherent definition of sex, linking it to an individual's production, at conception, of either the "large reproductive cell" or "small reproductive cell."  Executive Order § 2(a)-(e).[28]

---

[26] Decl. of J. Gleklen (Ex. 1) at ¶ 11.

[27] Decl. of J. Gleklen (Ex. 1) at ¶ 12.

[28] Decl. of J. Gleklen (Ex. 1) at ¶ 5.

In the days and months following the issuance of the Executive Order on the same day President Trump was inaugurated, OPM, GSA, and agencies throughout the Executive Branch took steps to enforce the Executive Order's government-wide mandate.

### D.    The OPM Memoranda and GSA Rescission

On January 29, 2025, Charles Ezell, Acting Director of the U.S. Office of Personnel Management, issued the initial OPM Memorandum, which directed each of the heads and acting heads of departments and agencies of the federal government, including the Department of Defense, to—no later than 5:00 p.m. EST on January 31, 2025—"[e]nsure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity."[29]

On May 9, 2025, the GSA withdrew the 2016 bulletin that had interpreted the nondiscrimination requirements of federal law to require that federal employees be permitted to use restrooms consistent with their gender identity.[30]

On July 10, 2025, Ezell issued a second memorandum noting that agencies should have already taken steps, including having "[e]nsured that intimate spaces (such as bathrooms, locker rooms, and lactation rooms) at Federal worksites designated for women, girls, or females (or for men, boys, or males) are designated by biological sex and not gender identity," and directing all federal agencies to report to the U.S. Office of Personnel Management on having taken these steps no later than August 11, 2025.[31]

### 1.    The Agency Implementation Actions

On January 31, 2025, Secretary of Defense Peter Hegseth issued a memorandum (the

---

[29] Decl. of J. Gleklen (Ex. 1) at ¶ 13.

[30] Decl. of J. Gleklen (Ex. 1) at ¶ 18.

[31] Decl. of J. Gleklen (Ex. 1) at ¶ 19.

"Hegseth Memorandum") for senior Pentagon leadership, commanders of the combatant commands, and Defense agency and Department of Defense field activity directors. The Hegseth Memorandum directed all components of the Department of Defense, including the National Guard Bureau in which Ms. Withrow is employed, to "[e]nsure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity."[32]

On January 31, 2025, Darin S. Selnick, performing the Duties of the Under Secretary of Defense for Personnel and Readiness, issued a memorandum for all Department of Defense civilian employees referencing the Executive Order and OPM Memorandum and stating that the "Department of Defense will take prompt action to ensure that all programs and activities align with [the] principles" of the Executive Order.[33]

On February 2, 2025, Colonel Matthew Garrison, Chief of Joint Staff for the Illinois National Guard, distributed a document to all full-time employees of the Illinois National Guard noting that the Executive Order required the agency to "ensure intimate spaces are designated by biological sex," and that the Illinois National Guard would "need to confirm compliance with . . . restrooms."[34]

On February 28, 2025, General Steven S. Nordhaus, Chief of the National Guard Bureau, issued a memorandum referencing the OPM Memorandum and Hegseth Memorandum and directing "that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity."[35]

---

[32] Decl. of J. Gleklen (Ex. 1) at ¶ 14.

[33] Decl. of J. Gleklen (Ex. 1) at ¶ 15.

[34] Decl. of J. Gleklen (Ex. 1) at ¶ 16.

[35] Decl. of J. Gleklen (Ex. 1) at ¶ 17.

### D.    Plaintiff LeAnne Withrow

Plaintiff LeAnne Withrow is a transgender woman who has served since August 2016 as a civilian federal government employee in the Illinois National Guard, which is part of the National Guard Bureau of the Department of Defense.[36]   Until 2023, Ms. Withrow also served as a staff sergeant in the Illinois Army National Guard.[37]   Ms. Withrow has served in major military exercises and events and has been recognized for her outstanding performance in these roles with numerous commendations.[38]

Ms. Withrow came out as transgender in 2016, shortly after the first ban on transgender military service members was lifted.[39]   She was the first openly transgender Illinois National Guard soldier.[40]

As a result of the Executive Order, OPM Memoranda, GSA Rescission, and Agency Implementation Actions, Ms. Withrow's supervisors within the National Guard Bureau in her chain of command have instructed Ms. Withrow by including her on emails with guidance stating that she may not use women's restroom facilities that align with her gender.[41]

Since receiving those instructions, memoranda, and other materials from her supervisors, it is Ms. Withrow's understanding that if she uses the women's restroom facilities, she faces the risk that her employer will discipline her for violating the administration's policy, the OPM Memorandum and Agency Implementation Actions, and her supervisors' instructions.[42]

---

[36] Decl. of Pl. at ¶ 4.

