# **EXHIBIT F**

# GENERAL SERVICES ADMINISTRATION

## 41 CFR Part 74

[Notice–MA–2016–05; Docket No: 2016–0002; Sequence No. 19]

## Federal Management Regulation; Nondiscrimination Clarification in the Federal Workplace

**AGENCY:** Office of Government-wide Policy (OGP), General Services Administration (GSA).

**ACTION:** Issuance of bulletin.

**SUMMARY:** In recent years, a number of Federal agencies, including the Equal Employment Opportunity Commission (EEOC), the Department of Education (ED), and the Department of Justice (DOJ), have all interpreted prohibitions against sex discrimination under various Federal civil rights laws and regulations. GSA has reviewed these interpretations and agency determinations, and is issuing a Federal Management Regulation (FMR) bulletin to clarify that the nondiscrimination requirement includes gender identity as a prohibited basis of discrimination under the existing prohibition of sex discrimination for any facility under the jurisdiction, custody, or control of GSA.

**DATES:** *Effective date:* August 18, 2016.

**FOR FURTHER INFORMATION CONTACT:** Mr. Dennis Oden, Director, Civil Rights Programs Division (AKB), Office of Civil Rights, 202–417–5711, or by email at *dennis.oden@gsa.gov.*

**SUPPLEMENTARY INFORMATION:** The EEOC, ED, and DOJ have all interpreted prohibitions against sex discrimination under various Federal civil rights laws and regulations, including Title VII of the Civil Rights Act of 1964 (as amended) and Title IX of the Education Amendments Act of 1973 (as amended), to encompass discrimination based on gender identity, including transgender status.

As required in the FMR 41 CFR part 74, section 102–74.445, all Federal agencies occupying property operated under, or subject to, the authorities of GSA must not discriminate by segregation or otherwise against any person or persons because of race, creed, religion, age, sex, color, disability, or national origin in furnishing, or by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided on the property.

Several Federal agencies with enforcement authority over Federal civil rights laws, including the EEOC, ED, and DOJ, have interpreted prohibitions against sex discrimination to include discrimination on the basis of gender identity, including transgender status. The attached bulletin clarifies that the prohibition against sex discrimination contained within the FMR includes discrimination due to gender identity, and is consistent with the legal interpretations issued by other Federal agencies, including the EEOC, ED, and DOJ, as well as guidance issued by the Office of Personnel Management (OPM).

Dated: August 8, 2016.

