# EXHIBIT G

# Guidance Regarding the Employment of Transgender Individuals in the Federal Workplace

## Policy and Purposes

It is the policy of the Federal Government to treat all of its employees with dignity and respect and to provide a workplace that is free from discrimination whether that discrimination is based on race, color, religion, sex (including gender identity or pregnancy), national origin, disability, political affiliation, marital status, membership in an employee organization, age, sexual orientation, or other non-merit factors. Agencies should review their anti-discrimination policies to ensure that they afford a non-discriminatory working environment to employees irrespective of their gender identity or perceived gender non-conformity.

The purpose of this memorandum is to provide guidance to address some of the common questions that agencies have raised with the U.S. Office of Personnel Management (OPM) regarding the employment of transgender individuals in the Federal workplace. Some of these questions pertain to areas for which OPM has responsibility and others pertain to areas over which other agencies have responsibility. Because the guidance is of necessity general in nature, managers, supervisors, and employees should consult with their human resources offices and their counsel as to individual situations. They are also free to consult with OPM more generally.

## Core Concepts

*Gender identity* is the individual's internal sense of being male or female or an identity other than the traditional definitions of male or female. The way an individual expresses his or her gender identity is frequently called "gender expression," and may or may not conform to social stereotypes associated with a particular gender. Gender identity, which is an individual's internal sense of being male, female or something else, is distinct from sexual orientation, which describes to whom a person is romantically attracted. Most people have a fixed identity as male or female; those who do not may describe themselves as "non-binary" or "gender queer."

*Transgender*: Transgender individuals are people with a gender identity that is different from the sex assigned to them at birth. Someone who was assigned the male sex at birth but who identifies as female is a *transgender woman*. Likewise, a person assigned the female sex at birth but who identifies as male is a *transgender man*. A person who has a gender identity other than the traditional definitions of male or female may simply self-identify as transgender. Moreover, some individuals who would fit this definition of transgender do not identify themselves as such, and identify simply as men and women, consistent with their gender identity. The guidance discussed in this memorandum applies whether or not a particular individual explicitly self-identifies as transgender.

*Gender Non-conforming*: A broad term used to refer to individuals whose gender expression is different from social expectations related to gender.

*Transition*: Some individuals will find it necessary to transition from living and working as one gender to another. Social role transition – that is, living full-time in the gender role that is consistent with an individual's gender identity – is an important, and often the most important, aspect of a person's gender transition. Transgender individuals may also seek some form of medical treatment such as counseling, hormone therapy, electrolysis, and surgical interventions as part of their transition. These treatments may be deemed medically necessary for many individuals, based on determinations of their medical providers. Some individuals, however, will not pursue some (or any) forms of medical treatment because of their age, medical condition, lack of funds, or other personal circumstances, or because they may not feel the treatment is necessary for their well-being. Managers and supervisors should be aware that not all transgender individuals will follow the same pattern, and that decisions about which steps are necessary as part of an individual's transition are highly personal ones made by the individual in consultation with appropriate health professionals. Whatever form a specific individual's transition takes, all employees should be treated with dignity and respect. Moreover, the medical aspects of an individual's transition will often be less apparent, and in most cases are less important from a personnel management perspective, than an individual's social transition at the workplace. As used below, the term "transition" refers primarily to an individual's social transition, as this is the point at which an employee will usually bring these issues to the attention of the employee's employer.

## Transition While Employed

There are several issues that commonly generate questions from managers and employees who are working with a transitioning employee. In order to assist you in ensuring that transitioning employees are treated with dignity and respect, we offer the following guidance on those issues.

**Confidentiality and Privacy**: An employee's transition should be treated with as much sensitivity and confidentiality as any other employee's private or highly personal life experiences. Employees in transition often want as little publicity about their transition as possible. They may be concerned about safety and employment issues if other people or employers become aware that he or she has transitioned. Moreover, medical information received about individual employees is protected under the Privacy Act (5 U.S.C. 552a).

Employing agencies and their managers and supervisors should be sensitive to these specific concerns and advise employees to respect the privacy and dignity of transgender employees. Other employees should be provided information about the employee's transition only if they have a need to know the information in the performance of their duties, in accordance with the Privacy Act, 552a(b)(1). Personal information about the employee should not be released to anyone without a need to know unless the employee has provided prior written consent to having the information disclosed. Questions regarding the employee should be referred directly to the employee, consistent with the employee's wishes. It should be noted, however, that questions regarding a coworker's medical process, body, and sexuality are generally inappropriate. If it would be helpful and appropriate, employing agencies may have a trainer or presenter meet with employees to answer general questions regarding gender identity. Issues that may arise should be discussed confidentially as soon as possible between the employee and the employee's manager(s) and supervisor(s).

**Dress and Appearance**: Agencies are encouraged to evaluate, and consider eliminating, where appropriate, gender-specific dress and appearance rules. Once an employee has informed management that he or she is transitioning, consistent with the employee's wishes, agency dress codes should be applied to employees transitioning to a different gender in the same way that they are applied to other employees of that gender. Dress codes should not be used to prevent a transgender employee from living full-time in the role consistent with the individual's gender identity, nor should they be used to prevent an employee from maintaining a gender-neutral appearance.

