# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEANNE WITHROW,<br>*on behalf of herself and all persons similarly situated,*<br><br>*Plaintiff*<br><br>v.<br><br>UNITED STATES OF AMERICA et al.,<br><br>*Defendants.* | Civil Action No. 1:25-_____ |

### DECLARATION OF LEANNE WITHROW

I, LeAnne Withrow, state and affirm that the following facts are true and correct:

1. I am LeAnne Withrow, and I am the named Plaintiff in this action.

2. I am over eighteen years old and of sound mind, and I am fully competent to make this declaration.

3. I have actual knowledge of the matters stated herein. If called to testify in this matter, I would testify truthfully and based on my personal experience.

4. I have served since August 2016 as a civilian federal government employee in the Illinois National Guard, which is part of the National Guard Bureau of the Department of Defense.

5. I am currently employed at Camp Lincoln in Springfield, Illinois.

6. Since September 2021, I have served as the Title 5 Lead Military and Family Readiness Specialist.

7. I previously served as an Equal Employment Opportunity Specialist and as a Family Programs Specialist.

8. I have been recognized for my outstanding performance in the above-mentioned

1

roles. I received a Sustained Superior Performance commendation from the Adjutant General of the Illinois National Guard in 2019 and another Superior Performance commendation from the Adjutant General in 2022.

9. Until 2023, I served my country as a staff sergeant in the Illinois Army National Guard, where I was a Chief Public Affairs Noncommissioned Officer.

10. Throughout my military career, I have participated in many major exercises and notable events around the world, including the 2012 NATO Conference, Operation Ulchi Freedom Guardian 13, Operation Ready Response, Exercises Eager Lion 19, Arctic Eagle 20, and Arctic Eagle-Patriot 22.

11. During my military career, I was also deployed to Guantanamo Bay, Cuba, in support of Operation Enduring Freedom and Joint Task Force Honor 2015–2016.

12. My military decorations include the Meritorious Service Medal, Army Commendation Medal, Joint Meritorious Unit Award, Army Achievement Medal with two Oak Leaf Clusters, Army Reserve Component Achievement Medal with three Oak Leaf Clusters, National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Armed Forces Reserve Medal with Bronze Hourglass and M Device, and Illinois National Guard Abraham Lincoln Medal of Freedom.

13. I came out as a transgender woman in 2016, shortly after the first ban on transgender military service members was lifted. I became the first openly transgender Illinois National Guard soldier.

14. In November 2019, I became the first to serve in my corrected gender and be recognized in the Defense Enrollment Eligibility Reporting System.

15. Like any federal government employee working in a government building, I use the

restroom at work. I have used the women's restroom at work since 2019 without incident.

16. Shortly after the beginning of this Administration, I became aware of Executive Order 14168 (the "Executive Order") and other steps this Administration has taken to change its policies regarding federal employee access to restrooms. Since the implementation of the Executive Order, the memorandum issued by the U.S. Office of Personnel Management that set forth guidance regarding the Executive Order's implementation (the "OPM Memorandum"), and several memoranda outlining further implementation (the "Agency Implementation Actions"), my supervisors within the National Guard Bureau in my chain of command have instructed me by including me on emails with guidance stating that I may not use women's restroom facilities, even though they are the ones that align with my gender identity and the ones I have used since 2019.

17. Since receiving those instructions, memoranda, and other materials from my supervisors, my understanding is that if I use the women's restroom facilities, I face the risk that my employer will discipline me for violating the administration's policy, the OPM Memorandum and Agency Implementation Actions, and my supervisors' instructions.

18. Complying with these new policies and requirements is not easy. Using the restroom is not optional.

19. There is a single-user restroom that is unlabeled near my office space at Camp Lincoln that I can use, but it is the only single-user restroom at Camp Lincoln that I am able to use. This bathroom is not always restocked with supplies or cleaned, and on multiple occasions I have had to restock it myself.

20. There are many other buildings at Camp Lincoln besides my building, including several in which I have regular cause to be present for meetings, activities, or events. I am also often called without notice to meetings in those other buildings at Camp Lincoln. Those buildings

3

have no restroom that I can use.

