UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEANNE WITHROW,

      Plaintiff,

  v.                                Civil Action No. 25-4073 (JMC)

UNITED STATES OF AMERICA, et al.,

      Defendants.

**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................... ii

Introduction ........................................................................................................................ 1

Background ......................................................................................................................... 3

Argument ............................................................................................................................ 4

      I.      Plaintiff Lacks Standing To Assert Claims Against Most Title VII Defendants.... 4

      II.     The Court Should Dismiss this Case for Improper Venue. .................................... 7

            A.     The Court Should Dismiss this Case Because Venue Over Plaintiff's Title VII Claim is Not Proper in This District. ...................................................... 8

            B.     Alternatively, the Court Should Transfer This Case to the Central District of Illinois under 28 U.S.C. § 1406(a) or 1404(a). ..................................... 12

      III.    The Complaint Fails to State a Claim. .................................................................. 16

            A.     Plaintiff's Administrative Procedure Act Claims Fail. ............................. 16

            B.     Plaintiff's Title VII Claims Fail. .............................................................. 18

Conclusion ....................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aftab v. Gonzalez,*
597 F. Supp. 2d 76 (D.D.C. 2009) ......................................................................... 14

*Ahuruonye v. Dep't of Interior,*
312 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................... 17

*Air Excursions LLC v. Yellen,*
66 F.4th 272 (D.C. Cir. 2023) .................................................................................. 7

*Alessa v. Harker,* Civ. A. No. 20-1320 (ABJ),
2021 WL 5911180 (D.D.C. Mar. 31, 2021).......................................................... 8, 10

*Al-Saffy v. Vilsack,*
827 F.3d 85 (D.C. Cir. 2016) ................................................................................. 26

*Am. Nat'l Ins. Co. v. FDIC,*
642 F.3d 1137 (D.C. Cir. 2011) ............................................................................... 4

*Ani v. Zeldin,* Civ. A. No. 24-3328 (JMC),
2025 WL 3482732 n.3 (D.D.C. Dec. 4, 2025)....................................................... 8, 9

*Ariz. Christian Sch. Tuition Org. v. Winn,*
563 U.S. 125 (2011)................................................................................................. 4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................................... 16

*Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................................. 6

*Aucoin v. Prudential Ins. Co. of Am.,*
959 F. Supp. 2d 185 (D.D.C. 2013) ....................................................................... 14

*Babb v. Wilkie,*
589 U.S. 399 (2020)............................................................................................... 24

*Ballard v. United States,*
329 U.S. 187 (1946)............................................................................................... 21

*Bostock v. Clayton Cnty., Ga.,*
590 U.S. 644 (2020)................................................................................... 19, 20, 23

*Bourdon v. Dep't of Homeland Sec.*,
    235 F. Supp. 3d 298 (D.D.C. 2017) ................................................................. 13, 15

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ........................................................................................... 16

*Brewer v. Holder*, Civ. A.,
    No. 08-1747, 2013 WL 12399112 (D.D.C. Dec. 16, 2013) ...................................... 5

*Brown v. GSA*,
    425 U.S. 820 (1976) ........................................................................................... 17

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ........................................................................................... 22

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................. 5

*Cross v. Samper*,
    501 F. Supp. 2d 59 (D.D.C. 2007) ...................................................................... 17

*Darby v. Dep't of Energy*,
    231 F. Supp. 2d 274 (D.D.C. 2002) ....................................................................... 9

*Davis v. FEC*,
    554 U.S. 724 (2008) ............................................................................................. 5

*Del Pozo v. Perdue*, Civ. A. No. 18-2670 (DLF),
    2019 WL 13100197 (D.D.C. Apr. 23, 2019) ..................................................... 2, 11

*Dominguez v. UAL Corp.*,
    666 F.3d 1359 (D.C. Cir. 2012) ............................................................................ 5

*Donnell v. Nat'l Guard Bureau*,
    568 F. Supp. 93 (D.D.C. 1983) ............................................................................. 9

*E. Tex. Motor Freight Sys. Inc., v. Rodriguez*,
    431 U.S. 395 (1977) ............................................................................................. 5

*Edley v. Saul*, Civ. A. No. 18-1553 (RBW),
    2019 WL 3238635 (D.D.C. July 18, 2019) .......................................................... 11

*El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*,
    396 F.3d 1265 (D.C. Cir. 2005) .......................................................................... 17

*Elmore v. Burrows*, Civ. A. No. 21-2347 (JMC),
2022 WL 7458796 (D.D.C. Oct. 13, 2022) ................................................................ 27

*Ethnic Emps. of Library of Congress v. Boorstin*,
751 F.2d 1405 (D.C. Cir. 1985) .............................................................................. 17

*Faulkner v. Jones*,
10 F.3d 226 (4th Cir. 1993) .................................................................................... 22

*Fornaro v. James*,
416 F.3d 63 (D.C. Cir. 2005) .................................................................................. 17

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) ........................................................................... 17, 18

*Godwin v. Sec'y of HUD*,
356 F.3d 310 (D.C. Cir. 2004) ................................................................................ 17

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) .................................................................................. 23

*Gulf Coast Mar. Supply, Inc. v. United States*,
867 F.3d 123 (D.C. Cir. 2017) ................................................................................ 16

*Guzman v. City of New York*, Civ. A. No. 06-5832,
2010 WL 4174622 (E.D.N.Y. Sep. 30, 2010)........................................................... 25

*Hackley v. Roudebush*,
520 F.2d 108 (D.C. Cir. 1975) ................................................................................ 27

*Hibbert v. Schmitz*, Civ. A. No. 16-3028,
2019 WL 8405217 (C.D. Ill. Feb. 7, 2019)............................................................... 11

*Ill. Nat'l Guard v. Fed. Lab. Rels. Auth.*,
854 F.2d 1396 (D.C. Cir. 1988) .............................................................................. 11

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson
Controls, Inc.*,
499 U.S. 187 (1991)............................................................................................... 21

*James v. Booz-Allen & Hamilton, Inc.*,
227 F. Supp. 2d 16 (D.D.C. 2002)......................................................................... 8, 9

*Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*,
402 F.3d 1249 (D.C. Cir. 2005) ................................................................................ 4

*Jones v. Hagel*,
956 F. Supp. 2d 284 (D.D.C. 2013) ................................................................. 11, 13

*Joslin v. Dep't. of Interior*, Civ. A. No. 26-0579 (SLS),
2026 WL 26-0576 (D.D.C. Mar. 11, 2026) ............................................................ 14

*Kareem v. Haspel*,
986 F.3d 859 (D.C. Cir. 2021) .......................................................................... 6, 7

*Kasper v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) ............................................................................... 22

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ............................................................................................... 4

*Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*,
992 F. Supp. 1014 (N.D. Ill. 1998) ....................................................................... 15

*Liu v. Mayorkas*,
737 F. Supp. 3d 1 (D.D.C. 2024) ............................................................................ 7

*Lujan v. Defs. of Wildlife*,
504 U.S.555 (1992) ................................................................................................. 5

*Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*,
70 F.4th 582 (D.C. Cir. 2023) ............................................................................... 19

*McAfee v. U.S. Citizenship & Immigr. Servs.,* Civ. A. No. 19-2981 (DLF),
2019 WL 6051559 (D.D.C. Nov. 15, 2019) ........................................................... 12

*McCone v. Pitney Bowes, Inc.,*
582 F. App'x 798 (11th Cir. 2014) ........................................................................ 25

*Muldrow v. City of St. Louis, Mo.*,
601 U.S. 346 (2024) ................................................................................... 20, 21, 25

