# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Leanne Withrow,** on behalf of herself and all persons similarly situated, <br><br><br> Plaintiff, <br><br> v. <br><br> **United States of America,** et al., <br><br> Defendants. | Case No. 1:25-4073-JMC |

## Brief of Amicus Curiae Feds For Freedom
## Supporting Defendants' Motion to Dismiss

---

**Jonathan A. Scruggs***
Arizona Bar No. 030505
**Henry W. Frampton, IV***
South Carolina Bar No. 75314
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

**Matthew S. Bowman**
D.C. Bar No. 993261
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
mbowman@ADFlegal.org

*Attorneys for Amicus Curiae Feds For Freedom*

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................ii

Interest of Amicus Curiae ................................................................................. 1

Introduction ...................................................................................................... 2

Argument ........................................................................................................... 3

I.      Separating bathrooms by biological sex does not intentionally discriminate based on transgender status............................................................................. 3

II.     Separating bathrooms by biological sex does not discriminate under Title VII. ....................................................................................................... 7

        A.      The required harm is lacking................................................................ 7

        B.      Any harm does not affect similarly situated individuals. .................... 11

III.    Separating bathrooms by biological sex does not discriminate because of sex under Title VII. ................................................................................. 13

IV.     Exempting employees would have significant ramifications. ......................... 15

Conclusion....................................................................................................... 18

Certificate of Service........................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Adams ex rel. Kasper v. School Board of Saint Johns County,*
    57 F.4th 791 (11th Cir. 2022) ................................................................... passim

*Anderson v. Crouch,*
    No. 22-1927, --- F.4th ----, 2026 WL 667919 (4th Cir. Mar. 10, 2026) .............. 5

*Automobile Workers v. Johnson Controls, Inc.,*
    499 U.S. 187 (1991) .................................................................................. 17

*Bauer v. Lynch,*
    812 F.3d 340 ............................................................................................ 17

*Bostock v. Clayton County,*
    590 U.S. 644 (2020) .................................................................................. passim

*Chaney v. Plainfield Healthcare Center,*
    612 F.3d 908 (7th Cir. 2010) ..................................................................... 12

*Department of Education v. Louisiana,*
    603 U.S. 866 (2024) .................................................................................. 6

*Dodge v. Giant Food, Inc.,*
    488 F.2d 1333 (D.C. Cir. 1973). .............................................................. 8, 9

*Griggs v. Duke Power Co.,*
    401 U.S. 424 (1971) .................................................................................. 10

*Grimm v. Gloucester County School Board,*
    972 F.3d 586 (4th Cir. 2020) ............................................................. 5, 6, 12, 13

*Harris v. Forklift Systems, Inc.,*
    510 U.S. 17 (1993). ................................................................................. 8, 11

*Hecox v. Little,*
    104 F.4th 1061 (9th Cir. 2024). ................................................................. 6

*Jespersen v. Harrah's Operating Co., Inc.,*
    444 F.3d 1104 (9th Cir. 2006) ................................................................. 8, 11

*Lange v. Houston County,*
    152 F.4th 1245 (11th Cir. 2025) ................................................................ 5

*Little v. Hecox,*
    145 S. Ct. 2871 (2025) .............................................................................. 6

*Michael M. v. Superior Court of Sonoma County,*
    450 U.S. 464 (1981) ................................................................................. 12

*Muldrow v. City of St. Louis,*
    601 U.S. 346 (2024) ............................................................................... 7–9

*Oncale v. Sundowner Offshore Services, Inc.,*
    523 U.S. 75 (1998) ......................................................................... 8, 11, 16

*Roe v. Critchfield,*
    137 F.4th 912 (9th Cir. 2025) ......................................................... 5, 6, 12, 16

*Shanks v. International Union of Bricklayers & Allied Craftworkers,*
    134 F.4th 585 (D.C. Cir. 2025) ................................................................. 15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College,*
    600 U.S. 181 (2023) ................................................................................. 11

*United States v. Skrmetti,*
    605 U.S. 495 (2025) .............................................................................. 4, 6

*United States v. Virginia,*
    518 U.S. 515 (1996) ........................................................................ 9, 12, 13

