**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LEANNE WITHROW,
Plaintiff,

v.                                      Civil Action No. 25-4073 (JMC)

UNITED STATES OF AMERICA, et al.,
Defendants.

---

**Brief of *Amicus Curiae* EEO Leaders**
**In Support of Plaintiff's Opposition to Defendants'**
**Motion to Dismiss**

---

Carolyn L. Wheeler
D.C. Bar No. 1028645
Katz Banks Kumin
11 Dupont Circle NW
Suite 600
Washington, DC 20036
(202) 299-1140
wheeler@katzbanks.com

*Counsel for Amicus Curiae*

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................i-vi

INTEREST OF AMICUS CURIAE....................................................................................1

SUMMARY OF ARGUMENT..........................................................................................2

ARGUMENT......................................................................................................................3

    I.      Within its first decade of existence, the EEOC developed a nuanced
           understanding of sex discrimination that was adopted by the courts......................4

    II.     The decision in *Macy* reflected a judicial consensus that discrimination on
           the basis of gender identity was a prohibited form of sex discrimination. .............7

    III.    In *Lusardi*, the EEOC applied longstanding principles of discrimination
           analysis to find denial of bathroom access on the basis of gender identity
           to be a violation of Title VII.................................................................................11

    IV.    The EEOC consistently applied its interpretation of the prohibition on
           sex discrimination after its decisions in *Macy* and *Lusardi.* ...................................13

    V.     EEOC's recent decision reversing *Lusardi* is not entitled to respect under
           *Loper Bright* and *Skidmore.* .................................................................................17

CONCLUSION ................................................................................................................20

CERTIFICATE OF SERVICE ........................................................................................21

# TABLE OF AUTHORITIES

**CASES**

*Bostock v. Clayton County, Georgia*,
  590 U.S. 644 (2020)....................................................................2, 4, 14, 15, 17, 18, 20

*Brandon v. The Sage Corp.*, 808 F.3d 266 (5th Cir. 2015)............................................13

*Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709 (E.D. La. 2015) ..........................15, n.6

*Dawson v. H & H*, No. 4:14cv00583, 2015 WL 5437101 (E.D. Ark. Sept. 15, 2015) .................13

*Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385 (5th Cir. 1971) ............................................12

*Doe v. Triangle Doughnuts, LLC*, 472 F.Supp.3d 115 (E.D. Pa. 2020) .........................................17

*EEOC v. Bojangles,* No. 5:16-cv-654, 2017 WL 6988550 (E.D. N.C. Dec. 04, 2017)..........15, n.6

*EEOC v. Deluxe Fin. Servs., Inc.*, No. 15-cv-2646 (D. Minn. Jan 20, 2016).........................15, n.6

*EEOC v. Lakeland Eye Clinic, P.A.*, No. 8:14-cv-02421-T-35AEP
  (M.D. Fla. April 9, 2015).................................................................................15, n.6

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018)................. 14-15

*EEOC v. Rent-A-Center East, Inc.*, 264 F. Supp. 3d 952 (C.D. Ill. 2017)..............................15, n.6

*EEOC v. T.C. Wheelers*, No. 1:23cv00286, 2024 WL 894480 (W.D. N.Y. 2024) ................15, n.6

*Eure v. Sage Corp.*, 61 F. Supp. 3d 651 (W.D. Tex. 2014).............................................................13

*General Electric Company v. Gilbert*, 429 U.S. 125 (1976) ..........................................................5

*Glenn v. Brumby*, 663 F.3d 1312, 1316-17 (11th Cir. 2011)...........................................................9

*Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 613-14 (4th Cir. 2020)..................................19

*Grossman v. Bernards Twp. Bd. of Educ.*, 1975 WL 302 (D. N.J. 1975).......................................7

*Jamal v. Saks & Co.*, 4:14cv02782 (S.D. Tex. Mar. 10, 2015) .....................................................13

*Lewis v. High Point Reg'l Health Sys.*, 79 F. Supp. 3d 588 (E.D.N.C. 2015)...............................13

*Loper Bright Enter. v. Raimondo*, 603 U.S. 369 (2024).....................................2, 3, 17, 18

*Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702 (1978).........................6, 8

*Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)..................................................6

*Olsen v. Marriott Int'l, Inc.*, 75 F. Supp. 2d 1052 (D. Ariz. 1999) ................................12

*Oncale v. Sundowner Offshore Services*, 523 U.S. 75 (1998) ...........................................8

*Pacheco v. Freedom Buick GMS Truck*, No. 7:10-CV-116,
    2011 WL 13234884 (W.D. Tex. 2010)...................................................................10

*Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971) .................................................5

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)......................................7, 8, 9, 10, 14

*Robinson v. Dignity Health,* No. 16-cv-3035, 2016 WL 7102832 (N.D. Cal. Dec. 6, 2016)........14

*Rosa v. West Bank & Trust Co.*, 214 F.3d 213 (1st Cir. 2000).........................................9

*Schroer v. Billington*, 577 F. Supp. 2d 293 (D.D.C. 2008)........................................ 9-10

*Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) ............................................... 8-9

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ...........................................3, 17, 18, 20

*Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004)...............................................9, 14

*Wittmer v. Phillips 66 Co.*, 915 F.3d 328 (5th Cir. 2019)............................................13

**EEOC FEDERAL SECTOR DECISIONS**

*Diaz v. Dep't of Air Force*,
    EEOC Request No. 05931049, 1994 WL 739653 (Apr. 21, 1994) ...................................12

*Lusardi v. Department of the Army*,
    EEOC Appeal No. 0120133395, 2015 WL 1607756 (2015)......1,2,3, 11-13, 17, 18, 19-20

*Macy v. Department of Justice*,
    EEOC Appeal No. 0120120821, 2012 WL 1435995 (2012)............................1, 2, 7, 10, 13

*Selina S v. Department of the Army*,
    EEOC No. 2025003976 (2026)..................................................... 2, 17-18, 19, 20