[37] Decl. of Pl. at ¶ 9.

[38] Decl. of Pl. at ¶¶ 8, 10–12.

[39] Decl. of Pl. at ¶ 13.

[40] Decl. of Pl. at ¶ 13.

[41] Decl. of Pl. at ¶ 16.

[42] Decl. of Pl. at  ¶ 17.

Defendants' actions have likewise and illegally barred civilian employees across the Executive Brance from using restrooms that align with their gender identity but not their sex as defined in the Executive Order.[43]

Ms. Withrow, like all members of the class, has been harmed by the challenged policies, because she cannot reliably access a bathroom consistent with her gender identity without facing discipline. For instance, many of her worksites lack a single user bathroom, and it is infeasible to take bathroom breaks that encompass the time needed to go to, use, and return from a single-user bathroom in another location.[44]  Constantly—every day—Ms. Withrow is required to make a decision about whether she can drink any beverages, including water. Because meetings may get moved or arrive unscheduled and she does not know when they might happen, planning to use the bathroom is a constant concern, all day, every day.[45]  To limit her need to use the bathroom, Ms. Withrow almost never eats breakfast, rarely eats lunch (and when she does eat lunch, usually limits her food intake to a granola bar or a spoonful of peanut butter), and drinks less than the equivalent of one 17 oz. bottle of water on most days.[46]

Ms. Withrow's experience, including both physical challenges regarding food and water intake and anxiety over the inability to fulfill a basic bodily function, are representative of the physical and emotional distress that all class members face as a result of the government-wide ban on the use of gender-aligned restrooms.

## III.    ARGUMENT

The Executive Order, OPM Memoranda, GSA Rescission, and Agency Implementation

---

[43] Decl. of J. Gleklen (Ex. 1) at ¶¶ 13, 19.

[44] Decl. of Pl. at  ¶¶ 19–20.

[45] Decl. of Pl. at  ¶ 28.

[46] Decl. of Pl. at ¶ 27.

Actions all adversely affect and will continue to affect thousands of federal government employees whose gender identity differs from their "biological classification as either male or female" as defined in the Executive Order. This case is appropriate for class certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2).

### A.    Legal Standard for Class Certification

Federal Rule of Civil Procedure 23 sets forth the requirements for class certification. Rule 23(a) contains four requirements for certifying any class:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Class certification also requires establishing that the proposed class action fits into one of the three categories listed in Rule 23(b). *See Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 190–191 (D.D.C. 2017). Here, class certification is appropriate under Rule 23(b)(2) because "the party opposing the class has acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Rule 23(a) and (b) analyses are distinct from the merits of the case. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 44 (D.D.C. 2018) (emphasis added) (quoting *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). In determining whether class

-13-

certification is proper, trial courts routinely consider material beyond the pleadings and rely on supplemental evidentiary submissions by the parties, including declarations and other evidence that would be inadmissible at trial. *See, e.g.*, *N.S. v. Hughes*, 335 F.R.D. 337, 353 & n.14 (D.D.C. 2020), *clarified sub nom. N.S. v. Dixon*, No. 1:20-cv-101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020) (rejecting argument that plaintiffs' declarations constituted hearsay because this evidence is "routinely accept[ed] . . . at the class certification stage"). Here, the Declarations and other evidence Ms. Withrow has submitted demonstrate that the class meets all requirements for certification.

### B.    The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.    Joinder of All Class Members Is Impracticable.

The numerosity requirement of Rule 23(a) is satisfied where the number of potential plaintiffs is "so numerous that joinder of all members" of the class would be "impracticable." Fed. R. Civ. P. 23(a)(1); *see also D.L. v. Dist. of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) (noting that plaintiffs must show "only that the difficulty or inconvenience of joining all members of the class [to] make use of the class action appropriate" (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007))). Here, this standard is satisfied for three independent reasons.

First, the class is made up of thousands of people. While there is no fixed number required to meet the standard of numerosity, a class of 40 members generally suffices. *N.S.*, 335 F.R.D. at 352 (numerosity is "presumptively" satisfied where class is 40 or more); *see also Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 206 (D.D.C. 2018) (same). Transgender employees are part of the proposed class because, as discussed above, their gender identity differs from their "biological classification as either male or female," as defined in the Executive Order. Intersex employees are

also part of the class for one of two reasons:  Either they do not fit into either of the scientifically inaccurate definitions of "male or female," or because their gender identity differs from their "biological classification as either male or female," as defined in the Executive Order.