**Denise Turner-Roth,**
*Administrator.*

## General Services Administration

## Washington, DC 20417

August 8, 2016

GSA Bulletin 2016–B1

Real Property Management

   TO: Heads of Federal Agencies
   SUBJECT: Clarification of Nondiscrimination in the Federal Workplace.
   1. *What is the purpose of this bulletin?* This bulletin clarifies the nondiscrimination clause in the Federal Management Regulation (FMR), 41 CFR part 74 Facility Management for space under the jurisdiction, custody, or control of GSA regarding prohibitions against sex discrimination.
   2. *When does this bulletin expire?* This bulletin contains information of a continuing nature and will remain in effect until canceled.
   3. *What is the background?*
   a. Under the FMR 41 CFR part 74 section 102–74.445, Federal agencies occupying space under the jurisdiction, custody, or control of GSA must not discriminate by segregation or otherwise against any person or persons because of race, creed, religion, age, sex, color, disability, or national origin in furnishing or by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided on the property. The prohibition against unlawful discrimination derives from Federal laws passed by the United States Congress and enforced by specific Federal agencies.
   b. Title VII, Civil Rights Act of 1964 (Pub. L. 88–352) as amended (42 U.S.C. 2000e, *et seq.*), and its implementing regulations for Federal agencies at 29 CFR part 1614 Federal Sector Equal Employment Opportunity, makes it illegal to discriminate against someone in employment on the basis of race, color, religion, national origin, or sex. The U.S. Equal Employment Opportunity Commission (EEOC) and the U.S. Department of Justice (DOJ) have statutory authority for the enforcement of Title VII. In 2012, the EEOC clarified in ''Macy v. *Dep't of Justice,*'' EEOC Appeal No. 0120120821, 2012 WL 1435995 (Apr. 12, 2012), that discrimination based on transgender status is sex discrimination in violation of Title VII. The EEOC further ruled in ''Lusardi v. *Dep't of the Army,*'' EEOC Appeal No. 0120133395, 2015 WL 1607756 (Mar. 27, 2015), that denying an employee equal access to a common restroom corresponding to the employee's gender identity is sex discrimination, that an employer cannot condition this right on the employee undergoing or providing proof of surgery or any other medical procedure, and an employer cannot avoid the requirement to provide equal access to a common restroom by restricting a transgender employee to a single-user restroom instead (though the employer can make a single-user restroom available to all employees who might choose to use it). The EEOC also clarified in ''Baldwin v. *Dep't of Transportation,*'' EEOC Appeal No. 0120133080 (July 15, 2015) that a claim of discrimination on the basis of sexual orientation necessarily states a claim of discrimination on the basis of sex under Title VII. This EEOC appeal is available at *https://www.eeoc.gov/decisions/0120133080.pdf.* The EEOC's technical assistance regarding application of these rulings can be found at *https://www.eeoc.gov/eeoc/newsroom/wysk/enforcement_protections_lgbt_workers.cfm.*
   c. Likewise, DOJ, which is responsible for the overall enforcement authority for Federal civil rights laws, issued a memorandum ''Treatment of Transgender Employment Discrimination Claims,'' December 15, 2015 under Title VII of the Civil Rights Act of 1964 asserting the Department's position that Title VII's prohibitions against sex discrimination included discrimination based on gender identity. This memorandum is available at *https://www.justice.gov/file/188671/download.*
   d. Title IX of the Education Amendments of 1972 (Pub. L. 92–318), as amended, (20 U.S.C 1681, *et seq.*), and its implementing regulations at 28 CFR part 54 and 34 CFR part 106, prohibits discrimination under any education program or activity receiving Federal financial assistance. The U.S. Department of Education (ED) has statutory authority for the enforcement of Title IX. ED and DOJ on May 13, 2016 issued joint guidance to covered entities explaining that the prohibitions against

sex discrimination under Title IX includes discrimination based on gender identity, which encompasses discrimination based on transgender status. The guidance explains that ED and DOJ treat an individual's gender identity as the individual's sex for purposes of Title IX and its implementing regulations. This guidance is available at www.ed.gov/ocr/letters/colleague-201605-title-ix-transgender.pdf.

e. The U.S. Office of Personnel Management (OPM) has also provided guidance to Federal agencies about the treatment of transgender individuals. In a document entitled "Guidance Regarding the Employment of Transgender Individuals in the Federal Workplace," OPM notes that "transgender" refers to people whose gender identity and/or expression is different from the sex assigned to them at birth (e.g. the sex listed on an original birth certificate). The OPM Guidance further explains that the term "transgender woman" typically is used to refer to someone who was assigned the male sex at birth but who identifies as a female. Likewise, OPM provides that the term "transgender man" typically is used to refer to someone who was assigned the female sex at birth but who identifies as male. Lastly, OPM recognizes that a person does not need to undergo any medical procedure to be considered a transgender man or a transgender woman. The OPM guidance is available at https://www.opm.gov/policy-data-oversight/diversity-and-inclusion/reference-materials/addressing-sexual-orientation-and-gender-identity-discrimination-in-federal-civilian-employment.pdf.