**Names and Pronouns**: For everyday interactions and usage, managers, supervisors, and coworkers should use the name and pronouns appropriate to the gender identity of the employee, as expressed by the employee. Further, managers, supervisors, and coworkers should take care to use the requested name and pronouns in communications with the employee and with others regarding the employee. The requested name and pronouns to be used in the workplace are established by the employee with no additional documentation (such as legal name change or medical information) required. Repeated, intentional refusal to use the employee's requested name and pronouns, and/or repeated reference to the employee's former gender by managers, supervisors, or coworkers is contrary to the goal of treating all employees with dignity and respect. Such intentional conduct also may be inconsistent with the employee's decision to keep certain aspects of the employee's gender identity private. It should be noted that in some circumstances, such intentional conduct could be viewed as creating an unwelcoming work environment.

**Sanitary and Related Facilities**:  The Department of Labor's Occupational Safety and Health Administration (DOL/OSHA) guidelines (external link) require agencies to make access to adequate sanitary facilities as free as possible for all employees in order to avoid serious health consequences. For a transitioning employee, this means that, once the employee has begun working in the gender that reflects the employee's gender identity, agencies should allow access to restrooms and (if provided to other employees) locker room facilities consistent with the employee's gender identity. Transitioning employees should not be required to have undergone or to provide proof of any particular medical procedure (including gender reassignment surgery) in order to have access to facilities designated for use by a particular gender. Under no circumstances may an agency require an employee to use facilities that are unsanitary, potentially unsafe for the employee, located at an unreasonable distance from the employee's work station, or that are inconsistent with the employee's gender identity. Agencies are encouraged to provide unisex, single-user restrooms when feasible to maximize comfort and access for everyone, including individuals with disabilities and those with young children; however transgender employees should not be limited to using these facilities. Because every workplace is configured differently, agencies with questions regarding employee access to any facilities within an agency may contact GSA for further guidance.

**Workplace assignments and duties**: In some workplaces, specific assignments or duties are appropriately differentiated by gender. For a transitioning employee, once he or she has begun working full-time in the gender that reflects his or her gender identity, agencies should treat the employee as that gender for purposes of all job assignments and duties. Transitioning employees should not be required to have undergone or to provide proof of any particular medical procedure

(including proof of surgery) in order to be eligible for gender-specific assignments or duties. An agency generally may not require an employee to accept a gender-specific assignment or duty contrary to the gender under which the employee otherwise works, or limit gender-specific assignments or duties for an employee once the employee's Official Personnel Folder (OPF) has been reconstructed to reflect the new gender.

**Recordkeeping**: Consistent with the Privacy Act, the records in the employee's Official Personnel Folder (OPF) and other employee records (pay accounts, training records, benefits documents, and so on) should be changed to show the employee's new name and gender, once the employee has begun working full-time in the gender role consistent with the employee's gender identity and has submitted a request, including the requisite documentation, to update the employee's OPF. See 5 U.S.C. 552a (d). Instructions for how to reconstruct an employee's OPF to account for a gender change are set forth in Chapter 4, How to Reconstruct a Personnel Folder (PDF file) [128.9 KB].

An employee's name is typically updated in the OPF after the employee receives a legal name change. However, for a variety of reasons an employee may not be able or may choose not to obtain a legal name change at the same time the employee changes the name for everyday interactions. For this reason, even if the OPF has not been updated, agencies are encouraged to adopt procedures that allow employees to use the name of daily usage or first initial in or on email accounts, employee directories, business cards, name tags, and similar items not posing legal or security implications, without requiring a name change order.

**Sick and medical leave**: Employees receiving treatment as part of their transition may use sick leave under applicable regulations. Employees who are qualified under the Family Medical Leave Act also may be entitled to take medical leave for transition-related needs of themselves and their families.

**Hiring process**: During the hiring process, hiring managers and supervisors should be sensitive to the possibility that applicants have transitioned or are in the process of transitioning. The name and gender on the application may correspond with the person's current usage; however, background or suitability checks may disclose a previous name that indicates a gender different from the one the applicant is currently presenting. In such cases, if hiring managers are uncertain how an individual identifies, it is appropriate to respectfully ask the person how the person identifies so that the hiring manager can use the proper gender pronouns during the hiring process.

**Insurance Benefits**: Employees in transition who already have Federal insurance benefits must be allowed to continue their participation, and new employees must be allowed to elect participation, based on their updated names and genders. If the employees in transition are validly married at the time of the transition, the transition does not affect the validity of that marriage and coverage for eligible family members should be extended or continued even though the employee in transition has a new name and gender. Further information about insurance coverage can be found in the FEHB plan brochures available on the insurance page of OPM's website. https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/

**Specific Questions**: For further guidance on these issues, contact the Diversity Program Manager, Office of Diversity and Inclusion, Office of Personnel Management, 1900 E Street, NW, Washington, DC 20415, at (202) 606-0020.