21. The Adjutant General's Building requires badged access through security doors to enter. I have a standing meeting there, a regular weekly Commander's Update Brief with the Chief of Staff of the Illinois National Guard and the Joint Staff. Attending that meeting requires me to walk across my entire building, exit my building, walk to the Adjutant General's Building, go through security doors, and ascend two flights of stairs to where my meetings are located. There is no restroom in that building that I am able to use, and the restroom I am permitted to use is approximately a 7-minute walk back across Camp Lincoln at my offices.

22. It is not feasible to leave meetings in other buildings to return to my building and use the sole single-user restroom available for my use at Camp Lincoln. For instance, I cannot tell the Chief of Staff of the Illinois National Guard that I need a fifteen minute restroom break from a meeting with him, which is the time that would be required to leave his building, travel to the building with the single-user restroom, and then travel to and badge into the Chief of Staff's building. To do so would interrupt our work, and it would also put me in an extremely difficult and embarrassing position, infringe on my professionalism, and be an invasion of privacy.

23. My job responsibilities also require that I regularly travel to the twelve other National Guard facilities in Illinois to supervise the work of other people in my department. Eight of those facilities do not have single-user restrooms. One of those facilities is fifteen to twenty minutes from the nearest town, not counting time spent at the security gate or using the restroom facilities at a private business.

24. My supervisor suggested that I limit the duration of my visits to those field offices without a single-user restroom so that I do not need to use a restroom during my visit. This is not practicable, because I need to spend four or more hours at each field office to complete my work

4

responsibilities, which entail ensuring that family assistance centers are running properly by assessing, training, and interacting with the staff there and ensuring conformity to standards. To shorten these visits could negatively impact my work and the program. Like any other person, I also cannot plan with complete accuracy when and where I will need to use the restroom.

25. Since earlier this year, each time I visit a National Guard facility without a single-user restroom, I am now forced to make alternative plans about where I can use the restroom.

26. The impact of this policy on my life is significant. It affects my health. Constantly—every day—I am required to decide whether I can eat or consume liquids. Often, I decide I cannot.

27. To limit my need to use the restroom, I skip breakfast almost every day and generally skip lunch as well. When I eat lunch, it is usually a granola bar or a spoonful of peanut butter, except on special occasions or when I can be reasonably certain I will not be required to leave my building for any extended period. On most days I drink a single cup of coffee and consume as little water as possible. I will typically drink less than the equivalent of one 17 oz. bottle of water throughout the entire day. I can feel the impact of these decisions on my physical health.

28. Meetings may get moved or arrive unscheduled, and I do not know when or in what building they might happen, which means that planning to use the restroom is a constant concern, all day, every day. I can feel the impact of these decisions on my emotional state. This constant focus has added significant stress and discomfort to my life and my job.

29. I would feel unsafe, humiliated, and degraded using a men's restroom, which does not align with my gender.

30. If I were to use the men's restroom, it would be disruptive to campus operations at

Camp Lincoln. I am a woman, and individuals seeing me enter the men's restroom might try to prevent me from doing so or physically harm me, as has happened to other transgender people. Others may ask me about my reason for using the men's restroom, which would be invasive and cause emotional distress, including humiliation, discomfort, or embarrassment.

31. The new policy has caused me to suffer physical and emotional distress.

32. As demonstrated by the facts set forth and declared under penalty of perjury above, I am aware of the facts of this case and understand my role in the case as proposed class representative.

33. I have an interest in pursuing Title VII and APA claims in this lawsuit for myself and on behalf of other civilian Executive Branch employees whose gender identity differs from their "biological classification as either male or female" as defined in the Executive Order and who have been or will be prevented from using restrooms that align with their gender identity. I have no interests that conflict with those of other class members.

34. I am aware of the requirements to serve as a class representative in this lawsuit, and I am willing to do so to the best of my ability.

35. Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct. Executed this 19th day of November, 2025, in Niantic, Illinois.

LeAnne Withrow