*Muldrow v. Garland,* Civ. A. No. 20-2958 (APM),
2021 WL 6844248 (D.D.C. Oct. 26, 2021) ........................................................... 10

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992) ............................................................................................... 26

*Ngonga v. Sessions*,
318 F. Supp. 3d 270 (D.D.C. 2018) ....................................................................... 14

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998)..................................................................................................... 20, 21

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)......................................................................................................... 6

*Parker v. United States*, Civ. A. No. 20-0430 (ABJ),
    2020 WL 10486669 (D.D.C. Oct. 21, 2020) .............................................................. 14

*Phillips v. Hill*, Civ. A. No. 25-0379 (SLS),
    2025 WL 3073699 (D.D.C. Nov. 4, 2025) ................................................................... 8

*Robinson v. Potter*, No. Civ. A. 04-0890 (RMU),
    2005 WL 1151429 (D.D.C. May 16, 2005)............................................................... 9, 10

*Sanchez-Mercedes v. Bureau of Prisons*,
    453 F. Supp. 3d 404 (D.D.C. 2020) ............................................................................. 4

*Saran v. Harvey*, Civ. A. No. 04-1847 (JBD),
    2005 WL 1106347 (D.D.C. May 9, 2005)................................................................... 10

*Seneca v. Price*,
    257 F. Supp. 3d 95 (D.D.C. 2017) .............................................................................. 17

*Simpson v. Donahoe*,
    Civ. A. No. 136141, 2015 WL 1918905 (N.D. Ill. Apr. 27, 2015).............................. 25

*Sosa v. N.Y.C. Dep't of Educ.*, No. 24-1396,
    2025 WL 1276123 (2d Cir. May 2, 2025) ................................................................... 25

*Spirides v. Reinhardt*,
    613 F.2d 826 (D.C. Cir. 1979).................................................................................... 26

*Stebbins v. State Farm Mut. Auto. Insur. Co.*,
    413 F.2d 1100 (D.C. Cir. 1969)................................................................................... 10

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).......................................................................................................... 6

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)........................................................................................................ 6

*Taylor v. Clark*,
    821 F. Supp. 2d 370 (D.D.C. 2011).............................................................................. 4

*Taylor v. Shinseki*,
13 F. Supp. 3d 81 (D.D.C. 2014).........................................................................................8

*Texas v. Equal Emp. Opportunity Comm'n*,
785 F. Supp. 3d 170 (N.D. Tex. 2025) ..........................................................................20, 22

*Tildon v. Alexander*,
587 F. Supp. 2d 242 (D.D.C. 2008)...................................................................................10

*Troster v. Garland*, Civ. A. No. 20-3584 (BAH),
2021 WL 5865447 (D.D.C. Dec. 10, 2021)..........................................................................9

*United States v. Virginia*,
518 U.S. 515 (1996)............................................................................................................21

*Varma v. Gutierrez*,
421 F. Supp. 2d 110 (D.D.C. 2006) ................................................................................8, 11

*Wiley v. Glassman*,
511 F.3d 151 (D.C. Cir. 2007) ...........................................................................................18

*Wolfram Alpha LLC v. Cuccinelli*,
490 F. Supp. 3d 324 (D.D.C. 2020) ...................................................................................13

*York v. Story*,
324 F.2d 450 (9th Cir. 1963) .............................................................................................21

**Statutes**

5 U.S.C. § 701(a)(1)..............................................................................................................17

5 U.S.C. § 704........................................................................................................................16

10 U.S.C. § 10508(b)(2) ........................................................................................................11

10 U.S.C. § 10508(b)(3) ........................................................................................................27

28 U.S.C. § 1391(e)(1)...........................................................................................................11

28 U.S.C. § 1391(e)(1)(B) .....................................................................................................11

28 U.S.C. § 1404(a) ...........................................................................................................7, 12

28 U.S.C. § 1406(a) .......................................................................................................2, 7, 12

28 U.S.C § 1404.......................................................................................................................8

29 U.S.C. § 633a(a)................................................................................................................ 25

42 U.S.C. § 2000e .................................................................................................................. 3

42 U.S.C. § 2000e-5(f)(3) ............................................................................................. 2, 8, 9, 10

42 U.S.C. § 2000e-16(a) ........................................................................................... 21, 24, 25, 26

42 U.S.C. § 3613 ................................................................................................................. 17

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................................................... 1, 4

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 16

**Other Authorities**

Exec. Order 14,168: *Gender Ideology Extremism and Restoring Biological Truth to the Federal
    Government*, 90 Fed. Reg. 8,616 (Jan. 20, 2025) ................................................................ 1, 18

*Selina S. v. Driscoll*,
    EEOC Doc. 2025003976 (EEOC Feb. 26, 2026). ............................................................ 22, 23

W. Burlette Carter, *Sexism in the "Bathroom Debates": How BathroomsReally Became
    Separated by Sex*, 37 Yale L. & Pol'y Rev. 227 (2018) ............................................................ 22

**INTRODUCTION**

Recognizing that biological truth is not bigotry, President Donald J. Trump acted to protect the "dignity, safety, and well-being" of both males and females by declaring it to be "the policy of the United States to recognize two sexes" and directing federal agencies to "ensure that intimate spaces . . . are designated by sex and not identity."[1]  Disagreeing with that policy, Plaintiff, Leanne Withrow, a male who self-identifies as female, brought this action against the whole of government to displace the President's directive.  But in substance, Plaintiff's claim is nothing more than a sex discrimination claim under Title VII of the Civil Rights Act of 1964 premised on the faulty view that sex-separate bathrooms are discriminatory.  An employer's rule that employees use the bathroom that corresponds to their biological sex is not disadvantageous treatment and applies evenly to both sexes regardless of trans-identifying status, negating any assertion of unlawful discrimination.  Accordingly, Defendants, various departments and agencies of the United States Government (collectively, the "United States"), respectfully move to dismiss this case for lack of subject matter jurisdiction, improper venue, and failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(1), (3), and (6).

First, this Court lacks subject matter jurisdiction over Plaintiff's Title VII claim asserted against the head of a government agency with which Plaintiff lacks an alleged employment relationship.  Specifically, that is, every "Title VII Defendant[]," Compl. (ECF No. 1) ¶¶ 30–112, except the head of the Illinois National Guard.  As to all other "Title VII Defendants," Plaintiff has not alleged any injury that could support standing to assert any claim against them.

---

[1]  *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order No. 14,168, 90 Fed. Reg. 8,615 (Jan. 20, 2025).  The pronoun "he" is used in accordance with that Executive Order.

Second, venue is improper in this district pursuant to Title VII's venue provision. Plaintiff is a civilian federal employee of the Illinois National Guard in Springfield, Illinois, so under the Title VII's specific venue provision, 42 U.S.C. § 2000e-5(f)(3), venue lies in the Central District of Illinois, not this judicial district. This action must be dismissed for improper venue. *See* 28 U.S.C. § 1406(a).

Asserting claims under the APA cannot cure the venue defect. Even if Plaintiff's APA claims were properly filed in this judicial district (which the United States does not concede), they cannot establish venue over the Title VII claim because Title VII's specific, strict venue rule controls over a generalized venue statute. *Del Pozo v. Perdue*, Civ. A. No. 18-2670 (DLF), 2019 WL 13100197, at *1 (D.D.C. Apr. 23, 2019) ("Where, as here, a plaintiff brings Title VII claims as well as claims governed by the general venue statute, the court is prohibited from exercising 'pendent venue' over the plaintiff's Title VII claims and must adhere strictly to the specific venue limitations intended by Congress."). Thus, the only judicial district where venue is proper for all of Plaintiff's claims is the Central District of Illinois. This case should be dismissed on that basis or, alternatively, transferred to the Central District of Illinois.