## Statutes

42 U.S.C. § 2000e-16 ............................................................................... 3, 16

42 U.S.C. § 2000e-2 ............................................................................ 3, 7, 13, 16

## Regulations

29 C.F.R. § 1604.2 ....................................................................................... 10

Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ........................................ 4

## Other Authorities

*Amenities*, 1500kstreet, https://perma.cc/JKR9-FHRS .............................................. 16

Rob Lilley, *What Are Crew Cabins Like on Cruise Ships*, Working on Cruise
    Ships, https://perma.cc/9EZR-J8RE ............................................................. 16

*Shower and Locker Facilitie*s, Office of Research Services National Institutes of
    Health, https://perma.cc/G5P8-CKA2 ........................................................... 16

**INTEREST OF AMICUS CURIAE**[1]

This case is about the nearly universal and once unremarkable practice of separating intimate spaces like bathrooms by biological sex. It asks whether Title VII's prohibition on workplace discrimination because of sex prevents the government, or any employer, from requiring employees to use the bathroom, or other intimate spaces, consistent with their biological sex. Amicus Feds For Freedom has an interest in the answer. It is a nonpartisan, nonprofit association of federal employees committed to stopping government overreach and defending employees' freedom. Its members are directly affected by whether all federal employees must use intimate spaces consistent with their biological sex. Its women members in particular would be harmed from allowing Plaintiff Withrow, a biological male, and other class members who are biologically male to use women's intimate spaces.

For example, before the policy change, one of Feds For Freedom's women members who uses the gym, showers, and locker room at her federal workplace would fear that a biological male would walk in as she was undressing or showering. She remembers how uncomfortable she felt knowing that she could do nothing about it. Another member had exactly that happen to her: a biological male coworker entered the locker room when she was half-dressed. She felt ashamed that he may have seen her like that, especially because she worked with him. And another member who was sexually assaulted by men growing up is afraid of allowing them into the women's bathroom. That is a vulnerable place where she needs to feel safe, not guarded and afraid every time she hears the door open. No doubt,

---

[1] Feds For Freedom is a nonprofit association. It has no parent corporation. Nor does any publicly held company own 10% or more of its stock. No counsel for a party authored this brief in whole or in part. And no person other than amici and their counsel made any monetary contribution intended to fund preparing or submitting this brief.

1

those members and women everywhere are harmed if employers cannot ensure that women's bathrooms and other intimate spaces remain just that—for women.

## INTRODUCTION

*Bostock v. Clayton County* reserved "sex-segregated bathrooms, locker rooms, and dress codes" for another day. 590 U.S. 644, 681 (2020). For this Court, that day is here. Withrow says that *Bostock* requires reading Title VII to prohibit the government and other employers from having all employees use bathrooms consistent with their biological sex. Withrow is wrong.

*Bostock* decided only that firing an employee based on transgender status "discharge[s] or otherwise discriminate[s] against that individual" because of sex. *Id.* It did not decide whether a policy requiring all employees to use bathrooms based on biological sex intentionally discriminates based on transgender status. Spoiler: it doesn't. So *Bostock* doesn't apply.

*Bostock* also expressly left open the question of injury. It declined to decide whether other employment policies—including those relating to "bathrooms, locker rooms, and dress codes"—"injure protected individuals" under Title VII. *Id.* (citation omitted). And sex-separated bathrooms do not cause the required harm. Nor do they distinguish between "similarly situated" individuals. *Id.* at 657. Likewise, whatever subjective harm an employee who identifies as transgender may claim from sex-separated bathrooms, that isn't a sex-based harm under *Bostock*. In short, nothing in *Bostock* suggests that employers must open sex-separated intimate spaces to members of the opposite sex.

Good thing too. Otherwise, there's no overstating the ramifications. Women would be forced to share communal bathrooms and other intimate spaces with biological men. That would apply alike in the federal workplace and the private sector. It would include locker rooms with communal showers and changing areas. And it

2

would cover sleeping quarters, which are commonplace in some industries. Worse, it would allow any man who identifies as transgender to access the female-only spaces. He need not have undergone any transition procedure. Anatomically no different from other men, he could sleep, shower, and change in front of women. And he could look on while they do the same. Title VII does not require that.