**EEOC CASES FILED IN 2024 & DISMISSED IN 2025**

*EEOC v. Boxwood Hotels, LLC*, No. 1:24-cv-00902 (W.D.N.Y. Sept. 25, 2024) .........................15

*EEOC v. Brik Enterprises, Inc.*, No. 2:24-cv-12817 (E.D. Mich. Oct. 25, 2024) .........................16

*EEOC v. Harmony Hospitality, LLC*, No. 1:24-cv-00357 (M.D. Ala. June 13, 2024)..................15

*EEOC v. Lush Handmade Cosmetics, LLC*, No. 5:24-cv-06859 (N.D. Cal. Sept. 30, 2024)........16

*EEOC v. Reggio's Pizza, Inc.*, No. 1:24-cv-08910 (N.D. Ill. Feb. 14, 2025)................................16

*EEOC v. Sis-Bro, Inc.*, No. 3:24-cv-00968 (S.D. Ill. Mar. 28, 2025)............................................16

*EEOC v. Starboard Group, Inc.*, No. 3:24-cv-02260 (S.D. Ill. Oct. 1, 2024) ..............................16

**STATUTES**

29 U.S.C. § 218d.............................................................................................................................19

42 U.S.C. § 2000e-4(a) .....................................................................................................................3

42 U.S.C. § 2000e-4(b)(1) ................................................................................................................3

42 U.S.C. § 2000e-4(b)(2) ................................................................................................................3

42 U.S.C. § 2000e-2(e)(1)..................................................................................................................5

42 U.S.C. § 2000e-5(f)(1), (2) ..........................................................................................................3

42 U.S.C. § 2000e-26(b) ...................................................................................................................3

**REGULATIONS**

29 C.F.R. § 1604.1(a)(i)(ii)........................................................................................5

29 C.F.R. § 1604.2...................................................................................................8

29 C.F.R. § 1604.5...................................................................................................4

29 C.F.R. § 1604.10.................................................................................................4

29 C.F.R. § 1604.11 ................................................................................................6

29 C.F.R. § 1614.401...............................................................................................3

20 C.F.R. § 1910.141(c)(1)(i)................................................................................12

30 Fed. Reg. 14926, 14928 (Dec. 2, 1965)............................................................4

**RULES**

District of Columbia Local Civil Rule 7(o)(5) .........................................................1

Fed. R. App. P. 29(a)(2)...........................................................................................3

***AMICUS* BRIEFS**

*Brandon v. The Sage Corp.*, 2015 WL 1906285 (EEOC Brief) .............................13

*Dawson v. H & H*, 2015 WL 10960800 (EEOC Brief) .........................................13

*Eure v. Sage Corp.*, 2018 WL 3878952 (EEOC Brief) .........................................13

*General Electric Company v. Gilbert*, 1976 WL 181228 (U.S. *Amicus* Brief) ..............................6

*Jamal v. Saks & Co.*, 2015 WL 5723864 (EEOC Brief ) .......................................13

*Lewis v. High Point Reg'l Health Sys.*, 2014 WL 8060914 (EEOC Brief) ...................................13

*Los Angeles Department of Water & Power v. Manhart,* 1977 WL 189208
    (U.S. *Amicus* Brief)..........................................................................................6

*Meritor Savings Bank v. Vinson*, 1985 WL 670162 (U.S. *Amicus* Brief)......................................6

*Oncale v. Sundowner Offshore Services*, 1997 WL 473381 (1997)
(U.S. and EEOC *Amicus* Brief)..................................................................................8

*Pacheco v. Freedom Buick GMS Truck*, 2011 WL 5410751
(EEOC Brief, Oct. 17, 2011) ...................................................................................10

*Phillips v. Martin Marietta Corp.*, 1970 WL 136379 (U.S.  *Amicus* Brief)..................................13

*Robinson v. Dignity Health,* 2016 WL 11517056 (EEOC Brief) ....................................................14

*Wittmer v. Phillips 66 Co.*, 2018 WL 3878952
(EEOC Brief in Support of Neither Party)..............................................................13

## ENFORCEMENT GUIDANCE AND STRATEGIC PLANS

*Enforcement Guidance on Harassment in the Workplace* (April 29, 2024)............................17, 18

EEOC's Strategic Enforcement Plan for Fiscal Years 2017-2021 ...............................................16

EEOC's Strategic Enforcement Plan for Fiscal Years 2024-2028 ...............................................17

## OTHER AUTHORITIES

Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," 90 Fed. Reg. 8615 (Jan. 20, 2025)......................17

EEO Leaders, "A Legal Critique of the EEOC *Selina S.* Federal Sector Opinion"
(March 12, 2026) ....................................................................................................20

Franklin, "Inventing the 'Traditional Concept' of Sex Discrimination"
125 *Harv. L. Rev.* 1307, 1340 (2012) ...................................................................4

**INTEREST OF AMICUS CURIAE[1]**

*Amicus Curiae* EEO Leaders[2] is an organization comprised of former high-ranking officials who served at the U.S. Equal Employment Opportunity Commission (EEOC) and the Office of Federal Contract Compliance Programs (OFCCP) in the Department of Labor.  EEO Leaders includes former EEOC Chairs, Commissioners, and General and Legal Counsels who served at the EEOC during the years 2003 to 2025 and were instrumental in developing and advancing the EEOC's interpretation and enforcement of Title VII's prohibition of discrimination because of sex, in particular as it applies to LGBTQ[3] individuals. During that time, in its adjudicative role in deciding discrimination complaints brought by federal employees, the EEOC issued a major decision holding that Title VII protects transgender individuals from discrimination, *Macy v. Department of Justice*, EEOC Appeal No. 0120120821, 2012 WL 1435995 (2012), and a second decision holding that denying transgender employees the use of bathrooms that align with their gender identity constitutes a violation of the statute, *Lusardi v. Department of the Army*, EEOC Appeal No. 0120133395, 2015 WL 1607756 (2015). Members of EEO Leaders also

---

[1] In accordance with District of Columbia Local Civil Rule 7(o)(5), *Amicus Curiae* states: It is a non-profit corporation, has no parent corporation, and no publicly held corporation owns any of its stock; no counsel for a party authored this brief in whole or in part; no person other than *Amicus* and its counsel made any monetary contribution intended to fund preparing or submitting this brief.