According to Defendant's own survey data, 2,421 federal employees identified as transgender. While that alone satisfies the numerosity requirement, it likely undercounts the number of transgender federal employees. Indeed, by extrapolating the survey's 39 percent response rate, there were approximately 6,200 transgender federal employees as of 2023. These thousands of employees have lost access to gender-aligned restrooms in their places of employment. Based on this number of class members alone, Rule 23(a)(1) is satisfied.

Second, because the proposed class seeks prospective injunctive relief for future class members (as opposed to seeking relief exclusively for an existing set of individuals), joinder is "inherently impracticable."  *D.L. v. D.C.* ("*D.L. I*"), 302 F.R.D. 1, 11 (D.D.C. 2013), *aff'd*, *D.L. v. D.C.* ("*D.L. II*"), 860 F.3d 713 (D.C. Cir. 2017) (quoting *Olson v. Brown*, 284 F.R.D. 398, 408 (N.D. Ind. 2012)). "[C]lasses including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (internal quotation marks omitted). Here, Ms. Withrow cannot identify, let alone join, all the future individuals who will secure employment with the Executive Branch of the federal government and suffer discrimination under the challenged policies. Thus, joinder is impracticable.

Finally, the geographic dispersal of the class also precludes workable joinder. The proposed class consists of all Executive Branch civilian employees whose gender identity differs from their "biological classification as either male or female," as defined in the Executive Order, who live and work in all 50 states. The federal government has worksites throughout the entire

country; the challenged policies govern all of them. It is impracticable to identify, meet with, and join all current and future members of the proposed class given this geographic diffusion. *See Azar*, 925 F.3d at 1323 (discussing the relevance of "non-numerical considerations" to Rule 23(a)(1)); *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) (referencing that geographical dispersion relevant to impracticability of joinder); *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 459 (D.D.C. 2020) (same).

For these reasons, the joinder of all class members is impractical such that the class satisfies the requirement of Rule 23(a)(1).

### 2.     The Class Presents Common Questions of Law and Fact.

The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims "depend upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[C]ommonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct." *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003).

Here, there are questions of law or fact common to the class, including whether the OPM Memoranda, GSA Rescission, and Agency Implementation Actions violate Title VII and whether the OPM Memoranda and GSA Rescission violate the APA. If Defendants are permitted to continue to enforce the Executive Order through the OPM Memoranda, GSA Rescission, and Agency Implementation Actions, Ms. Withrow and all putative class members will continue to be subject to a common impact:  the unlawful prohibition of access to basic facilities in their places of employment, causing health and safety hazards.

Thus, Ms. Withrow and the putative class have identified a single alleged practice—a

blanket policy prohibiting Executive Branch federal government employees whose gender identity differs from their "biological classification as either male or female," as defined in the Executive Order, from using restrooms that align with their genders—that serves as the basis for every putative class member's injury. Courts in this District have uniformly certified classes where, as here, "plaintiffs allege widespread wrongdoing by a defendant" in the form of "a uniform policy or practice that affects all class members." *Thorpe v. Dist. of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (internal quotation marks omitted); *see also D.L. II*, 860 F.3d at 723–26 (affirming district court's certification of "three subclasses . . . each defined by reference to a 'uniform policy or practice' governing a specific stage of the special education process"); *R.I.L-R. v. Johnson*, 80 F. Supp. 3d 164, 181 (D.D.C. 2015) ("commonality is satisfied where there is 'a uniform policy or practice that affects all class members'" (quoting *DL v. Dist. of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013))); *Ramirez*, 338 F. Supp. 3d at 46–47 (rejecting argument that circumstances of detention or differing procedural posture of immigration proceedings defeated commonality and typicality because the plaintiffs "identified a single alleged practice . . . that provide[d] the basis for every class member's injury").

Answering the common legal questions regarding this challenged uniform governmental policy will "drive the resolution of the litigation," *Dukes*, 564 U.S. at 350, resulting in injunctive or declaratory relief that benefits all class members if the Court rules in favor of the class—or, if the class loses, the rejection of all class members' claims. Thus, commonality is satisfied.

### 3.    Ms. Withrow's Claims Are Typical of Those of the Class.

The typicality requirement of Rule 23(a)(3) requires that the claims of the representative parties be typical of those of the class as a whole. *Dukes*, 564 U.S. at 349. Typicality and commonality are related inquiries. Where the latter is satisfied, the former often is as well. *See Ramirez*, 338 F. Supp. 3d at 46; *R.I.L-R.*, 80 F. Supp. 3d at 181–82; *O.A. v. Trump*, 404 F. Supp.