4. *What is nondiscrimination on property under the jurisdiction, custody, or control of GSA?*

a. Consistent with the interpretations issued by the EEOC, ED, DOJ, and OPM, the prohibition against sex discrimination in the Federal Management Regulation 41 CFR part 74 section 102–74.445 also prohibits discrimination due to gender identity, which includes discrimination based on an individual's transgender status.

b. Federal agencies occupying space under the jurisdiction, custody, or control of GSA must allow individuals to use restroom facilities and related areas consistent with their gender identity. As consistent with guidance by DOJ and ED, the self-identification of gender identity by any individual is sufficient to establish which restroom or other single-sex facilities should be used. As noted by ED, EEOC, DOJ and OPM, transgender individuals do not have to be undergoing or have completed any medical procedure, nor can they be required to show proof of surgery to be treated in accordance with their gender identity and obtain access to the restroom corresponding with their gender identity. Further, Federal agencies may not restrict only transgender individuals to only use single-occupancy restrooms, such as family or accessible facilities open to all genders. However, Federal agencies may make individual-user options available to all individuals who voluntarily seek additional privacy.

5. *Who should I contact for further information or direct questions regarding this bulletin?* Further information regarding this bulletin may be obtained from the GSA Office of Civil Rights by sending an email message to Mr. Dennis Oden, Director, Civil Rights Program Division at *dennis.oden@gsa.gov* or by calling 202–417–5711.

Dated: August 8, 2016.

**Denise Turner-Roth,**
*Administrator.*

[FR Doc. 2016–19450 Filed 8–17–16; 8:45 am]
**BILLING CODE 6820–14–P**

# DEPARTMENT OF HOMELAND SECURITY

**Federal Emergency Management Agency**

## 44 CFR Part 64

[Docket ID FEMA–2016–0002; Internal Agency Docket No. FEMA–8451]

### Suspension of Community Eligibility

**AGENCY:** Federal Emergency Management Agency, DHS.

**ACTION:** Final rule.

**SUMMARY:** This rule identifies communities where the sale of flood insurance has been authorized under the National Flood Insurance Program (NFIP) that are scheduled for suspension on the effective dates listed within this rule because of noncompliance with the floodplain management requirements of the program. If the Federal Emergency Management Agency (FEMA) receives documentation that the community has adopted the required floodplain management measures prior to the effective suspension date given in this rule, the suspension will not occur and a notice of this will be provided by publication in the **Federal Register** on a subsequent date. Also, information identifying the current participation status of a community can be obtained from FEMA's Community Status Book (CSB). The CSB is available at *http://www.fema.gov/fema/csb.shtm.*

**DATES:** The effective date of each community's scheduled suspension is the third date ("Susp.") listed in the third column of the following tables.

**FOR FURTHER INFORMATION CONTACT:** If you want to determine whether a particular community was suspended on the suspension date or for further information, contact Patricia Suber, Federal Insurance and Mitigation Administration, Federal Emergency Management Agency, 400 C Street SW., Washington, DC 20472, (202) 646–4149.

**SUPPLEMENTARY INFORMATION:** The NFIP enables property owners to purchase Federal flood insurance that is not otherwise generally available from private insurers. In return, communities agree to adopt and administer local floodplain management measures aimed at protecting lives and new construction from future flooding. Section 1315 of the National Flood Insurance Act of 1968, as amended, 42 U.S.C. 4022, prohibits the sale of NFIP flood insurance unless an appropriate public body adopts adequate floodplain management measures with effective enforcement measures. The communities listed in this document no longer meet that statutory requirement for compliance with program regulations, 44 CFR part 59. Accordingly, the communities will be suspended on the effective date in the third column. As of that date, flood insurance will no longer be available in the community. We recognize that some of these communities may adopt and submit the required documentation of legally enforceable floodplain management measures after this rule is published but prior to the actual suspension date. These communities will not be suspended and will continue to be eligible for the sale of NFIP flood insurance. A notice withdrawing the suspension of such communities will be published in the **Federal Register**.

In addition, FEMA publishes a Flood Insurance Rate Map (FIRM) that identifies the Special Flood Hazard Areas (SFHAs) in these communities. The date of the FIRM, if one has been published, is indicated in the fourth column of the table. No direct Federal financial assistance (except assistance pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act not in connection with a flood) may be provided for construction or acquisition of buildings in identified SFHAs for communities not participating in the NFIP and identified