Finally, even accepting Plaintiff's allegations as true under Rule 12(b)(6), Plaintiff fails to state a claim. As an initial matter, Title VII's comprehensive statutory scheme forecloses any APA claim regardless of whether the specific Title VII claim asserted here has merit (it does not as addressed herein). Plaintiff cannot assert a Title VII claim against a myriad of government agencies (beyond his actual employer) but, even as to Plaintiff's employer, Plaintiff fails to allege an adverse employment action. Even if Plaintiff did, requiring employees to use the bathroom according to their biological sex, irrespective of their trans-identifying status, is not unlawful discrimination.

For these reasons, the United States respectfully requests that the Court dismiss this action.

**BACKGROUND**

Plaintiff claims to be "a civilian federal government employee in the Illinois National Guard," currently working as "the Lead Military and Family Readiness Specialist at Camp Lincoln in Springfield, Illinois." Compl. (ECF No. 1) ¶¶ 1, 172. Plaintiff also identifies as "a transgender woman[.]" *Id*. ¶ 2. Plaintiff alleges that the Illinois National Guard in 2025 adopted "policies that prohibit transgender and intersex federal employees from using restrooms consistent with their gender identity." *Id*. ¶ 12. Plaintiff asserts that those policies implement Executive Order 14,168 and a January 29, 2025, Office of Personnel Management memorandum "directing agencies to ensure that restrooms are designated by biological sex." *Id*. ¶ 10.

Plaintiff concedes there is a "single user restroom" at Camp Lincoln, his place of employment, and although the Complaint attempts to obfuscate the point, that "single user restroom" is near Plaintiff's actual office. *Id*. ¶ 15 (acknowledging the availability of a single user bathroom within the building where Plaintiff works but alleging a lack of availability in "other buildings" at Camp Lincoln where Plaintiff meetings might on occasion be held). Plaintiff asserts that of the "twelve National Guard facilities" Plaintiff must regularly visit, "eight do not have any single-user restrooms." *Id*. ¶¶ 15, 170, 173. Plaintiff asserts that this amounts to "disparate treatment of transgender and intersex employees[, which] constitutes discrimination in terms and conditions of employment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII)." *Id*. ¶ 16. Plaintiff also asserts that the issuance of the January 29, 2025, OPM Memorandum violates the APA. *Id*. ¶ 16.

Plaintiff brings a three-Claim Complaint: a Title VII disparate treatment claim "based on transgender or intersex status," *id*. ¶¶ 192 (Count I); and two APA claims challenging the issuance of the January 29, 2025, OPM Memorandum and GSA Recission of prior guidance, *id*. ¶¶ 195–

- 3 -

212 (Counts II and III).  Plaintiff seeks "declaratory and injunctive relief to set aside the unlawful actions of Defendants," remediate alleged violations of his civil rights, and allow him to use the women's restroom facilities.  *Id*. ¶ 18; *see also id*. at 55–56 (Prayer for Relief).  Plaintiff also seeks class certification and has filed a motion for class certification that remains pending, which the Court has stayed pending the outcome of this motion.  *See id*. at 55; Mot. for Class Cert. (ECF No. 4).

**ARGUMENT**

## I.    Plaintiff Lacks Standing To Assert Claims Against Most Title VII Defendants

A complaint must be dismissed when there is "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Because federal courts are courts of limited jurisdiction, and the law "presume[s]" that "a cause lies outside this limited jurisdiction,"  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted), courts must confirm jurisdiction "in the first instance,"  *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (citation omitted).  "To survive a Rule 12(b)(1) motion, a plaintiff must establish the Court's jurisdiction over his claims."  *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020).  "The Court must 'assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Id*.  (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).  The Court "may consider materials outside the pleadings" in determining whether it has jurisdiction. *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  "If the Court determines that it lacks jurisdiction as to any claim, it must dismiss that claim." *Sanchez-Mercedes*, 453 F. Supp. 3d at 414 (citation omitted).

Standing is a necessary predicate to any exercise of federal jurisdiction and, when it is lacking, the dispute fails to present a concrete case or controversy under Article III.  *See Ariz.*

*Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133–34 (2011); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). To establish standing, a plaintiff must demonstrate: (1) an injury-in-fact, specifically an injury that is "concrete, particularized, and actual or imminent"; (2) the injury is "fairly traceable to the challenged action"; and (3) it is "likely," not speculative; and 4) the injury is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff has the burden of establishing each element. *Lujan*, 504 U.S. at 561. Importantly, standing is "not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation modified). "Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id*. (internal quotation marks omitted). And, when a plaintiff purports to represent a putative class as Plaintiff does in this case, the standing analysis necessarily focuses on whether the putative class representative has standing to sue in his own right and "once a plaintiff's individual claims fail, he cannot be an adequate representative for class claims under Rule 23." *Brewer v. Holder*, Civ. A. No. 08-1747, 2013 WL 12399112, at *4 (D.D.C. Dec. 16, 2013) (emphasis removed) (citing *E. Tex. Motor Freight Sys. Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Plaintiff names as the "Title VII Defendants" dozens of federal departments, agencies, and officials, covering virtually every corner of the Executive. Compl. (ECF No. 1) ¶¶ 30–112. But Plaintiff's factual allegations concern only a select few. At most, Plaintiff asserts factual allegations in support of his Title VII claim against the Illinois National Guard, *id*. ¶¶ 165–66, Plaintiff's employer, and an APA claim against the Office of Personnel Management, *id*. ¶¶ 158– 60, and the General Services Administration, *id*. ¶ 161.

As regards Plaintiff's Title VII claim specifically, Plaintiff does not allege that any other "Title VII Defendant[]" currently has, or had, any role in allegedly denying Plaintiff the use of the women's bathroom at Fort Lincoln, Illinois or at the nearby Illinois National Guard facilities Plaintiff claims to frequent for work.  Indeed, there are no factual allegations in the Complaint concerning those defendants other than a generic, conclusory allegation that those agencies or agency heads are following the Executive Order.  Compl. (ECF No. 1) ¶¶ 162, 167.  This is insufficient to establish standing for Plaintiff to assert a Title VII claim against those agencies.  *See Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").

Moreover, beyond "nominal damages," the relief sought is entirely non-monetary.  Compl. (ECF No. 1) at 55–56.  Plaintiff seeks to "[e]njoin the Title VII Defendants . . . from implementing or enforcing any policy or practice that prevents" Plaintiff "and members of the Class from using restrooms that align with their gender identity."  Compl. (ECF No. 1) at 56.  To have standing to seek injunctive relief, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  "Because [Plaintiff's] complaint seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is certainly impending; he may not rest on past injury."  *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (internal quotation marks omitted).  In addition to being "certainly impending," allegations of future injury, moreover, must be "particular and concrete."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496–97 (1974)).

But Plaintiff here does not allege a "certainly impending" future injury with respect to any "Title VII Defendant[]," other than the Illinois National Guard. *See Kareem*, 986 F.3d at 865. Plaintiff does not even speculate that he will suffer any hypothetical future injury. *See Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (citations omitted) (conclusory statements are insufficient to establish standing). In assessing whether a complaint has adequately pled standing, this Court must set "mere conclusory statements aside" and determine whether the Complaint contains "sufficient factual matter, accepted as true, to support an inference of standing 'that is plausible on its face.'" *Id.* (citations modified). This "requires more than a sheer possibility that the plaintiff has standing to sue." *Id.* at 278 (citation modified). Plaintiff offers nothing to suggest that any of the "Title VII Defendants," other than the Illinois National Guard, will cause Plaintiff any future injury.