## ARGUMENT

Title VII prohibits employers from not hiring, firing, or otherwise "discriminat[ing] against any individual with respect to" the terms or conditions of employment "because of" sex. 42 U.S.C. § 2000e-2(a)(1). And it extends that prohibition to federal employees. *Id.* § 2000e-16(a). Requiring an employee to use the bathroom consistent with his biological sex does not discriminate against him because of sex.

## I.     Separating bathrooms by biological sex does not intentionally discriminate based on transgender status.

Start with *Bostock*. There, the Supreme Court held that when an employer fires an individual for being transgender, it discriminates because of sex. *Bostock*, 590 U.S. at 660. According to the Court, an employment decision based on transgender status necessarily includes sex discrimination: "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* So the working baseline is that intentionally discriminating based on transgender status includes "intentionally discriminat[ing]" because of sex. *Id.* at 662.

But that says nothing about separating bathrooms based on sex. The Court could not have been clearer on that. *Id.* at 681. It did not "address bathrooms, locker rooms, or anything else of the kind." *Id.* It addressed only whether firing an individual for his transgender status discriminates because of sex. *Id.* In fact, the Court expressly alluded to the open question whether sex-separated bathrooms

3

"injure protected individuals." *Id.* (citation omitted). But before getting there, consider a more basic problem in applying *Bostock* to bathrooms.

In *Bostock*, intentional discrimination based on transgender status was undisputed. An employer fired an employee "for no reason other than the employee's" transgender status. *Id.* at 653. No doubt, doing so intentionally discriminates based on transgender status. But a bathroom policy requiring all employees to use the bathroom corresponding to their sex does not do the same. There is no classification based on transgender status.

Take the policy here. It ensures "that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity." Exec. Order No. 14168, 90 Fed. Reg. 8615 § 4(d) (Jan. 20, 2025). Designating bathrooms by sex does not classify based on transgender status. At most, it classifies based on sex alone. *See Adams ex rel. Kasper v. Sch. Bd. of Saint Johns Cnty.*, 57 F.4th 791, 808 (11th Cir. 2022) (en banc). Indeed, individuals who identify as transgender fall into both camps of the designated bathrooms. *Id.* There are biological males who identify as transgender and biological females who identify as transgender. There is no facial classification based on transgender status.

*United States v. Skrmetti* leaves no doubt about that. 605 U.S. 495 (2025). There, the Supreme Court held that a law prohibiting certain gender-dysphoria treatments for children, while allowing such treatments for other medical conditions, did not discriminate based on transgender status. *Id.* at 511, 517. The law facially classified "minors into two groups: those who might seek puberty blockers or hormones to treat the excluded diagnoses, and those who might seek puberty blockers or hormones to treat other conditions." *Id.* at 519. And the second group included "both transgender and nontransgender individuals." *Id.* So there was "a 'lack of identity' between transgender status and the excluded medical diagnoses." *Id.*

That reasoning applies fully here. Designating bathrooms by sex at most classifies employees into two groups: biological males and biological females. Both groups include employees who identify as transgender. So there is a lack of identity between the classifications and transgender status. Even without the benefit of *Skrmetti*, the en banc Eleventh Circuit in *Adams* held just that about a similar bathroom policy. 57 F.4th at 809. A "policy can lawfully classify on the basis of biological sex without unlawfully discriminating on the basis of transgender status." *Id.* Just because *Bostock* held that intentional discrimination based on transgender status necessarily includes sex discrimination, "the converse" is not true. *Id.* A classification based on sex does not necessarily entail transgender-status discrimination. *Id. Skrmetti* leaves no wiggle room around that, and *Bostock* in no way suggests otherwise.

Indeed, applying both *Bostock* and *Skrmetti*, the en banc Eleventh Circuit also held that an insurance policy denying coverage for sex-change procedures did not discriminate based on transgender status. *Lange v. Houston County*, 152 F.4th 1245, 1252 (11th Cir. 2025) (en banc). And the Fourth Circuit recently held the same. *Anderson v. Crouch*, No. 22-1927, --- F.4th ----, 2026 WL 667919, at \*5 (4th Cir. Mar. 10, 2026). As the Fourth Circuit summarized *Skrmetti,* unless a facially neutral classification is mere pretext, there is no facial discrimination on the basis of transgender status if a policy does "not treat transgender people as a class differently from anyone else." *Id.* at \*4.