[2] EEO Leaders include: **Charlotte A. Burrows**, EEOC Commissioner 2015-2025, EEOC  Chair 2021-2025; **Pam Coukos,** OFCCP Senior Advisor, 2011-2016; **Chai Feldblum**, EEOC Commissioner 2009-2019; **Karla Gilbride**, EEOC General Counsel, 2023-2025; **Stuart Ishimaru**, EEOC Commissioner 2003-2012, EEOC Acting Chair 2009-2010; **P. David Lopez**, EEOC  General Counsel 2010-2016; **Peggy R. Mastroianni**, EEOC Legal Counsel 2011-2017; **Carol R. Miaskoff**, EEOC Associate Legal Counsel 2017-2021, EEOC Legal Counsel 2021-2024; **Jocelyn Samuels**, EEOC Commissioner 2020-2025, EEOC Vice Chair 2021-2025; **Jenny R. Yang**, OFCCP Director 2021-2023, EEOC Commissioner 2013-2018, EEOC Vice Chair 2014, EEOC Chair 2014-2017.

[3] LGBTQ is an acronym for Lesbian, Gay, Bisexual, Transgender, and Queer identities.

1

participated in consideration of multiple policy documents issued and litigation brought by the EEOC that, as recently as January 2025, affirmed and implemented the interpretations of *Macy* and *Lusardi*.

The EEOC recently overruled the *Lusardi* decision in *Selina S v. Department of the Army*, EEOC No. 2025003976 (2026), and EEO Leaders have an interest in explaining to the Court the rationale and legal basis for the EEOC's long-standing earlier position, which they contend is more faithful to the statute and controlling precedent than is *Selina S*.  Because the Government has relied on *Selina S*. in advancing its arguments in support of dismissing Withrow's claim, *Amicus* believes it will be helpful to the Court to have a fuller appreciation of the evolution of the EEOC's historic position on the viability of her claim.

## SUMMARY OF ARGUMENT

*Amicus* submits this brief to explain the EEOC's historic position on the central issue in the case: whether it is prohibited discrimination in the terms and conditions of employment to deny a transgender individual the right to use the bathroom or other private spaces that comport with their gender identity.  The EEOC's answer to that question was unequivocally "yes" from 2015 until 2026, and *Amicus* writes to explain why that interpretation of the scope of Title VII should continue to command the respect of a court interpreting Title VII.  *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 394 (2024) (agency interpretations that have remained consistent over time may be "especially useful in determining the statute's meaning").

The brief will trace the evolution of the EEOC's position on sex discrimination and set out the judicial precedent underlying and supporting its position on transgender discrimination in *Macy*, and on discrimination in bathroom access in *Lusardi*, both issued prior to the Supreme Court's decision in *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020).  Next, the brief will

2

demonstrate that the EEOC's federal-sector decisions on transgender discrimination and bathroom access were not isolated pronouncements, but part of a carefully considered interpretation of Title VII the agency also advanced through *amicus* briefs, litigation, strategic enforcement plans, and enforcement guidance.  Finally, the brief will explain that the EEOC's current doctrinal position— reflected in its dismissal of on-going litigation, its rescission of guidance on sexual harassment, and its reversal of *Lusardi*—is not entitled to respect under *Loper Bright*, 603 U.S. at 394, and its explication of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), because the EEOC's current view of the law is entirely lacking in thoroughness, valid reasoning, consistency with earlier pronouncements, and  "all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140.

## ARGUMENT

Congress created the EEOC in the Civil Rights Act of 1964 as the principal agency responsible for the administration, enforcement, and interpretation of Title VII.  *See* 42 U.S.C. § 2000e-4(a). It operates as a bi-partisan Commission with five Commissioners and a General Counsel appointed by the President and confirmed by the Senate. *Id.* at §§ 2000e-4(a), (b)(1). In 1972 Congress gave the EEOC the authority to sue private employers under section 2000e-5(f)(1) and (2).  Since its inception, the EEOC had the authority to file *amicus* briefs in the federal courts of appeals without the consent of the parties.  Fed. R. App. P. 29(a)(2).[4]  Finally, the EEOC has the authority to adjudicate appeals brought by federal employees or agencies under Title VII. 42 U.S.C. § 2000e-26(b); 29 C.F.R. § 401. The EEOC has used all of these tools to advance its

---

[4]  Title VII authorizes the Attorney General to conduct litigation in which the EEOC is a party in the Supreme Court, 42 U.S.C. § 2000e-4(b)(2), and thus when the EEOC wishes to provide its views as *amicus curiae* in the Supreme Court, it does so by joining briefs filed by the Solicitor General on behalf of the United States.

position that discrimination based on transgender status, including denial of access to the bathroom that comports with an employee's gender identity, is a form of sex discrimination.

**I.       Within its first decade of existence, the EEOC developed a nuanced understanding of sex discrimination that was adopted by the courts.**

EEOC's interpretation of the reach of Title VII's prohibition on sex discrimination has evolved over the years. The leadership of the EEOC initially contended that claims of sex discrimination raised problems of interpretation because there was no legislative history of the sex amendment to Title VII. For example, the EEOC explained that it had to proceed with caution in issuing guidelines on sex discrimination because it had no legislative history to guide its interpretations, and that its position that weight restrictions that barred women from many jobs were legal under Title VII reflected an effort to "temper the bare language of the statute with common sense." 30 Fed. Reg. 14926, 14927 (Dec. 2, 1965).  Similarly, the EEOC initially stated that newspapers intended the listing of men's and women's jobs separately in job postings to be helpful, not discriminatory. *Id.* at 14928; *Bostock*, 590 U.S. at 679 (explaining EEOC's early view; *citing* Franklin, "Inventing the 'Traditional Concept' of Sex Discrimination" 125 *Harv. L. Rev.* 1307, 1340 (2012)).