3d 109, 155–56 (D.D.C. 2019). The typicality requirement, which is "not demanding," *L.G.M.L. v. Noem*, No. CV 25-2942 (TJK), 2025 WL 2671690, at *8 (D.D.C. Sept. 18, 2025), "focuses on whether the representatives of the class suffered a similar injury from the same course of conduct" as the unnamed class members. *Bynum*, 214 F.R.D. at 34 (emphasis in original). Satisfying this standard does not require an absence of "factual variations between the claims of the plaintiffs." *Id.* at 34–35. "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Id.* at 35.

Such is the case here. Each putative class member, including Ms. Withrow, faces the same principal injury (the inability to use gender-aligned restrooms at their places of employment), based on the same government practice (a government-wide ban on such usage). Moreover, because the government's ban does not require individual assessments, determining its lawfulness turns on evaluating the ban itself, not any distinctions between Ms. Withrow and other members of the class. Ms. Withrow and the putative class thus "share an identical interest in invalidation of" the ban on restroom access based on gender identity as enforced through the OPM Memoranda, GSA Rescission, and Agency Implementation Actions. *O.A.*, 404 F. Supp. 3d at 156; *see Afghan & Iraqi Allies*, 334 F.R.D. at 461 (holding typicality satisfied where "[a]ll class members' claims arise from the same event or practice or course of conduct and . . . are based on the same legal theory." (internal quotation marks omitted)).

### 4. The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is a two-part inquiry: The named plaintiffs "(i) must not have antagonistic or conflicting interests with the unnamed

members of the class and (ii) must appear able to vigorously prosecute the interests of the class through qualified counsel." *J.D.*, 925 F.3d at 1312 (internal quotation marks omitted) (quoting *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). Regarding the first prong, the proposed class representative—Ms. Withrow—has no antagonistic or conflicting interest with members of the putative class. Under the enforcement of the Executive Order through the OPM Memoranda, GSA Rescission, and Agency Implementation Actions, Ms. Withrow is prohibited from using gender-aligned restrooms in her role as a civilian government employee in the Illinois National Guard working at Camp Lincoln in Springfield, Illinois, while facing substantial health and safety risks in being forced to use men's restrooms in her employment. Ms. Withrow has a meaningful stake in the proceedings and the same interest as the putative class members in preventing enforcement of this illegal policy.

With respect to the second prong of the adequacy inquiry, Ms. Withrow is competent to represent the class. The adequacy requirement does not mandate "either that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation." *Garnett*, 301 F. Supp. 3d at 210 (citation omitted). The class representative needs only have "some rudimentary knowledge of [their] role as a class representative and [be] committed to serving in that role in litigation." *Id.* (citation omitted). Ms. Withrow's Declaration (Ex. 2) demonstrates that she is aware of the facts of this case and her role in it to satisfy the adequacy of her representation of the putative class. Further, as discussed below, she has retained experienced counsel to prosecute the interests of the class as a whole.

### C.    The Proposed Class Meets the Requirements of Rule 23(b)

In addition to satisfying Rule 23(a), Ms. Withrow must meet one of the requirements of Rule 23(b). Here, Ms. Withrow's allegations satisfy Rule 23(b)(2). This provision applies when the party opposing certification has "acted or refused to act on grounds generally applicable to the

class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2)'s requirements are satisfied when, as here, members of a putative class seek uniform declaratory and injunctive relief from policies and practices that are generally applicable to the class as a whole. Lawsuits that "challenge[] a policy 'generally applicable' to all class members" satisfy Rule 23(b)(2). *R.I.L-R*, 80 F. Supp. 3d at 182; *see Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted"). The D.C. Circuit has recognized that "Rule 23(b)(2) exists so that parties and courts, *especially in civil rights cases like this*, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief."  *D.L. II*, 860 F.3d at 726 (emphasis added); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of (b)(2) class actions (citations omitted)); *In re Dist. of Columbia*, 792 F.3d 96, 102 (D.C. Cir. 2015) ("Rule 23(b)(2) was intended for civil rights cases.").