For these reasons, Plaintiff has failed to establish standing for his Title VII claim with respect to all "Title VII Defendants," other than the Illinois National Guard. Those "Title VII Defendants" should be dismissed for lack of subject matter jurisdiction given Plaintiff's lack of standing.

## II.    **The Court Should Dismiss this Case for Improper Venue.**

"Two federal statutes generally govern transfers of venue:" 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). *Liu v. Mayorkas*, 737 F. Supp. 3d 1, 3 (D.D.C. 2024). "Under 28 U.S.C. § 1406(a), if venue is improper in the original district, 'the district shall dismiss, or if it be in the interest of justice, transfer' to an appropriate venue." And under 28 U.S.C. § 1404(a), a district "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" "for the convenience of the parties and witnesses." *Id*. To determine whether § 1406(a) or § 1404(a) applies, the Court "must first assess whether venue is proper in this district." *Id*. Here, § 1406(a) controls because venue is

- 7 -

improper, so the Complaint should be dismissed on that basis.  Even if this Court finds that venue is proper in this District, the Court should still transfer the case for the convenience of the parties. 28 U.S.C § 1404.

**A.    The Court Should Dismiss this Case Because Venue Over Plaintiff's Title VII Claim is Not Proper in This District.**

Under Title VII, venue lies in a district where (1) "the unlawful employment practice is alleged to have been committed," (2) "the employment records relevant to such practice are maintained and administered," or (3) "the aggrieved person would have worked but for the alleged unlawful employment practice"; but (4) "if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."  42 U.S.C. § 2000e-5(f)(3).  The plaintiff usually bears the burden of establishing that venue is proper.  *Varma v. Gutierrez*, 421 F. Supp. 2d 110, 113 (D.D.C. 2006) (citation omitted); *see also Ani v. Zeldin*, Civ. A. No. 24-3328 (JMC), 2025 WL 3482732, at *3 n.3 (D.D.C. Dec. 4, 2025); *Phillips v. Hill*, Civ. A. No. 25-0379 (SLS), 2025 WL 3073699, at *1 (D.D.C. Nov. 4, 2025) (citation omitted); *Alessa v. Harker*, Civ. A. No. 20-1320, 2021 WL 5911180 (ABJ), at *3 (D.D.C. Mar. 31, 2021) (citation omitted).  As the basis for asserting venue in this Court over the Title VII claim, the Complaint references only the first of these provisions, namely, that Title VII venue is proper in this District as the location of the alleged "unlawful employment practice."  Compl. (ECF No. 1) ¶ 21.  Not so.

The location of the unlawful practice is "the locus of the alleged discrimination."  *James v. Booz-Allen & Hamilton, Inc.*, 227 F. Supp. 2d 16, 22 (D.D.C. 2002) (citation omitted).  To determine the "locus," the Court focuses on the "events having operative significance" on the alleged discrimination.  *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 86 (D.D.C. 2014).  As this Court recently explained, "[t]he place where the 'unlawful employment practice is alleged to have been

committed,' 42 U.S.C. § 2000e-5(f)(3), is 'the place where the *decisions* and *actions* concerning the employment practices occurred.'" *Ani*, 2025 WL 3482732, at \*2 (emphasis in original) (internal citation omitted).   Here, the alleged "unlawful employment practice" occurred at Plaintiff's place of employment: "Camp Lincoln in Springfield, Illinois."   Compl. (ECF No. 1) ¶¶ 1, 28; *see also* ¶ 27 (alleging that Plaintiff is "a civilian federal employee of the Illinois National Guard").   To the extent Plaintiff visits other Illinois National Guard field offices, those are "throughout Illinois."   *Id.* ¶ 173.   Further, the Complaint alleges that Plaintiff suffers harm from the "agency-specific implementation action[]" that "banned transgender and intersex federal employees from using restrooms that align with their gender identity" at the Illinois National Guard.   *Id.* ¶ 167.   Plaintiff does not allege he suffered any employment action in this District or to even have a need to travel to this District for work.   *See generally* Compl. (ECF No. 1).   Indeed, all alleged acts that could support Plaintiff's Title VII claim—the "events having operative significance"—occurred in Illinois.   *See id.* ¶¶ 22, 165, 173, 174.

That the government's broad policy requiring use of bathrooms according to biological sex ultimately was articulated in an Executive Order is "insufficient to establish proper venue" in this District.   *Robinson v. Potter*, No. Civ. A. 04-0890 (RMU), 2005 WL 1151429, at \*4 (D.D.C. May 16, 2005) (citing *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983); *Darby v. Dep't of Energy*, 231 F. Supp. 2d 274, 278 (D.D.C. 2002)).   Indeed, courts in this District consistently reject finding venue proper in this District in Title VII cases, "even when actions taken in the District 'may have had an impact on the plaintiff's situation.'"   *See Robinson*, 2005 WL 1151429, at \*3 (quoting *Donnell*, 568 F. Supp. at 94); *James*, 227 F. Supp. 2d at 22 ("The discriminatory act of 'operative significance' is the plaintiff's removal from the position of project manager and his replacement with a white male." (citation omitted)); *Troster v. Garland*, Civ. A.

No. 20-3584 (BAH), 2021 WL 5865447, at *5 (D.D.C. Dec. 10, 2021) (rejecting venue in the District of Columbia based on alleged "pattern and practices" from the F.B.I. headquarters in Washington). Put simply, "[c]laims that merely implicate national policies and involve limited acts by District-based officials but otherwise rest on events occurring entirely elsewhere do not justify maintaining this action here." *Muldrow v. Garland*, Civ. A. No. 20-2958 (APM), 2021 WL 6844248, at *2 (D.D.C. Oct. 26, 2021).

The only statutory provision permitting venue based on a defendant's location is the residual venue provision of 42 U.S.C. § 2000e-5(f)(3). But that provision anchors venue on a defendant's principal place of business only where none of the other provisions are satisfied. *See, e.g.*, *Saran v. Harvey*, Civ. A. No. 04-1847, 2005 WL 1106347 (JBD), at *1, 4–5 (D.D.C. May 9, 2005). Here, the other provisions are satisfied and point to the Central District of Illinois. Were the Court "to interpret actions or omissions of an administrative agency as decisions determined at the agency's headquarters then a plaintiff would always be able to establish venue wherever the principal office is located." *Robinson*, 2005 WL 1151429, at *4. That would be contrary to the express statutory language and would defeat Congress's intent "to limit venue to the judicial district concerned with the alleged discrimination." *Stebbins v. State Farm Mut. Auto. Insur. Co.*, 413 F.2d 1100, 1102 (D.C. Cir. 1969). "There is a long-standing and 'clear preference for adjudicating employment discrimination in the judicial district most concerned with the alleged discrimination.'" *Alessa*, 2021 WL 5911180, at *4 (quoting *Tildon v. Alexander*, 587 F. Supp. 2d 242, 243 (D.D.C. 2008)). Simply put, "venue cannot lie in the District of Columbia when a

- 10 -

substantial part, if not all, of the employment practices challenged in this action took place outside the District." *Jones v. Hagel*, 956 F. Supp. 2d 284, 289 (D.D.C. 2013) (citation modified).[2]

Whether this judicial district is the proper venue for Plaintiff's APA claims need not be decided at this time. What is clear is that those claims are subject to the more general venue provisions of 28 U.S.C. § 1391(e)(1) and could be brought in the Central District of Illinois where Plaintiff presumably resides[3] and where a "substantial part of the events or omissions giving rise to the claim[s] occurred." *See* 28 U.S.C. § 1391(e)(1)(B)–(C).