To be sure, some courts have gone the other way. The Fourth and Ninth Circuits have both held that bathroom polices discriminate based on transgender status under the Equal Protection Clause or Title IX. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 613 (4th Cir. 2020); *Roe v. Critchfield*, 137 F.4th 912, 923 (9th Cir. 2025). But neither the Fourth Circuit in *Grimm* nor the Ninth in *Critchfield* analyzed the bathroom policy as *Skrmetti* requires. *Grimm* merely held that

5

transgender status is a quasi-suspect class. 972 F.3d at 613. It failed to consider whether the policy classifies based on transgender status.[2] And *Critchfield* reasoned that only transgender students are barred from using the bathroom aligning with their gender identity. 137 F.4th at 923. But that cannot square with *Skrmetti*.[3] There, "only transgender individuals [would] seek puberty blockers and hormones for the excluded diagnoses." 605 U.S. at 519. Yet there was still a "lack of identity" between the classifications and transgender status because transgender and nontransgender individuals alike fell in the second group. *Id.* Even more so here: *both* groups include individuals who identify as transgender and who don't. The Ninth Circuit's reasoning cannot show intentional discrimination based on transgender status.

In fact, it sounds more like a disparate-impact theory. *See Adams*, 57 F.4th at 810 ("At most, [the] challenge amounts to a claim that the bathroom policy has a disparate impact on the transgender students …."). Individuals who identify as transgender are disproportionately affected by the policy—so the theory goes. But such a theory has no purchase here. For one thing, Withrow did not bring a disparate-impact claim. Through and through, the complaint alleges only disparate treatment. *See, e.g.*, Compl. ¶ 16 ("The disparate treatment of transgender and intersex employees constitutes discrimination in terms and conditions of employment on the basis of sex …."). For another, nowhere does *Bostock* suggest that a disparate

---

[2] Indeed, *Grimm*'s other holding that transgender status falls under sex classifications, *id.* at 608, cannot square with *Department of Education v. Louisiana*, 603 U.S. 866, 867 (2024) (per curiam) (preliminary injunctive relief warranted against agency rule defining "sex discrimination to include discrimination on the basis of sexual orientation and gender identity").

[3] Besides, *Critchfield* relied on the holding in *Hecox v. Little*, 104 F.4th 1061, 1079 (9th Cir. 2024). And the Supreme Court granted certiorari there. *Little v. Hecox*, 145 S. Ct. 2871 (2025).

impact on individuals who identify as transgender necessarily includes sex discrimination. And that does not logically follow. More on that later.

At bottom, separating bathrooms by sex does not intentionally discriminate based on transgender status. So *Bostock* has no bearing here. Withrow must show that the policy's sex-based classification—standing alone—is impermissible. That means showing both that the policy "discriminate[s] against" an individual and that the discrimination is "because of" sex. 42 U.S.C. § 2000e-2(a)(1). Withrow can do neither.

## II.    Separating bathrooms by biological sex does not discriminate under Title VII.

Title VII makes it unlawful for employers "to discriminate against" an employee. *Id.* That requires two things. First, it means showing harm to the employee. Second, it includes showing that the employee is similarly situated to unharmed employees. Consider both.

### A.    The required harm is lacking.

Start with the harm requirement. The phrase "otherwise to discriminate against" requires an employee to show "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). That harm need not be "significant." *Id.* at 360. But it must be real; it must leave the employee objectively "worse off." *Id.*

*Muldrow*'s discussion of the harm leaves no doubt there. The Court considered not just whether the employee subjectively felt worse off from her transfer—that would have required little analysis. Instead, it required that she was objectively worse off too. Accepting the allegations as true, the employee went from working a prestigious job to a less prestigious one, from having substantial responsibilities over priority investigations to mainly doing administrative work on low-

7

priority matters, and from having a regular schedule without weekend work to an irregular one with weekend work. *Id.* at 359. Those are objective harms.

Of course, the employee must subjectively feel harmed too. *Cf. Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). But subjective harm is not enough. If it were, there would be no room for policies that reflect "genuine but innocuous differences" between the sexes. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Under that kind of regime, all it would take for those policies to violate Title VII would be an employee who subjectively disagreed. For all intents and purposes, Title VII would require "asexuality" and "androgyny in the workplace." *Id.* But it doesn't.