However, by the end of the 1960s the EEOC began to recognize that certain common practices amounted to sex discrimination. Thus, in 1969, the EEOC revised its Guidelines on Discrimination Because of Sex (Guidelines) and stated that sex-segregated job advertising violated Title VII, 29 C.F.R. § 1604.5, and that pregnancy discrimination constituted discrimination because of sex, *id.* §1604.10.

4

Despite its initial uncertainty about the meaning and intent of the prohibition of sex discrimination, the EEOC weighed in on several significant Supreme Court cases  regarding that prohibition throughout the 1970s. For example, in *Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971), the EEOC joined the Government's *amicus* brief and argued that the company's practice of refusing to hire women with school age children while hiring men with school age children constituted a per se violation of Title VII unless justified as a "bona fide occupational qualification" within the meaning of 42 U.S.C. § 2000e-2(e)(1). *See* 1970 WL 136379 (U.S. *Amicus* Brief ).

The Supreme Court agreed with that argument and remanded the case for further development of the record on whether sex was a BFOQ for the position. *Phillips*, 400 U.S. at 544. Justice Marshall concurred but emphasized that under the EEOC Guidelines on Discrimination Because of Sex, 29 C.F.R. § 1604.1(a)(i)(ii), employers cannot refuse to "hire an individual based on stereotyped characterizations of the sexes." *Id.* at 545 (Marshall, J. concurring). The concurring opinion warned that the Court should not have implied that a BFOQ defense could be established by showing women have more family responsibilities than men and had "fallen into the trap of assuming that the Act permits ancient canards about the proper role of women to be a basis for discrimination." *Id.*

The EEOC also joined the Government's *amicus* brief in another significant early sex discrimination case, *General Electric Company v. Gilbert*, 429 U.S. 125 (1976), in which the Court held that pregnancy discrimination did not constitute sex discrimination and that sex discrimination consisted of practices that divided men and women into two groups. *Id.* at 145.  The EEOC vigorously argued that exclusion of pregnancy-related disabilities from the benefits provided by the employer's plan was a *prima facie* violation of Title VII, relying on its own

5

Guidelines on sex discrimination in 29 C.F.R. § 1604.10. *See* 1976 WL 181228 (U.S. *Amicus* Brief).

The EEOC's arguments met with greater success in *Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 707 (1978), in which the Court agreed with EEOC's view that an employer's requirement that women make larger contributions to its pension fund than men, based on actuarial data that shows women live longer than men, constituted prohibited sex discrimination. *See* 1977 WL 189208 (U.S. *Amicus* Brief). The Court emphasized that Title VII prohibits "employment decisions . . . predicated on mere 'stereotyped' impressions about the characteristics of males or females" even if the assumed differences between the sexes (here longevity) were valid. 435 U.S. at 707. The Court also said the prohibition on sex discrimination was "intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Id.* at 707 n.13. Significantly, the Court stressed that Title VII unambiguously protects individuals and precludes treatment of individuals as simply members of a class, requiring "fairness to individuals rather than fairness to classes." *Id.* at 709.

The Court also embraced the EEOC's view of the broad scope of the prohibition on sex discrimination in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986), in which it held that sexual harassment of a female subordinate by her male boss, if sufficiently severe or pervasive, constitutes discrimination in working conditions on the basis of sex. *See* 1985 WL 670162 (U.S. *Amicus* Brief) (relying extensively on EEOC Guidelines, 29 C.F.R. § 1604.11, and urging adoption of EEOC standards for assessing hostile environment claims).

The EEOC's positions in these significant cases formed the building blocks of a doctrinal approach that gave full effect to Title VII's broad prohibition on sex discrimination and would

6

eventually ensure the recognition that discrimination based on gender identity constitutes sex discrimination.

    **II.**    **The decision in *Macy* reflected a judicial consensus that discrimination on the basis of gender identity was a prohibited form of sex discrimination.**

The EEOC's early analysis of discrimination based on transgender status, like its early analysis of sex discrimination more generally, was not as nuanced as it would later become. In 1975, for example, the EEOC rejected the sex discrimination claim of a transgender individual fired from her teaching job because she had a sex reassignment operation.  The EEOC's Letter of Determination on her charge found that the firing was not discrimination because of sex.  The EEOC's determination became a matter of public record because the district court appended it to its decision in the case, which tracked the EEOC's reasoning and concluded the teacher was not discharged because of her "status as a female, but rather because of her change in sex from the male to the female gender."  *Grossman v. Bernards Twp. Bd. of Educ.*, 1975 WL 302 (D. N.J. 1975), *aff'd without op.*, 538 F.2d 319 (3d Cir. 1976).

However, the EEOC's position on transgender-based discrimination evolved based on two strands of judicial reasoning, one around sex stereotyping and one around the close association between transgender status and sex. The Supreme Court issued a pivotal decision on sex stereotyping in a case involving a heterosexual woman. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  In that case the Court considered Hopkins' claim that she was denied a partnership position because of her sex based on evidence that the partners who voted against her described her as "macho" and in need of a "course at charm school" and advised her to "'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry.'" *Id.* at 235. The Court stated that "[i]n passing Title VII, Congress made the simple but momentous announcement that sex, race, religion, and national origin are not relevant to the

selection, evaluation, or compensation of employees." *Id.* at 239.  The Court also said that "an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."  *Id.* at 250.  It had been 17 years since the EEOC stated in its sex discrimination Guidelines that employers could not refuse to hire an individual "based on stereotyped characterizations of the sexes" 29 C.F.R. § 1604.2, and 11 years since the Court had made the same observation in *Manhart*, and the Court gave new vitality to that prohibition through its analysis of Hopkins' claims.