Here, Ms. Withrow and all putative class members seek the same relief:  declaratory and permanent injunctive relief preventing implementation or enforcement of any policy or practice that prevents Ms. Withrow and members of the Class from using restrooms that align with their gender identity. The declaratory and injunctive relief requested would address the systemic injuries alleged by Ms. Withrow and each class member and would in no way differentiate among the class members. In other words, such relief would resolve the class members' claims "in one stroke." *Dukes*, 564 U.S. at 350. "The relief plaintiff[] seek[s]" is thus both "'generally applicable to the class'" and "indivisible," and certification under Rule 23(b)(2) is proper. *O.A.*, 404 F. Supp. 3d at 157 (quoting *Ramirez*, 338 F. Supp. 3d at 48); *accord, e.g.*, *Huisha-Huisha v. Mayorkas*, 560 F.

Supp. 3d 146, 166 (D.D.C. 2021) (holding that Rule 23(b)(2) is satisfied when a class seeks relief that "is generally applicable to the class and is indivisible" (internal quotation marks omitted)).

### D.    The Court Should Appoint Ms. Withrow's Attorneys as Class Counsel

Upon certifying the class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Under Rule 23(g), in appointing class counsel, a court considers (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A)–(B). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

As set forth in the supporting Declarations, Ms. Withrow's attorneys of record possess substantial expertise litigating constitutional and civil rights challenges to governmental action, including specific experience representing transgender plaintiffs in civil rights and APA litigation, as well as class actions. *See* Exs. 3, 4, 5, 6, 7 (Declaration of Shana Knizhnik; Second Declaration of Jonathan Gleklen; Declaration of Kaitlyn Golden; Declaration of Michael Perloff; Declaration of Michelle Garcia). Ms. Withrow's attorneys include representatives from non-profit organizations dedicated to civil rights work and attorneys at a leading multinational law firm that will commit the resources necessary to pursue this litigation and represent the class. *Id.* Accordingly, Ms. Withrow's attorneys are adequate class counsel and should be so appointed pursuant to Rule 23(g). *See, e.g.*, *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 141 n.23 (D.D.C. 2017) (evidence provided by plaintiffs weighed in favor of appointment of class counsel); *Samma v. United States Dep't of Def.*, 2020 WL 4501000, at *10 (D.D.C. Aug. 4, 2020) (same).

## IV.    CONCLUSION

For the foregoing reasons, Ms. Withrow requests that the Court certify the proposed Class under Rule 23(a) and 23(b)(2), appoint Ms. Withrow as Class Representative, and appoint the undersigned as Class Counsel.

Dated:  November 20, 2025

Respectfully Submitted,

_____
Shana Knizhnik (D.D.C. Bar No. 120840)
Harper Seldin (pro hac vice forthcoming)
Joshua Block (pro hac vice forthcoming)
Barbara Schwabauer (pro hac vice forthcoming)
American Civil Liberties Union Foundation
125 Broad St., New York, NY 10004
917-716-0609
sknizhnik@aclu.org
hseldin@aclu.org
jblock@aclu.org
bschwabauer@aclu.org

Michael Perloff (D.C. Bar No. 1601047)
Scott Michelman (D.C. Bar No. 1006945)
ACLU Foundation of the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
202-601-4267
smichelman@acludc.org
mperloff@acludc.org

Kaitlyn Golden (D.C. Bar No. 1022111)
Madeline Gitomer (D.C. Bar No. 1023447)
Paul Wolfson (D.C. Bar No. 414759)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
202-701-1789
kgolden@democracyforward.org
mgitomer@democracyforward.org
pwolfson@democracyforward.org

Michelle Teresa García (pro hac vice
forthcoming)
Priyanka Menon (pro hac vice forthcoming)
Roger Baldwin Foundation of ACLU, Inc.
150 N Michigan, Suite 600
Chicago, IL 60601
312-201-9740 ext. 319
mgarcia@aclu-il.org

Jonathan Gleklen (D.C. Bar No. 443660)
Rachel Forman (D.C. Bar No. 90017837)
Darrel Pae (pro hac vice forthcoming)
Whitney Turk (pro hac vice forthcoming)
Sangeeta Shastry (pro hac vice forthcoming)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
202-942-5000
jonathan.gleklen@arnoldporter.com
rachel.forman@arnoldporter.com
darrell.pae@arnoldporter.com
whitney.turk@arnoldporter.com
sangeeta.shastry@arnoldporter.com

Allissa Pollard (pro hac vice forthcoming)
Christopher Odell (pro hac vice forthcoming)
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street | Suite 4000
Houston, TX 77002-2755
713-576-2451
allissa.pollard@arnoldporter.com
christopher.odell@arnoldporter.com

Summer Perez (pro hac vice forthcoming)
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
212-836-7314
summer.perez@arnoldporter.com