Further, even if Plaintiff's APA claims could have been properly filed in this judicial district had this action been limited to the APA (which Defendants do not concede), those claims cannot establish venue here over an action that includes a Title VII claim that is not properly filed in this judicial district. That would require application of the so-called "pendent venue doctrine," which would be inconsistent with the distinct and specific venue provisions of Title VII. *Del Pozo*, 2019 WL 13100197, at *1; *see also Edley v. Saul*, Civ. A. No. 18-1553 (RBW), 2019 WL 3238635, at *4 n.3 (D.D.C. July 18, 2019) ("Here, as previously discussed, Title VII and Rehabilitation Act claims are subject to Title VII's specific venue provisions, and '[i]n enacting the special Title VII

---

2    The only proper defendant in a Title VII action is "the head of the allegedly discriminating department, agency, or unit." *Varma*, 421 F. Supp. 2d at 113 (citation modified) (quoting 42 U.S.C. § 2000(e)-16(c)). The head of the Illinois National Guard is the Adjutant General, who has "final discretion over most matters relating to [National Guard civilian employees'] employment and termination." *Ill. Nat'l Guard v. Fed. Lab. Rels. Auth.*, 854 F.2d 1396, 1398 (D.C. Cir. 1988) (discussing status of National Guard civilian employees); *see also* 10 U.S.C. § 10508(b)(2), (3) (identifying the Adjutant General as the head of the National Guard of the specific jurisdiction). The Illinois National Guard is headquartered in Springfield, Illinois, in the Central District of Illinois. *Hibbert v. Schmitz*, Civ. A. No. 16-3028, 2019 WL 8405217, at *1 (C.D. Ill. Feb. 7, 2019). Thus, even under the fourth venue prong, venue is proper in the Central District of Illinois.

3    The Complaint does not disclose Plaintiff's place of residence but it can be presumed to be in the Central District of Illinois where he works. Regardless, it cannot be disputed that a substantial part of the events giving rise to Plaintiff's claims arose in the Central District.

- 11 -

venue statute[,] Congress deliberately sought to limit the venues in which Title VII actions might be brought.' . . . Therefore, 'the application of the pendent venue doctrine is inconsistent with the Congressional intent manifested in Title VII's specific venue provision[s].'"). Accordingly, because this case cannot be heard in its present form in this judicial district, this case should be dismissed for improper venue.

**B.    Alternatively, the Court Should Transfer This Case to the Central District of Illinois under 28 U.S.C. § 1406(a) or 1404(a).**

This Court has discretion under § 1406 to transfer the case to a judicial district in which the case could have been brought rather than dismiss it without prejudice for improper venue. See 28 U.S.C. § 1406(a). But the Court should only do so if it is "in the interest of justice" to transfer rather than dismiss. Here, transfer is not in the interests of justice because Plaintiff has no viable claim under Title VII or the APA as discussed in Section III below. If the Court declines to reach the arguments raised in Section III below and determines that a transfer rather than dismissal is warranted under § 1406(a), then the action should be transferred to the Central District of Illinois where venue exists under Title VII's specific venue provisions and where those threshold legal arguments can then be addressed.

But if this Court determines that venue is proper in this District, the Court should still transfer this case to the Central District of Illinois for the convenience of the parties under section 1404(a). 28 U.S.C § 1404(a). To determine whether transfer is proper under that provision, the Court weighs the "public and private interests." *McAfee v. U.S. Citizenship & Immigr. Servs.*, Civ. A. No. 19-2981 (DLF), 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019). In weighing transfer, "the Court considers the following private interest factors: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the

convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." *Bourdon v. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) (citation modified). There are three public interest factors for the Court to also consider: "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id.* at 308 (citation omitted). Under these factors, it is appropriate to transfer this case to the Central District of Illinois.

First, Plaintiff brought this action in this District. But the Complaint does not allege that Plaintiff resides in the District of Columbia, and as explained above, no material facts occurred in this District. The only alleged facts pointing to this District are the policy-setting actions by the President and the Executive Office of the President—an executive order and guidance memorandum from OPM. All other relevant actions by the Department of Defense, the National Guard Bureau, or the Illinois National Guard, occurred outside this District. In such circumstances, "[t]his factor . . . provides little if any support for maintaining venue in the District of Columbia." *Id*. at 305; *see also, e.g.*, *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 331–32 (D.D.C. 2020) (stating that plaintiff's choice to bring an action is afforded "limited" deference where the plaintiff was not a resident of the District of Columbia and his suit lacked "meaningful ties to the District of Columbia"). Simply put, "venue cannot lie in the District of Columbia when a substantial part, if not all, of the employment practices challenged in this action took place outside the District." *Hagel*, 956 F. Supp. 2d at 289 (citation omitted). To the extent Plaintiff may argue that the location of his counsel creates some nexus with the District of

- 13 -

Columbia, "the location of counsel carries little, if any, weight in an analysis under § 1404(a)." *Aucoin v. Prudential Ins. Co. of Am.*, 959 F. Supp. 2d 185, 190–91 (D.D.C. 2013) (citation omitted). Given these considerations, Plaintiff's "chosen forum is given diminished consideration." *Id.* at 191; *Joslin v. Dep't. of Interior*, Civ. A. No. 26-0576 (SLS), 2026 WL 686155, at *4 (D.D.C. Mar. 11, 2026) ("At bottom, [the] Complaint alleges 'identifiable relevant events occurring in the [Eastern District of California] and virtually none in this district'" and "[u]nder such circumstances, [the plaintiff's] choice of forum 'commands diminished deference,' . . . and carries little weight in the transfer analysis." (citation omitted)).

Second, the United States seeks to transfer this action to the Central District of Illinois as that is where Plaintiff works, the alleged discriminatory employment actions occurred, and Plaintiff presumably resides. And courts must "give[] some weight to [a] defendant's choice of forum," especially "when the other interests favor transfer and when plaintiff's choice does not receive the usual deference." *Parker v. United States*, Civ. A. No. 20-0430 (ABJ), 2020 WL 10486669, at *3 (D.D.C. Oct. 21, 2020) (citing *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018)). This factor weighs in favor of transfer.

Third, Plaintiff worked in the Central District of Illinois during the relevant time period. This makes for a uniquely stronger local connection of this dispute in the Central District of Illinois, rather than in this District.

Finally, as established above, none of the events directly underlying Plaintiff's claims occurred in this District, making this District an ill-suited location to hear Plaintiff's claims. *See, e.g.*, *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80–81 (D.D.C. 2009) (explaining that plaintiff's "choice of this district as a forum commands diminished deference" where "the claim involves identifiable relevant events occurring in the transferee district and virtually none in this district").

Plaintiff's duty station was the Central District of Illinois, where Plaintiff allegedly suffers injuries from not having access to Plaintiff's chosen bathroom.