Indeed, if subjective harm were enough, any grooming policy treating the sexes differently would be invalid based on how strongly an employee felt about it. But time and again, courts have explained that's wrong. Take the Ninth Circuit for example. It rejected a female employee's claimed harm of having to comply with a female-only makeup policy. *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1109 (9th Cir. 2006). No doubt, such a policy classifies based on sex. But judging objectively, it had "only a negligible effect." *Id.* at 1110. It mattered not that the employee felt "personal indignity" and "very degraded and very demeaned" from complying with the makeup policy. *Id.* at 1108.

Or consider something closer to home. In *Dodge v. Giant Food, Inc.*, the D.C. Circuit held that employer regulations imposing different hair-length restrictions for men and women did not violate Title VII. 488 F.2d 1333, 1335 (D.C. Cir. 1973). The regulations distinguished "among employees based upon their sex." *Id.* But that distinction was not "unlawful discrimination or classification within the meaning of the statute." *Id.* The reason was simple: Title VII does not "encompass sexual classifications having only an insignificant effect on employment opportunities." *Id.* at 1337.

That goes for the grooming classification. And it goes for a "requirement that men and women use separate toilet facilities." *Id.* at 1336. The two are "logically indistinguishable." *Id.* According to the D.C. Circuit, separating bathrooms by sex does not "limit employment opportunities" for one sex, does not "pose distinct employment disadvantages for one sex," and does not elevate one sex "to an appreciably higher occupational level than the other." *Id.* In short, it does not harm either sex.

That precedent is decisive here. It addressed the question *Bostock* expressly alluded to: whether separating bathrooms by sex "injure[s] protected individuals." 590 U.S. at 681. It does not. Judged objectively, there is no harm in separating bathrooms by sex. The D.C. Circuit has already said as much in *Dodge*. And that's exactly right. Such classifications are "innocuous"—they are "non-injurious." Oral Arg. Tr. 61, *Muldrow*, 601 U.S. 346 (No. 22-193); *see also id.* at 65–66.

No doubt, that's because the "[p]hysical differences between men and women … are enduring." *United States v. Virginia*, 518 U.S. 515, 533 (1996). Precedent, history, and common sense all recognize as much. And a person judging objectively would know that the reason for sex-separated bathrooms is not to degrade but to protect "sex-specific privacy interests." *Adams*, 57 F.4th at 806. That's why the practice of sex-separated bathrooms is both "nearly universal" and "longstanding" in this country. *Id.* at 796, 801. Throughout "American history and jurisprudence," the practice "has been widely recognized." *Id.* at 805 (collecting cases). That history and recognition belie any argument that there's objective harm in separating bathrooms based on sex.

That a particular employee identifies as transgender does not change that conclusion. True, such an employee may feel subjectively harmed. But subjective harm is not enough. There must be objective harm. And an objective consideration does not factor in the employee's personal situation or subjective views. It does not

factor in how a particular employee feels about using the bathroom matching his biological sex.

That has to be right. For one thing, harm under Title VII must be judged at the time the law was passed. *See Bostock*, 590 U.S. at 655 (considering "the time of the statute's adoption"). And no one in 1964 would have understood either that "to discriminate against" includes the so-called harm of requiring an employee to use the bathroom matching his biological sex or that there could be a different rule for particular employees. For example, contemporary agency guidance expressly recognized that some "States require that separate restrooms be provided for employees of each sex." 29 C.F.R. § 1604.2(b)(5). And it made clear that employers could not discriminate in order to avoid offering separate restrooms. *Id*. If policies mandating sex-separate bathrooms were permissible, objectively they don't cause harm, and they don't allow exceptions for particular employees—no matter personal situation or subjective views.