The concept of using evidence of stereotyped assumptions to prove sex discrimination gained further momentum with the Supreme Court's decision in *Oncale v. Sundowner Offshore Services*, 523 U.S. 75 (1998), holding that harassment can constitute actionable discrimination in the terms and conditions of employment even when the harasser and the harassed employee are of the same sex. The EEOC joined the Government's *amicus* brief urging this result.  1997 WL 473381 (1997) (U.S. and EEOC *Amicus* Brief).  The Court stressed that although male on male harassment was "assuredly not the principal evil Congress was concerned with when it enacted Title VII," statutory prohibitions often "go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."  *Oncale*, 523 U.S. at 79.

The *Oncale* Court's emphasis on looking at the words of a statute rather than searching for insights into legislative intent spurred several courts to apply *Price Waterhouse's* holding that an employer's reliance on gender stereotypes is evidence of sex discrimination to claims brought by transgender individuals.  The Ninth Circuit upheld a claim by a transgender prisoner under the Gender Motivated Violence Act in *Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000). The court discussed its prior view that sex is distinct from gender and that Title VII bars sex discrimination

8

but not discrimination on the basis of gender and said that approach had been "overruled by the logic and language of *Price Waterhouse*." *Schwenk*, 204 F.3d at 1201.

The First Circuit similarly applied the logic of *Price Waterhouse* to a transgender woman's suit under the Equal Credit Opportunity Act against a bank that denied her a loan because she presented as a woman rather than in a manner consistent with her male identification cards. *Rosa v. West Bank & Trust Co.*, 214 F.3d 213, 215-16 (1st Cir. 2000).

And the Sixth Circuit used the same logic to uphold a transgender woman's Title VII claim that she was discriminated against because of her gender non-conforming conduct and gender identity. *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004). The court concluded that "discrimination against a plaintiff who is a transsexual – and therefore fails to act and/or identify with his or her gender – is no different from the discrimination directed against [the plaintiff] in *Price Waterhouse* who, in sex-stereotypical terms, did not act like a woman." *Id.* at 575.

Finally, the Eleventh Circuit upheld an equal protection challenge brought by a transgender attorney who was fired by the State of Georgia because of her transition from male to female, and stated that "[a] person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes . . . [a]ccordingly, discrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender." *Glenn v. Brumby*, 663 F.3d 1312, 1316-17 (11th Cir. 2011).

Separate from the sex-stereotyping rationale derived from *Price Waterhouse* and applied to claims brought by transgender individuals, one court articulated a more straightforward conception of how transgender discrimination violates Title VII. In *Schroer v. Billington*, 577 F. Supp. 2d 293 (D.D.C. 2008), this Court held that it is "literally" discrimination because of sex if an individual's job offer is rescinded upon revealing her intention to transition from living as a

9

man to presenting and living as a woman. *Id.* at 302-303. This Court also analogized the discrimination based on an individual's gender transition to discrimination against an individual who converted from one religion to another, which no one would question would constitute prohibited discrimination on the basis of religion. *Id.* at 306.

The EEOC drew on the analyses and rationales in these decisions recognizing that discrimination on the basis of transgender status is prohibited sex discrimination in an *amicus* brief it filed in *Pacheco v. Freedom Buick GMS Truck*, No. 7:10-CV-116, 2011 WL 13234884 (W.D. Tex. 2010), supporting a transgender woman who had been fired because she had transitioned from male to female. The EEOC must approve all *amicus* briefs, and it approved the filing of this brief in October 2011. The EEOC advanced two primary arguments. *See* EEOC Brief, 2011 WL 5410751 (Oct. 17, 2011). First, the brief noted that under the reasoning of *Price Waterhouse*, discrimination against a transgender individual because the individual does not conform to gender norms or stereotypes is discrimination "because of ... sex" under Title VII. Second, following the reasoning in *Schroer*, the brief stated that discrimination because an individual intends to change, is changing, or has changed his or her sex is likewise prohibited by the plain language of Title VII. While the district court denied the EEOC's motion to file its brief as moot, 2011 WL 13234884 *1, the brief served as a preview of the arguments the EEOC would subsequently flesh out in its decision in *Macy,* a federal sector case.

In *Macy,* the EEOC followed the approach of the federal court decisions discussed above, holding that when "an employer discriminates against someone because the person is transgender, the employer has engaged in disparate treatment related to the sex of the victim" in violation of Title VII. 2012 WL 1435995 at *7. The EEOC emphasized that this is so regardless of whether the employer discriminates "because the individual has expressed his or her gender in a non-

10

stereotypical fashion, because the employer is uncomfortable with the fact that the person has transitioned or is in the process of transitioning from one gender to another, or because the employer simply does not like that the person is identifying as a transgender person." *Id*.

The EEOC also explained that proving sex stereotyping was only one evidentiary route to establishing sex discrimination, and that a transgender plaintiff could also prevail by proving an employer "was willing to hire her when he thought she was a man, but was not willing to hire her once he found out that she was now a woman." *Id*. at *10. This evidence does not depend on stereotyping and is akin to discriminating against someone who changes their religion. *Id*. at *11. The EEOC emphasized it was not creating a new class of protected individuals but merely holding that discrimination against one who is transgender is "by definition" discrimination because of sex. *Id*.

III.    **In *Lusardi*, the EEOC applied longstanding principles of discrimination analysis to find denial of bathroom access on the basis of gender identity to be aviolation of Title VII.**

In 2015 the EEOC further defined the contours of prohibited discrimination against transgender individuals in its decision on the claim of Tamara Lusardi, who alleged her agency violated Title VII when "it restricted her from using the common female restroom, and a team leader []intentionally and repeatedly referred to her by male pronouns and made hostile remarks." *Lusardi*, 2015 WL 1607756, at *1.