Indeed, the Complaint is replete with factual assertions about the local conditions Plaintiff faces in Illinois. Those allegations include the location of the single-user restroom available to Plaintiff, *see* Compl. (ECF No. 1) ¶ 170, the size of the campus at Camp Lincoln, *id.*, the setting and location of a regular weekly Commander's Update Brief with the Chief of Staff of the Illinois National Guard and the Joint Staff, *id.* ¶ 171, and the time it takes to walk from one part of Camp Lincoln to another, *id.* ¶ 172. Plaintiff's allegations also put at issue her travel schedule to various locations in Illinois and the restroom setting at those locations, *id.* ¶ 173, the distance of those facilities from close by towns, *id.* at ¶ 15, and travel time to and from that facility to the closest town, *id.* ¶ 15. These local connections to the Central District of Illinois—and the absence of any connections to this judicial district—weigh in favor of transfer. *See Bourdon*, 235 F. Supp. 3d at 305. Access to evidence and witnesses to probe those allegations will be significantly more convenient from the Central District of Illinois than from this District.[4] Moreover, because the relief requested is principally injunctive in nature, Compl. (ECF No. 1) at 55–56, the Central District of Illinois "is the better forum to enforce and monitor" the requested relief, were it awarded. *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1021 (N.D. Ill. 1998).

The remaining factors—the congestion of the courts and the transferee court's familiarity with the law—are neutral or not germane to this dispute. There can be no dispute that each District

---

[4]    Defendants maintain that these allegations are overstated and omit, among other things, the close proximity of the single-user restroom to Plaintiff's office. In the event this action is not dismissed, such issues will need to be addressed by the Court and doing so will be more convenient in the Central District of Illinois than several hundred miles away in this judicial district.

(this District and the Central District of Illinois) faces congested dockets.  There is no reason to suspect that any federal district court is unfamiliar with federal employment discrimination law.

Accordingly, this Court should transfer this case to the Central District of Illinois if it is not dismissed outright.

### III.    The Complaint Fails to State a Claim.

A complaint must be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).  The Court must "take as true all well-pled factual allegations within [a plaintiff's] complaint" while also "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017).

#### A.    Plaintiff's Administrative Procedure Act Claims Fail.

##### 1.    Title VII Forecloses Plaintiff's APA Claims.

Plaintiff asserts two APA claims against officials from the Office of Personnel Management and the General Services Administration.  Compl. (ECF No. 1) ¶¶ 113-17 (identifying "APA Defendants"); ¶¶ 195-201 (Claim 2, contrary to law); ¶¶ 202-12 (Claim 3, arbitrary and capricious agency action).  Title VII forecloses both.

The APA permits review of agency action, but only when "no other adequate remedy in a court" exists.  5 U.S.C. § 704.  Section 704 "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (citation modified).  The "alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"

*Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)).  Relief is "adequate 'where a statute affords an opportunity for de novo district-court review'" of the agency action.  *Id*. at 523 (quoting *El Rio Santa Cruz Neighborhood Health Ctr.*, 396 F.3d at 1272).

Title VII provides the exclusive avenue of redress for alleged federal employment discrimination.  *Brown v. GSA*, 425 U.S. 820, 829 (1976).  Accordingly, a federal employee may not bring any claim under the APA "for employment discrimination that is actionable under Title VII."  *Ethnic Emps. of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985).  In other words, a "plaintiff's federal employment and discrimination and retaliation claims asserted under the APA . . . are preempted by Title VII."  *Ahuruonye v. Dep't of Interior*, 312 F. Supp. 3d 1, 14 (D.D.C. 2018); *see also Seneca v. Price*, 257 F. Supp. 3d 95, 98 (D.D.C. 2017) (Moss, J.) ("Under Title VII, an aggrieved federal employee like Seneca has the right to de novo review in a federal district court if he is dissatisfied with the outcome of the administrative EEO proceeding.").

This principle applies even when, as here, a plaintiff's specific claim is not actionable under Title VII because the APA excludes "claims seeking relief expressly or impliedly forbidden by another statute."  *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005).  Fundamentally, the APA as a whole does not apply "to the extent that [other] statutes preclude judicial review."  5 U.S.C. § 701(a)(1). Together with the Civil Service Reform Act, Title VII "provide[s] comprehensive and exclusive scheme[] for the redress of employment disputes by federal employees."  *Cross v. Samper*, 501 F. Supp. 2d 59, 61 (D.D.C. 2007); *see also Godwin v. Sec'y of HUD*, 356 F.3d 310, 312 (D.C. Cir. 2004) (concluding that "the private right of action [for housing discrimination] authorized by [42 U.S.C. § 3613] constitutes an adequate alternative remedy, rendering judicial review unavailable under the APA").

Challenging the Executive Order or OPM Memorandum under the APA does not displace this conclusion. Plaintiff's APA claims are not distinct because the Executive Order and OPM Memorandum are "inextricably linked" with Plaintiff's theory of discrimination. *Garcia*, 563 F.3d at 526. Indeed, the entire premise of the Complaint is a chain of administrative actions, beginning with Executive Order 14,168, Compl. (ECF No. 1) ¶¶ 149–56, running through OPM, GSA, the Department of Defense, and the National Guard Bureau, *id*. ¶¶ 157–67, all culminating with an implementing memorandum by the Chief of Joint Staff for the Illinois National Guard (what Plaintiff terms as the "Garrison Memorandum"), *id*. ¶ 165. Without the Garrison Memorandum, the policies set out by the Executive Office of the President in Washington or at the Pentagon in Arlington would have no direct impact on Plaintiff. Thus, Plaintiff's standing to assert a claim under the APA—the claimed "injury in fact" for that claim—is inextricably connected with his Title VII claim. Plaintiff acknowledges as much in the Title VII count of the Complaint, alleging that, "[t]hrough the Agency Implementation Actions that have prevented [Plaintiff] . . . from using restrooms that align with [Plaintiff's] gender identity, the Title VII Defendants have discriminated against [Plaintiff] . . . on the basis of sex with respect to a personnel action under Title VII." Compl. (ECF No. 1) ¶ 194. As such, Title VII's statutory scheme precludes a separate APA claim.

B.      **Plaintiff's Title VII Claims Fail.**

Plaintiff's claim under Title VII is limited to a claim of discrimination "with respect to a personnel action under Title VII," *id*. ¶ 194, what is commonly referred to as a disparate treatment claim. To plead a claim of discrimination based on disparate treatment, a plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). Plaintiff's allegations fail to do so. Restricting bathroom usage based on biological sex is not unlawful sex discrimination under Title VII. But even if it were, Plaintiff's

- 18 -

discrimination claim fails because the rules for bathroom usage that promote mutual privacy are not "adverse employment actions" within the meaning of Title VII.  At the very least, Plaintiff's claim is overly broad to the extent it asserts Title VII liability against any "Title VII Defendant" beyond the Illinois National Guard, Plaintiff's alleged employer.

1. <u>Sex Separate Bathrooms Are Not Impermissible Discrimination.</u>

In enacting Title VII, Congress did not prohibit all differential treatment in the workplace. Instead, Congress confirmed a commonsense principle that employees should not be disadvantaged based on immutable characteristics.  Thus, Plaintiff can prevail only if requiring an employee to use the bathroom consistent with his sex, regardless of his self-identifying status, amounts to discrimination based on sex.  It does not.