For another, including the personal situation or subjective views of a particular employee to allow a biological male to use the women's restroom makes no sense, given that doing so would harm women. At a minimum, a woman would experience harm in her "privacy interest in shielding [her] body from the opposite sex" and in being exposed to that of a biological male. *Adams*, 57 F.4th at 805. And rather than put up with that, many women could well quit their jobs. A law intended "to achieve equality of employment opportunities and remove barriers" for women would instead hinder them. *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30 (1971). A law expressly protecting against sex-based harms would facilitate sex-based harm. That cannot be right. It makes no sense for the objective inquiry to factor in the employee's personal situation or subjective views.[4]

---

[4] That holds even if analogizing to the hostile-work-environment context. There, courts consider the reasonable person's vantage point from "in the plaintiff's

Otherwise, the objective-harm consideration in *Jespersen* would have had to factor in the employee's strong aversion to wearing makeup. 444 F.3d at 1108. Or in *Dodge*, it would have had to factor in a male employee's particular motivations before deciding whether there's harm. But that is not how the analysis works. In *Muldrow*, none of the harm considerations included the employee's personal circumstances or subjective views. The same goes for here. The objective inquiry does not factor in whether an employee identifies as transgender or any other subjective, individualized objection.

To hold opposite would collapse the objective part of the test and render it subjective all the way down. It would negate decades of Title VII case law just because a group of people asserts that they internally feel they are the opposite sex. And there's no limit to what another group of people could internally conclude about themselves tomorrow, further upending the well-settled ordinary meaning of sex discrimination under Title VII. But that is not the law. For Title VII purposes, there is no harm in requiring an employee to use bathrooms based on biological sex—no matter whether that employee identifies as transgender.

### B.    Any harm does not affect similarly situated individuals.

Beyond requiring harm, Title VII also requires harmed individuals to be similarly situated to unharmed ones. *Bostock* recognized just that. The ordinary meaning of to "discriminate against" means treating an "individual worse than others who are similarly situated." *Bostock*, 590 U.S. at 657; *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 288 (2023)

---

position, considering 'all the circumstances.'" *Oncale*, 523 U.S. at 81 (quoting *Harris*, 510 U.S. at 23). In the plaintiff's position just means that the reasonable person views the conduct as happening to himself. And considering all the circumstances just means that he considers all the external factors together that could create the hostile environment. *See Harris*, 510 U.S. at 23 (listing external considerations).

(Gorsuch, J., concurring). So Title VII, like the Fourteenth Amendment, does not prohibit a policy that "realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981).

Men and women are similarly situated in most things—but not when it comes to using bathrooms. That should not be up for debate. They have "[p]hysical differences." *Virginia*, 518 U.S. at 533. And so their privacy interest in using communal bathrooms—in which they partially undress to use the toilet, completely undress to shower or change clothes, or perform other personal-hygiene functions—"is heightened when persons of the opposite sex are present." *Grimm*, 972 F.3d at 636 (Niemeyer, J., dissenting). Courts have recognized as much again and again. *See, e.g.*, *Virginia*, 518 U.S. at 550 n.19 ("Admitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements …."); *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010) (explaining "to accommodate privacy needs," the law "tolerates same-sex restrooms or same-sex dressing rooms"); *Critchfield*, 137 F.4th at 925 ("That some students in a state of partial undress may experience 'embarrassment, shame, and psychological injury' in the presence of students of a different sex is neither novel nor implausible." (citation omitted)).

Yet it's another question whether an employee who identifies as transgender is treated worse than others who are similarly situated. To succeed on a transgender-status discrimination claim, a biological male employee who identifies as female must be treated worse than a similarly situated employee. Because he wants to use the women's restroom, he must be similarly situated to biological women. At a minimum, in most cases, he's not.

Put aside the closer call for biological men who have undergone sex-reassignment procedures. Withrow, a biological male, has not alleged that he has

12

undergone such a procedure. Nor is the class limited to such individuals. *See* Compl. ¶ 185. And a biological male who identifies as female but still has the anatomical parts of a male is not similarly situated to biological women. The "[p]hysical differences" between the man identifying as a woman and biological women endure. *Virginia*, 518 U.S. at 533. There is no getting around that. The biological male who identifies as transgender remains "anatomically different from" a female. *Grimm*, 972 F.3d at 636 (Niemeyer, J., dissenting). And that's the ball game.