The EEOC held that Lusardi had proved she was "subjected to disparate treatment on the basis of sex when she was denied equal access to the common female restroom facilities" and that she had also established her agency's liability for subjecting her to a hostile work environment by preventing her from using the common female restroom facilities and allowing a team leader to intentionally refer to her by male names and pronouns and make other hostile remarks. *Id*. at

11

\*13.  The EEOC rejected the agency's defense that it had denied Lusardi the use of the common female restroom because co-workers would be uncomfortable, holding that "supervisory or co-worker confusion or anxiety cannot justify discriminatory terms and conditions of employment" because "Title VII prohibits discrimination whether motivated by hostility, by a desire to protect people of a certain gender, by gender stereotypes, or by the desire to accommodate other people's prejudices or discomfort." *Id.* at \*9 (citing *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir. 1971) ("it would be totally anomalous" for "preferences and prejudices of the customers to determine whether the sex discrimination was valid"); *Olsen v. Marriott Int'l, Inc.*, 75 F. Supp. 2d 1052 (D. Ariz. 1999) (rejecting BFOQ customer preference defense for refusing to hire male massage therapist).

The EEOC squarely held that denial of access to the common restroom constituted an "adverse employment action" based on longstanding EEOC precedent "that an employee is aggrieved for purposes of Title VII if she has suffered a harm or loss with respect to a term, condition, or privilege of employment." *Lusardi*, 2015 WL 1607756 at \*9 (citing *Diaz v. Dep't of Air Force*, EEOC Request No. 05931049, 1994 WL 739653 (Apr. 21, 1994)).  The EEOC emphasized that equal access to restrooms is "a significant, basic condition of employment" and held that being denied the use of a restroom that other persons of Lusardi's gender were free to use constituted a harm or loss with respect to the terms and conditions of her employment. *Id.* at \*9 (citing OSHA *Interpretation of* 20 C.F.R. § 1910.141(c)(1)(i): Toilet Facilities).[5] The EEOC also stressed that the Agency's actions "isolated and segregated" Lusardi from others of her gender and perpetuated the sense that she was "not worthy of equal treatment and respect." *Id.* at

---

[5] https://www.osha.gov/laws-regs/standardinterpretations/1998-04-06-0

*10.  In short, the Agency "refused to recognize [Lusardi's] very identity" which "is most certainly adverse" treatment.  *Id.*

### IV.    The EEOC consistently applied its interpretation of the prohibition on sex discrimination after its decisions in *Macy* and *Lusardi.*

The EEOC authorized the filing of at least seven amicus briefs between 2014 and 2018 articulating its consistent position that Title VII prohibits discrimination against transgender individuals.  It filed two such briefs in the Fifth Circuit:  *Brandon v. The Sage Corp.*, 808 F.3d 266 (5th Cir. 2015), 2015 WL 1906285 at *10 (EEOC Brief)  (arguing that discriminating against an individual because of their transgender status is "inherently animated by gender stereotypes"); and *Wittmer v. Phillips 66 Co.*, 915 F.3d 328 (5th Cir. 2019), 2018 WL 3878952 (EEOC Brief in Support of Neither Party) (arguing that discrimination based on transgender status is sex discrimination because the employer would not have taken the same action if the plaintiff had presented as the opposite sex; analogizing to religious discrimination; and relying on a stereotyping theory).

The EEOC filed other *amicus* briefs in federal district courts, including *Eure v. Sage Corp.*, 61 F. Supp. 3d 651 (W.D. Tex. 2014), 2018 WL 3878952 (EEOC Brief)  (arguing that gender stereotyping evidence is not necessary if the plaintiff can show a negative outcome happened because of their transgender status);  *Lewis v. High Point Reg'l Health Sys.*, 79 F. Supp. 3d 588 (E.D.N.C. 2015), 2014 WL 8060914 (EEOC Brief) (making the point that refusal to hire a transgender woman because of her identity is sufficient to state a claim without any specific evidence of gender stereotyping); *Dawson v. H & H*, No. 4:14cv00583, 2015 WL 5437101 (E.D. Ark. Sept. 15, 2015), 2015 WL 10960800 (EEOC Brief) (arguing transgender discrimination is cognizable as sex discrimination under Title VII); *Jamal v. Saks & Co.*, 4:14cv02782 (S.D. Tex.; dismissed Mar. 10, 2015), 2015 WL 5723864 (EEOC Brief ) (arguing transgender discrimination

13

is cognizable as sex discrimination and that Jamal's charge satisfied the administrative prerequisites for a suit alleging transgender discrimination); and *Robinson v. Dignity Health,* No. 16-cv-3035, 2016 WL 7102832 (N.D. Cal. Dec. 6, 2016) (granting stay), 2016 WL 11517056 (EEOC Brief) (arguing that employer's refusal to pay for treatment for gender dysphoria states a plausible claim of sex discrimination under Title VII).

The EEOC litigated several enforcement actions in transgender cases between 2014 and 2024, all of which were approved by Commission vote or under the General Counsel's delegated authority. Most notable was its litigation in Michigan and the Sixth Circuit against R.G. &. G.R. Harris Funeral Homes, Inc., the case consolidated in the Supreme Court for decision in *Bostock. See EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), *aff'd*, *Bostock*, 590 U.S. at 683.

Aimee Stephens was a funeral director at Harris Funeral Homes who presented as male when she was hired and was fired after she informed her employer she would be living and working as a woman. The EEOC sued Harris Funeral Homes for sex discrimination. Agreeing with the EEOC on all points, the Sixth Circuit first held that the decision to fire Stephens because she was no longer going to "represent himself as a man" and "wanted to dress as a woman" falls "squarely within the ambit of sex-based discrimination that *Price Waterhouse* and *Smith [v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004)] forbid." *Harris Fneral Homes*, 884 F.3d at 572. The court concluded that Harris engaged in improper sex stereotyping when it fired Stephens for wishing to appear or behave in a manner that contradicted its perception of how she should appear or behave based on her sex. *Id*. at 574.