In Title VII, "sex" means biological sex.  Neither Title VII's text nor precedent provide a clear definition of sex, so this Court must look to the statute's "ordinary public meaning of its terms at the time of its enactment."  *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654 (2020); *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 595 (D.C. Cir. 2023) ("We give the term its ordinary, contemporary, common meaning." (internal quotation marks omitted)).  In 1964, sex was ordinarily understood to mean biological sex as evidenced by numerous dictionaries around that time. *See Sex*, Webster's New International Dictionary 2296 (2d ed. 1953) ("One of the two divisions of organisms formed on the distinction of male and female."); *Sex*, American Heritage Dictionary 1187 (1969) ("The property or quality by which organisms are classified according to their reproductive functions"); *Sex*, Random House Dictionary of the English Language 1307 (1966) ("The fact or character of being either male or female."); *Sex*, 9 Oxford English Dictionary 577 (1933) ("Either of the two divisions of organic beings distinguished as male and female respectively."); *Sex*, Webster's Seventh New Collegiate Dictionary (1969) (defining "sex" as "either of two divisions of organisms distinguished

- 19 -

respectively as male or female," "female" as "an individual that bears young or produces eggs as distinguished from one that begets young," and "male" as "of, relating to, or being the sex that begets young by performing the fertilizing function"). Thus, at the time of Title VII's enactment, sex would have been commonly understood to mean physiological differences between female and male, particularly with respect to their reproductive functions. No dictionary or contemporaneous source supports a definition of "sex" that rests on non-biological definition of the word "sex" that suggests inclusion of non-biological distinctions, gender, or trans-identifying preferences. And the Supreme Court has never held otherwise. *See Bostock*, 590 U.S. at 655 (assuming "that 'sex' signified what the employers suggest, referring only to biological distinctions between male and female" because nothing in the Court's holding "turns on the outcome of the parties'" disputed meaning); *see also Texas v. Equal Emp. Opportunity Comm'n*, 785 F. Supp. 3d 170, 188 (N.D. Tex. 2025) (noting "*Bostock* expressly refused to redefine 'sex' under Title VII" to include "gender identity").

In Title VII, "discriminate" means to treat one employee worse than another. "The words 'discriminate against'" "refer to 'differences in treatment that injure' employees." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 354 (2024) (quoting *Bostock*, 590 U.S. at 681). Put differently, Title VII prohibits employment practices that "that 'treat[] a person worse.'" *Id.* (quoting *Bostock*, 590 U.S. at 658). Thus, differential treatment is not enough. The employer's treatment must be worse than how it treats "others who are similarly situated." *Bostock*, 590 U.S. at 657; *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."). Such disadvantageous treatment must be on account of or because of the employee's sex or other

immutable characteristic enumerated in Title VII. *Muldrow*, 601 U.S. at 354. And the treatment "must be 'with respect to'" "an identifiable term or condition of employment." *Id.* (quoting § 2000e-2(a)(1)). In the federal-sector Title VII provision, the only "identifiable term or condition of employment" that is actionable is a "personnel action." 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination.")

Requiring employees to use the bathroom consistent with their biological sex is not disadvantageous treatment. Sex specific bathrooms are, by definition, differential treatment. But Title VII does not demand "asexuality nor androgyny in the workplace." *Oncale*, 523 U.S. at 81. To the contrary, Title VII permits employers to account for "enduring" "differences between men and women" given that "'[t]he two sexes are not fungible.'" *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quoting *Ballard v. United States*, 329 U.S. 187, 193 (1946)). Those innate and physical differences are especially pertinent in intimate spaces like bathrooms, raising unique sex-related privacy and safety concerns. Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post, Apr. 7, 1975, at A21 ("Separate places to disrobe, sleep, perform personal bodily functions are permitted, in some situations required, by regard for individual privacy."); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 219 n.8 (1991) (White, J., concurring) (collecting cases that recognize that "privacy interests may justify sex-based" rules). There is no "more basic subject of privacy than the naked body." *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963). And both sexes' interest in "shield[ing] one's unclothed figure from view of strangers, and particularly strangers of the opposite sex" "is impelled by elementary self-respect and personal dignity." *Id.* This interest only increases for women, who use bathrooms not just to change clothes or perform basic bodily

- 21 -

functions, but also for "attending to hygiene related to menstruation, pregnancy, or lactation." *Selina S. v. Driscoll*, EEOC Doc. 2025003976, at 19 (EEOC Feb. 26, 2026). "No man will ever experience a period, bear a child, or nurse an infant," and it is elementary that "female employees would expect to manage their unique, [innate] needs in a space accessible only to other women." *Id.* All showing, designating separate bathrooms for each biological sex is not a discriminatory action but a dignified one. *See Texas*, 785 F. Supp. 3d at 189 ("Title VII does not bar workplace employment policies that protect the inherent differences between men and women.").

Practice and precedent only confirm these principles. Sex-separate-spaces are not rooted in patriarchy but instead source from ancient practices preserving the privacy, safety, and dignity of each sex. *See* W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 YALE L. & POL'Y REV. 227, 259 (2018) (explaining that sex-separate-spaces for intimate functions date back to at least 138 A.D., aimed at protecting children and women from violence and harassment); *see id.* at 268–69 (noting that "around the time of America's founding, people deemed it natural to separate themselves by sex when performing intimate activities like bathing"). Thus, it is of no surprise that American courts have long maintained the consensus that sex-separate-bathrooms are permissible and rooted in common sense. *See, e.g.*, *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 468–69 (1985) (Marshall, J., concurring in the judgment and dissenting in part) ("A sign that says 'men only' looks very different on a bathroom door than a courthouse door."); *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 801 (11th Cir. 2022) ("There has been a long tradition in this country of separating sexes in some, but not all, circumstances—and public bathrooms are likely the most frequently encountered example."); *Faulkner v. Jones*, 10 F.3d 226, 232 (4th Cir. 1993) (emphasizing "society's undisputed approval of separate public rest rooms for men and

women based on privacy concerns," and noting the "need for privacy justifies separation and the differences between the genders demand a facility for each gender that is different"); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 634 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (Niemeyer, J., dissenting) ("In light of the privacy interests that arise from the physical differences between the sexes, it has been commonplace and universally accepted — across societies and throughout history — to separate on the basis of sex those public restrooms, locker rooms, and shower facilities that are designed to be used by multiple people at a time.").

Title VII was enacted against this backdrop, so consequently, requiring trans-identifying individuals to use the bathroom corresponding to their biological sex is not unlawful sex discrimination.   Because neither gender identity nor transgender status are a protected characteristic under Title VII, any such discrimination theory must be premised on sex.  And despite its holding, *Bostock* does not answer the question here given it "did not purport to address bathrooms, locker rooms, or anything else of the kind."  *Bostock*, 590 U.S. at 681.  At most, *Bostock* counsels the court to assess whether "changing the employee's sex would have yielded a different choice by the employer." *Id.* at 659–60.  Here, changing Plaintiff's sex does not result in a different choice.  Plaintiff is a biological male, so he must use the men's restroom (just like non-trans-identifying males).  And if Plaintiff were a biological female, Plaintiff would be required to use the women's restroom (just like non-trans-identifying females).  Regardless of an employee's sex, the employee must use the corresponding restroom.  And nothing in Title VII requires an employer to create an exception to an otherwise sex-neutral rule concerning bathroom usage. *See Selina S.*, EEOC Doc. 2025003976, at 21 (explaining that absent from Title VII's text is any requirement that trans-identifying persons be given "most-favored status").  Because the employer

- 23 -

treats all persons the same regardless of their sex, the employer does not violate Title VII by implementing a neutral rule for bathroom access.

In sum, even when accepting Plaintiff's allegations as true, he has not stated a Title VII claim for which relief can be granted. Title VII only prohibits an employer from treating an employee worse based on a protected characteristic. Requiring employees to use the bathroom corresponding to their sex is not adverse treatment, regardless of whether an employee is trans-identifying.

>    2.    Bathroom Usage Restrictions to Promote Mutual Privacy Are Not Adverse Actions.