True, the Fourth Circuit in *Grimm* held otherwise. *Id.* at 610. But it sidestepped the relevant question. The court thought that a biological girl who identified as a boy was "similarly situated to other boys" because of gender identity alone. *Id.* at 610. But that makes no sense. For bathroom purposes, if physical differences remain, a person who identifies as transgender cannot be similarly situated to members of the opposite biological sex. That's because bathrooms are separated only *because* of physical differences and the resulting privacy interests. As the Eleventh Circuit explained, for a bathroom policy, "biological sex is the relevant respect with respect to which persons must be similarly situated, because biological sex is the sole characteristic on which the bathroom policy and the privacy interests guiding the bathroom policy are based." *Adams*, 57 F.4th at 803 n.6 (citation modified).

No matter how you cut it, Withrow cannot show that separating bathrooms by sex discriminates under Title VII.

## III.   Separating bathrooms by biological sex does not discriminate because of sex under Title VII.

Assume there is discrimination under Title VII—that there's harm to similarly situated individuals. The discrimination must still be "because of sex." 42 U.S.C. § 2000e-2(a)(1). And it's not.

As discussed earlier, the bathroom policy at most facially classifies only based on sex, not on transgender status. Yet any harm caused by the policy flows from transgender status, not the sex classification. So to fall under Title VII, the transgender-status discrimination here must necessarily factor in sex—like the discrimination in *Bostock* did. Otherwise, the discrimination is not "because of sex." But here, any transgender-status discrimination does not necessarily factor in sex. Because the policy does not facially classify based on transgender status, at most, there could be discrimination due to disparate impact. There is no intentional discrimination based on transgender status. And neither *Bostock*'s terms nor its logic suggests that unintentional discrimination based on transgender status necessarily factors in sex.

First, *Bostock* expressly considered only intentional discrimination under a disparate-treatment claim. 590 U.S. at 657–58, 681 ("In so-called 'disparate treatment' cases like today's, this Court has also held that the difference in treatment based on sex must be intentional."). Likewise, when it called it "impossible" to discriminate against a person for being transgender without discriminating based on sex, *Bostock* was discussing an intentional decision. *Id.* at 660. It was talking about an "employment decision"—a conscious choice to treat an individual differently based on homosexual or transgender status. *Id.* Indeed, when the case later reiterated the impossibility point, it expressly referenced intentional discrimination: "For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex." *Id.* at 662. By *Bostock*'s terms, there is no suggestion that its holding applies to claims of unintentional discrimination under a disparate-impact theory.

Second, *Bostock*'s logic does not apply to such claims. *Bostock* made clear that when an employer intentionally discriminates based on transgender status, it

14

must factor in sex to the determination. *Id.* But when an employer's decision *unintentionally* affects someone with a transgender status, that decision need not factor in sex at all. Consider a hypothetical to see why. An employer implements a policy giving employees with children extra days off every month. Employees who identify as transgender allege that they're disproportionately affected because they have children at a far lower rate than other employees. Under *Bostock*'s "simple" but-for-cause test, the outcome does not change. *Id.* at 656. Change the sex of a biological male who identifies as transgender and who doesn't have children. The policy still does not apply to that employee. The lack of children is the only but-for cause, not sex. *Bostock*'s logic does not work for disparate-impact claims.

Besides, the but-for standard for causality makes sense only for disparate-treatment claims. Only then are courts looking for but-for causes. When considering just the effects of a policy in a disparate impact claim, statistical disparity is generally what counts. *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 592 (D.C. Cir. 2025). By definition, courts are not looking for a but-for cause to show sex discrimination. So it makes no sense to mix and match the causality standards for disparate treatment and impact. There can be a disparate impact on individuals who identify as transgender and not the same impact on individuals of one sex. And assuming the former here, the latter is true. The sexes are equally affected by the policy. All employees—male and female alike—must use the bathroom corresponding to their biological sex. There is no discrimination because of sex.