The court also held that discrimination on the basis of transgender and transitioning status violates the plain language of Title VII. *Id*. at 574-75. The court reasoned that it is

14

"analytically impossible to fire an employee based on that employee's status as a transgender person without being motivated, at least in part, by the employee's sex." *Id*. at 575. The court also agreed the analysis could be framed in terms of an analogy to discrimination against someone who has changed his religion, noting that sex motivates the employer's decision "if an employee's attempt or desire to change his or her sex leads to an adverse employment decision." *Id*. at 576. Thus, the court explicitly held that "Title VII protects transgender persons because of their transgender or transitioning status, because transgender or transitioning status constitutes an inherently gender non-conforming trait." *Id*. at 577.[6]

The Supreme Court echoed and endorsed the EEOC's and Sixth Circuit's reasoning in its decision in *Bostock*, which held unequivocally that discrimination on the basis of transgender status constitutes prohibited discrimination on the basis of sex. 590 U.S. at 655.

In 2024, buttressed by the Supreme Court's favorable ruling in *Bostock*,  the EEOC filed seven cases challenging discrimination and harassment against transgender and non-binary individuals: *EEOC v. Boxwood Hotels, LLC*, No. 1:24-cv-00902 (W.D.N.Y. Sept. 25, 2024) (alleging hostile work environment created by slurs, anti-transgender statements, and misgendering); *EEOC v. Harmony Hospitality, LLC*, No. 1:24-cv-00357 (M.D. Ala. June 13,

---

[6] The EEOC also pursued claims on behalf of transgender individuals in *EEOC v. Lakeland Eye Clinic, P.A.*, No. 8:14-cv-02421-T-35AEP (M.D. Fla. April 9, 2015) (settled April 2015), *Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709 (E.D. La. 2015) (intervenor), *EEOC v. Rent-A-Center East, Inc.*, 264 F. Supp. 3d 952, 954 (C.D. Ill. 2017), *EEOC v. Deluxe Fin. Servs., Inc.*, No. 15-cv-2646 (D. Minn. Jan 20, 2016)(consent decree entered), *EEOC v. Bojangles,* No. 5:16-cv-654, 2017 WL 6988550 (E.D. N.C. Dec. 04, 2017) (jury verdict and consent decree issued in hostile environment and termination case involving transgender woman), *and EEOC v. T.C. Wheelers*, No. 1:23cv00286, 2024 WL 894480 (W.D. N.Y. 2024) (jury verdict for EEOC where pizza restaurant harassed an employee because of his gender identity by asking questions about his genitalia, telling him he was not a real guy, and equating his being transgender to pedophilia).

15

2024) (manager ordered employee to work night shifts because he needed to be hidden because his appearance did not always conform to male gender stereotypes; he was fired when the manager learned he identifies as a non-binary male); *EEOC v. Starboard Group, Inc.*, No. 3:24-cv-02260 (S.D. Ill. Oct. 1, 2024) (alleging former transgender employees of a Wendy's franchise were harassed by misgendering, graphic sexual comments, invasive questions, and denial of access to the bathroom consistent with their gender identity); *EEOC v. Sis-Bro, Inc.*, No. 3:24-cv-00968 (S.D. Ill. Mar. 28, 2025) (alleging a transgender woman was repeatedly criticized for obtaining gender-affirming care, misgendered, and treated less favorably than colleagues, and harassed by a coworker who exposed his genitals to her, touched her breasts, and made explicit sexual comments to her); *EEOC v. Lush Handmade Cosmetics, LLC*, No. 5:24-cv-06859 (N.D. Cal. Sept. 30, 2024) (alleging years-long pattern of manager making crude and salacious comments related to employees' sex, sexual orientation, and gender identity); *EEOC v. Reggio's Pizza, Inc.*, No. 1:24-cv-08910 (N.D. Ill. Feb. 14, 2025) (alleging a Black transgender woman was discharged after complaining about sex-based and race-based harassment); *EEOC v. Brik Enterprises, Inc.*, No. 2:24-cv-12817 (E.D. Mich. Oct. 25, 2024) (alleging that a fast food company retaliated against a transgender man for complaining about harassment including misgendering and anti-transgender comments).

The EEOC used other enforcement tools to reiterate its consistent view that Title VII prohibits transgender discrimination. The EEOC's Strategic Enforcement Plan for Fiscal Years 2017-2021 identified discrimination based on sexual orientation and gender identity as an evolving area of law that deserved particular attention.[7] The EEOC further reinforced this position in its

---

[7] *Available at*, https://www.eeoc.gov/us-equal-employment-opportunity-commission-strategic-enforcement-plan-fiscal-years-2017-2021

Strategic Enforcement Plan for Fiscal Years 2024-2028, which  identifies "preventing and remedying discrimination against LGBTQI+ individuals" as a "key priority for the EEOC.[8] Both Enforcement Plans were subject to public comment and a Commission vote, and the current plan remains in effect.

On April 29, 2024, following a notice-and-comment period, the EEOC approved by a majority vote and published its *Enforcement Guidance on Harassment in the Workplace*.[9]  The Guidance applied Title VII's prohibition on sex-based harassment to LGBTQ workers consistent with federal-court precedents across the country, in particular the Supreme Court's decision in *Bostock.* The Guidance explicitly stated that denial of access to a bathroom or other sex-segregated facility consistent with the individual's gender identity constituted sex-based discrimination. *See* n. 43 (citing *Doe v. Triangle Doughnuts, LLC*, 472 F.Supp.3d 115, 129, 135 (E.D. Pa. 2020) (transgender woman denied use of bathroom consistent with her gender identity stated Title VII discrimination claim);  *Lusardi*, 2015 WL 1607756, at *6 (holding that denying a transgender woman access to the women's restroom constituted disparate treatment).

> **V.    EEOC's recent decision in *Selina S.*, reversing *Lusardi*, is not entitled to respect under *Loper Bright* and *Skidmore.***

After President Trump issued Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," 90 Fed. Reg. 8615 (Jan. 20, 2025), the EEOC Acting Chair took immediate steps to implement the President's order.  On February 13, 2025, the EEOC moved to dismiss the seven cases described above that had been filed in 2024 and not yet resolved.  *See supra* at 15-16.