In addition to failing to plausibly plead any discrimination based on sex, Plaintiff has failed to plausibly plead an adverse employment action, a necessary requirement for federal sector discrimination claim as Plaintiff acknowledges in the Title VII count of the Complaint. Compl. (ECF No. 1) ¶ 194 (alleging discrimination "on the basis of sex with respect to a personnel action").

As an initial matter, the federal sector provisions of Title VII provide that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination." 42 U.S.C. § 2000e-16(a). The Civil Service Reform Act defines "personnel actions" to certain specific employment actions (like promotion, disciplinary action, transfer or reassignment), as well as other, unenumerated "change[s] in duties, responsibilities, or working conditions" but only if they are "significant." *Id.* Accordingly, to state a Title VII claim against the federal government, Plaintiff must allege disparate treatment concerning a "personnel action." *See Babb v. Wilkie*, 589 U.S. 399, 405 (2020) (agreeing that the Civil Service Reform Act's definition of "personnel action" was "consistent with the term's meaning in general usage," and assumed it had the same meaning for purposes of the federal-sector provisions of the Age

Discrimination in Employment Act ("ADEA"), which parallel those of Title VII); *compare* 29 U.S.C. § 633a(a) (ADEA), *with* 42 U.S.C. § 2000e-16(a) (Title VII)).

But whether the operative standard is a "personnel action" as defined in the Civil Service Reform Act, or an adverse employment action as defined in *Muldrow*, 601 U.S. at 354–55 (addressing Title VII's private sector provision)—that is, "some harm respecting an identifiable term or condition of employment"—the result is the same. What is clear is that a Title VII plaintiff alleging disparate treatment must plead an employment action that impacts a term or condition of employment. Under either standard, rules governing bathroom usage do not constitute an adverse employment action within the meaning of Title VII. *See, e.g.*, *McCone v. Pitney Bowes, Inc.,* 582 F. App'x 798, 799 (11th Cir. 2014) (lack of amenities such as air conditioning, restrooms, microwave oven, and a refrigerator while performing job duties away from the office not adverse employment actions); *Sosa v. N.Y.C. Dep't of Educ.*, No. 24-1396, 2025 WL 1276123, at *3 (2d Cir. May 2, 2025) ("The requirement that a teacher, instead of a paraprofessional, supervise students while a teacher uses the bathroom is at most a 'minor annoyance[] that often take[s] place at work and that all employees experience,' and it does not amount to an adverse action."); *Guzman v. City of New York*, Civ. A. No. 06-5832, 2010 WL 4174622, at *15 (E.D.N.Y. Sep. 30, 2010) (finding that assignment of plaintiff to a post that lacked air conditioning and an adjacent bathroom did not constitute an adverse employment action under Title VII because "[a]n assignment to work at an inferior facility, without more, does not constitute an adverse employment action"); *Simpson v. Donahoe*, Civ. A. No. 136141, 2015 WL 1918905, at *9 (N.D. Ill. Apr. 27, 2015) ("The instruction to use a different bathroom did not change Simpson's pay or otherwise impact her benefits or job responsibilities. Thus, it is not an actionable adverse employment action.").

3.    Plaintiff's Claims Are Overly Broad as Plaintiff is Not an Employee of Any Defendant Except the Illinois National Guard.

Even if this Court rejects Defendants' arguments for dismissal on the merits, Plaintiff's Title VII claim should at least be dismissed as to all Defendants but the Illinois National Guard. Title VII gives "employees or applicants for employment" a cause of action for specified discriminatory practices. 42 U.S.C. § 2000e-16(a). "To invoke Title VII's protection against the [an agency], [a plaintiff must] establish, among other things, that [the plaintiff] was an 'employee[]' of that agency." *Al-Saffy v. Vilsack*, 827 F.3d 85, 96 (D.C. Cir. 2016). "That is because, as applied to the federal government, Title VII 'covers only those individuals in a direct employment relationship with a government employer.'" *Id.* (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 829 (D.C. Cir. 1979)). Whether a person is an employee of an agency is analyzed using "'traditional agency law principles.'" *Id.* (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). "In analyzing employment status, the common-law element of control is the principal guidepost." *Id.* (citation modified). The "touchstone is control." *Id.* at 97. It is up to the plaintiff to allege sufficient facts establishing an agency's "control over [the plaintiff's] work and employment." *Id.*

Here, Plaintiff names as "Title VII Defendants" dozens of federal agencies. Compl. (ECF No. 1) ¶¶ 30-112. Beyond naming those agencies, however, Plaintiff pleads no facts establishing any of those agencies, except the Illinois National Guard, has any "control" over Plaintiff's "work and employment." *Al-Saffy*, 827 F.3d at 97; *see also* Compl. (ECF No. 1). Indeed, Plaintiff only alleges to be "a civilian federal government employee in the Illinois National Guard" as "Lead Military and Family Readiness Specialist at Camp Lincoln in Springfield, Illinois." Compl. (ECF No. 1) ¶ 1; *see also id.* ¶¶ 27 (alleging that since 2016, Plaintiff has been a "civilian federal employee of the Illinois National Guard"); 28 (alleging that Plaintiff's "civilian employment with

- 26 -

the Illinois National Guard has included service as an Equal Employment Opportunity Specialist and as a Family Programs Specialist"); 170 ("There is only one single-user restroom available for [Plaintiff's] use on the entire 160-acre campus of Camp Lincoln, the Illinois National Guard Headquarters where [Plaintiff] works").  As a result, Plaintiff has failed to state a Title VII claim against any of the Title VII Defendants, *id*. ¶¶ 30–112, except the Adjutant General of the Illinois National Guard, *id*. ¶ 73.

Further, Congress specifically designated the Adjutant General as the head of the agency and the Illinois National Guard as the employing Agency of its Title 5 federal employees, including Plaintiff.  *See* 10 U.S.C. § 10508(b)(3).  And "'[t]he only proper defendant in a Title VII suit' by a federal employee 'is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired.'"  *Elmore v. Burrows*, Civ. A. No. 21-2347 (JMC), 2022 WL 7458796, at *4 (D.D.C. Oct. 13, 2022) (quoting *Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975)).  Thus, this Court should dismiss the Title VII claims against all Title VII Defendants, except the Adjutant General of the Illinois National Guard.  *Id*. (dismissing Title VII claims against improperly named defendants).

In sum, Plaintiff cannot prevail on his Title VII claim.  Even accepting his allegations in the Complaint as true, his employer's policy requiring employees to use the bathroom corresponding to their biological sex is not disadvantageously discriminatory.  Nor do his allegations in the Complaint demonstrate the policy does not apply evenhandedly based on protected characteristics under Title VII.  Plaintiff's claims further fail because rules governing bathroom usage do not amount to an adverse personnel action.  Indeed, Plaintiff has not alleged any tangible impact on Plaintiff's employment as a result of the policy.  And at best, his claims at

least fail as to all "Title VII Defendants" beyond the Illinois National Guard.  All showing, this Court should dismiss the Complaint.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court grant this motion and dismiss the Complaint for lack of subject matter jurisdiction, improper venue, and failure to state a claim.  In the alternative, the United States requests the Court transfer this case to the Central District of Illinois.

Dated: March 13, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

ANNA L. EDWARDS
Counsel to the Associate Attorney General

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/ *Dimitar P. Georgiev*_____
DIMITAR P. GEORGIEV, D.C. Bar #1735756
JEREMY S. SIMON, D.C. Bar #447956
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252 –2500 (main)

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LEANNE WITHROW,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Civil Action No. 25-4073 (JMC) |

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion to dismiss, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that this action is DISMISSED.

SO ORDERED:

_____                    _____
Date                                       JIA M. COBB
                                           United States District Judge