## IV.    Exempting employees would have significant ramifications.

Finally, consider the ramifications if Title VII requires employers to open sex-separated spaces to some members of the opposite sex. True, Withrow's claim is about the federal government as employer. But if the federal government cannot

maintain sex-separated bathrooms under § 2000e-16(a) and § 2000e-2(a)(1), private-sector employers likewise cannot under the latter. So all employers would be unable to maintain bathrooms exclusively separated by sex. And what goes for bathrooms goes for other intimate spaces too. Office buildings and workspaces that have gyms with locker rooms with communal showers and changing areas are commonplace.[5] And certain professions frequently include communal sleeping quarters for their employees: cruise ships, fire stations, and hospitals, to name a few.[6]

For all such intimate spaces, employers would have to allow a biological male to use the women's communal area if he identifies as transgender—no matter if he's had any transition procedure. Anatomically, he can be the same as any other man. Yet he still may sleep in a room full of women. He may shower in front of them. He may get changed in front of them. And he may look on while they sleep, shower, and change in front of him. Plus, that's not to mention attending to personal needs relating to a female-only bodily function. Women use restrooms and other intimate spaces to attend to menstruation, pregnancy, and lactation needs. And a biological male who will never experience the same gets to be present. Safe to say, many women could easily experience "embarrassment, shame, and psychological injury." *Critchfield*, 137 F.4th at 925 (citation omitted). In fact, they could well bring their own Title VII hostile-work-environment claim. And they'd likely win. *See Oncale*, 523 U.S. at 80–81. What's an employer to do with that?

---

[5] That should not be up for debate. Any quick internet search confirms as much. *See, e.g.*, *Shower and Locker Facilities*, Office of Research Services National Institutes of Health, https://perma.cc/G5P8-CKA2 (detailing showers and lockers in NIH buildings); *Amenities*, 1500kstreet, https://perma.cc/JKR9-FHRS (noting gym, locker room, and showers in private-sector building).

[6] Again, that should not be up for debate. *See, e.g.*, Rob Lilley, *What Are Crew Cabins Like on Cruise Ships*, Working on Cruise Ships, https://perma.cc/9EZR-J8RE (noting employee cruise-ship cabins are often shared by two to four people).

Of course, if sex-separate bathrooms are not permissible, gone too are sex-separate dress codes, grooming policies, and physical-fitness requirements. *See, e.g.*, *Bauer v. Lynch*, 812 F.3d 340, 351 (4th Cir. 2016) ("[A]n employer does not contravene Title VII when it utilizes physical fitness standards that distinguish between the sexes on the basis of their physiological differences ...."). And that doesn't include what happens if the logic is extended to other parts of Title VII. Policies that rely on sex as a BFOQ would be at risk. *See, e.g.*, *Auto. Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 206 n.4 (1991) (discussing sex as "a BFOQ when privacy interests are implicated"). Examples abound: a nursing aid in a retirement home, a mental-health worker, a bathroom janitor, or even a hospital nurse in the obstetrics and gynecology department. *Id.* at 219 n.8 (White, J., concurring). Similarly, institutions could no longer require sex-specific chaperones to protect children in healthcare settings or require individuals subject to mandatory drug-tests be observed by employees of the same sex. Nor could a battered women's shelter require that a female employee, not a biological male, oversee its overnight facilities.

If a biological male who identifies as female must be able to use a female-only bathroom under Title VII, it logically follows that he must also be able to work any of those positions that classify based on sex. And that's just scratching the surface. The logic could easily apply to other similarly worded laws too. All told, the ramifications are extensive. And they threaten women's ability to access the workplace and operate freely and fully in our society.

*    *    *

Thankfully, Title VII does not prohibit employers from separating bathrooms or other intimate spaces by sex. Doing so does not discriminate against any individual because of sex. *Bostock* does not suggest otherwise. The nearly universal and still unremarkable practice of separating intimate spaces like bathrooms by biological sex can continue.

17

## CONCLUSION

The Court should grant the government's motion to dismiss.


Respectfully submitted this 20th day of March, 2026.


By: s/ Matthew S. Bowman

**Jonathan A. Scruggs\***
Arizona Bar No. 030505
**Henry W. Frampton, IV\***
South Carolina Bar No. 75314
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

**Matthew S. Bowman**
D.C. Bar No. 993261
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
mbowman@ADFlegal.org

*Counsel for Amicus Curiae*
*Feds For Freedom*


*\* Motion for pro hac vice admission filed concurrently*

18

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of March, 2026, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record who are registered users of the ECF system.

By: s/ Matthew S. Bowman

**Matthew S. Bowman**
D.C. Bar No. 993261
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Counsel for Amicus Curiae*
*Feds For Freedom*

19