---

[8] *Available at* https://www.eeoc.gov/strategic-enforcement-plan-fiscal-years-2024-2028

[9] *Available at* https://perma.cc/8CEA-HZK8

When the EEOC regained a quorum, it voted 2-1, on January 22, 2026, to rescind its *Enforcement Guidance on Harassment in the Workplace* in its entirety. Then, on February 26, 2026, the Commission, by a 2-1 vote, issued a decision in *Selina S. v. Department of the Army*, Appeal No. 2025003976 (Feb. 26, 2026), holding that Title VII permits a federal agency employer to maintain single-sex bathrooms and similar intimate spaces and permits the employer to exclude employees, "including trans-identifying employees, from opposite-sex facilities." *Id.* at *3.

The *Selina S.* decision overturns *Lusardi*. However, the decision has no sound basis in law, logic, or public policy, and as a result, its analysis has no power to persuade under the principles announced in *Skidmore* and re-stated in *Loper Bright*, 603 U.S. at 388.

The *Selina S.* decision purports to apply *Bostock* by saying that EEOC is performing the same analysis the Supreme Court used to establish that the terminations in those cases were implemented because of the sex of the individuals. In *Bostock,* the Court emphasized the importance of but-for causation in analyzing sex discrimination claims brought by gay and transgender individuals. It held that firing a transgender person "who was identified as a male at birth but who now identifies as a female" while retaining an "otherwise identical employee "who was identified as female at birth" demonstrates that the employee's sex has played an impermissible role in the discharge decision. *Bostock*, 590 U.S. at 660. More simply, the Court explained that transgender discrimination constitutes discrimination because of sex against a person "with one sex identified at birth and another today." *Id.* at 669.

In *Selina S.* the EEOC concluded there was no such differential treatment in the case of bathroom access because:

"[t]he Agency here treats Complainant and other trans-identifying employees *the same* as non-trans-identifying employees. Changing Complainant's sex from male to female would not change the result; if Complainant were a woman asking to use the opposite-sex bathroom, the Agency still would have said no. And the same

18

result follows if Complainant's trans-identifying status is the only variable changed. If a non-trans-identifying man asked to use the women's bathroom, the Agency surely would have rebuffed the request. That the Agency gives the same answer to male and female employees alike, and to trans-identifying and non-trans-identifying employees alike, only goes to show its evenhandedness." *Id.* at 21.

Only by denying that a transgender woman is a woman and creating the new term "trans-identifying man" to describe someone who remains male in the EEOC's view despite identifying as female, could the EEOC come to this twisted conclusion. [10] The decision utterly defies logic and the controlling legal analysis set forth by the Supreme Court and is based on an inhumane denial of the identity of the complainant in the case, who is a transgender woman, not a man.

The primary rationale for the *Selina S.* decision is not that it is compelled by the language of the statute, the legal analysis of controlling precedents, or basic logic; it simply invokes the privacy interests of women who meet the EEOC's definition of being members of the female sex. The EEOC is dismissive of courts that have ruled privacy interests are sufficiently protected by the existence of locking stalls, such as the Fourth Circuit in *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 613-14 (4th Cir. 2020), insisting that women have other hygiene needs related to "menstruation, pregnancy, or lactation" that apparently cannot be attended to within locked stalls. *Selina S.* at 19. It is not at all clear what women need to do related to pregnancy or menstruation in the common area of a restroom, but by law covered employers must provide secure private spaces for lactation needs, and that space cannot be a bathroom. *See* Providing Urgent Maternal Protections for Nursing Mothers Act (PUMP Act), 29 U.S.C. § 218d. In its prior decision in *Lusardi*, the EEOC thoroughly considered the possible objections of co-workers to a policy

---

[10] Further underscoring the logical flaws in the *Selina S.* decision, the EEOC was forced to alter the description of the bathroom at issue in order to obtain its desired result, describing it as the "opposite-sex bathroom" when "changing" the complainant's sex from male to female, but calling it the "women's bathroom" when the variable at issue was the complainant's transgender (or trans-identifying) status. *See Selina S.* at *21.

allowing transgender individuals to use the bathroom that aligns with their gender identity and held that to allow such preferences to dictate policy "reinforces the very stereotypes and prejudices that Title VII is intended to overcome." *Lusardi*, 2015 WL at *9.

The *Selina S.* decision flouts the central holding and reasoning of, is bereft of logical reasoning, and obviously conflicts with the EEOC's position in its current, binding Strategic Enforcement Plan and its long-standing, well-supported, and repeatedly asserted position on transgender protections and bathroom access in particular. Accordingly, it is entirely lacking in any of the factors which could make it persuasive. *Skidmore*, 323 U.S. at 140; *also see* EEO Leaders, "A Legal Critique of the EEOC *Selina S.* Federal Sector Opinion" (March 12, 2026).[11]

To the extent this court looks to EEOC's interpretations of Title VII to evaluate Withrow's Title VII complaint, it should consider the EEOC's longstanding and consistent view prior to the recent decision in *Selina S.*

### CONCLUSION

*Amicus* EEO Leaders respectfully urges the Court to deny the Government's motion to dismiss Withrow's complaint.

Respectfully submitted,

/s/ Carolyn L. Wheeler
Carolyn L. Wheeler
D.C. Bar No. 1028645
Katz Banks Kumin
11 Dupont Circle NW
Suite 600
Washington, DC 20036
(202) 299-1140
wheeler@katzbanks.com

*Counsel for Amicus Curiae*

---

[11] *Available at https://tinyurl.com/yfjdrpz5.*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2026, I electronically filed the foregoing brief with the Clerk of Court using the ECF system which will send notification of the filing to all counsel of record who are registered users of the ECF system.

<u>/s/ Carolyn L. Wheeler</u>

Carolyn L. Wheeler
D.C. Bar No. 1028645
Katz Banks Kumin
11 Dupont Circle NW
Suite 600
Washington, DC 20036
(202) 299-1140
wheeler@katzbanks.com

*Counsel for Amicus Curiae*

21