UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEANNE WITHROW,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　Defendants. | Civil Action No. 25-4073 (JMC) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................... i

Table of Authorities ............................................................................................................. ii

Argument ...............................................................................................................................1

    I.      Plaintiff Lacks Standing to Assert Claims Against Most Title VII Defendants. .....1

          A.     The Juridical Link Doctrine is an Outdated and Disfavored Doctrine that Conflicts with Basic Principles of Standing. .............................................4

          B.     Standing is Not Impacted By the Statutory Provision Identifying the United States as the Nominal Defendant. ................................................10

    II.     Venue Does Not Lie in this Judicial District. .......................................................12

    III.   Plaintiff's Allegations Fail to State a Claim. .......................................................14

          A.     The Remedy Available Under Title VII Precludes an APA Claim. ...........14

          B.     Plaintiff's Title VII Claim Fails. .............................................................15

          C.     Plaintiff Has Failed to State a Claim Against the Title VII Defendants That Did Not Employ Him. ...........................................................................25

Conclusion ...........................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.,*
    57 F.4th 7919 (11th Cir. 2022) ................................................................................................. 17, 18

*Air Excursions v. Yellen,*
    66 F.4th 277 (D.C. Cir. 2023) .................................................................................................. 8, 9

*Allee v. Medrano,*
    416 U.S. 809 (1974) ........................................................................................................................ 2

*Allen v. Brown,*
    185 F. Supp. 3d 1 (D.D.C. 2016) .............................................................................................. 12

*Blind of Del. Co. Valley v. Regan,*
    709 F.2d 1521 (D.C. Cir. 1983) ................................................................................................ 14

*Bostock v. Clayton Cnty.,*
    590 U.S 644 (2020) ....................................................................................... 15, 16, 17, 19

*Chambers v. D.C,*
    35 F.4th 870 (D.C. Cir. 2022) ......................................................................................... 18, 23, 24

*City of Waukesha v. EPA,*
    320 F.3d 228 (D.C. Cir. 2003) .................................................................................................... 3

*Davis v. FEC,*
    554 U.S. 724 (2008) ................................................................................................................. 2, 6

*Delbert v. Duncan,*
    923 F. Supp. 2d 256 (D.D.C. 2013) ........................................................................................... 9

*Donnell v. Nat'l Guard Bureau,*
    568 F. Supp. 93 (D.D.C. 1983) ................................................................................................. 13

*Easter v. American West Financial,*
    381 F.3d 948 (9th Cir. 2004) ..................................................................................................... 10

*Elmore v. Burrows,*
    Civ. A. No. 21-2347 (JMC), 2022 WL 7458796 (D.D.C. Oct. 13, 2022) ................................. 10

*Faragher v. City of Boca Raton,*
    524 U.S. 778 (1998) .................................................................................................................. 24

*Farley v. Saxon Mortg. Co.*,
No. CV-06-BE-1864-W, 2007 WL 9711658 (N.D. Ala. Oct. 19, 2007) ...................................5

*Fox v. Saginaw Cnty*,
67 F.4th 284 (6th Cir. 2023) ................................................................................2, 5, 6, 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*,
528 U.S. 167 (2000) ..............................................................................................................5

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) ...........................................................................................14

*Hackley v. Roudebush*,
520 F.2d 108 (D.C. Cir. 1975) ............................................................................................10

*Hamilton v. Dallas Cnty*,
79 F.4th 494 (5th Cir. 2023) ...............................................................................................21

*Herbert v. Nat'l Acad. of Scis.*,
974 F.2d 192 (D.C. Cir. 1992) ...............................................................................................3

*Hinds v. PSEG Long Island LLC*,
No. 23-CV-08701, 2026 WL 266010 (E.D.N.Y. Feb. 2, 2026) ..............................................23

*Jackson-Spells v. Rumsfeld*,
457 F. Supp. 2d 39 (D.D.C. 2006) ......................................................................................13

*Kissi v. Simmon*,
Civ. A. No. 09-1377 (EGS), 2009 WL 3429567 (D.D.C. Oct. 22, 2009)................................12

*La Mar v. H & B Novelty & Loan Compan*,
489 F.2d 461 (9th Cir. 1973) .............................................................................................4, 7

*Lewis v. Case*,
518 U.S. 343 (1996) .............................................................................................................2, 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..............................................................................................................9

*Lightfoot v. Dist. of Col.*,
Civ. A. No. 01-1484 (CKK), 2007 WL 148777 (D.D.C. Jan. 16, 2007) .................................7

*Lightfoot v. Dist. of Col*,
Civ. A. No. 01-1484 (CKK), 2004 U.S. Dist. LEXIS 22158 (D.D.C. Jan. 14, 2004) ...............7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................2

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012) ........................................................................................6

*Martinez v. Newsom*,
  46 F.4th 965 (9th Cir. 2022) ...........................................................................4, 5, 6, 7

*Moore v. Comfed Savings Bank*,
  908 F.2d 834 (11th Cir. 1990) ...................................................................................5

*Muldrow v. City of St. Louis*,
  601 U.S. 346 (2024) .....................................................................................21, 22, 24

*Muldrow v. Garlan*,
  2021 WL 6844242 (D.D.C. Oct. 26, 2021) ..............................................................13

*Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzalez*,
  468 F.3d 826 (D.C. Cir. 2006) ..................................................................................23

*Ortiz v. Bank of Labor*,
  No. 22-3127, 2023 WL 3590699 (10th Cir. 2023) ...................................................21

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .................................................................................................1, 2

*Payton v. County of Kan*,
  308 F.3d 673 (7th Cir. 2002) .....................................................................................5

*Ramos Martinez v. Puerto Rico*,
  No. 07-2026, 2011 WL 13351065 (D.P.R. Feb. 15, 2011) .......................................23

*Raytheon Co. v. Hernandez*,
  540 U.S. 44 (2003) ...................................................................................................15

*Simon v. E. Ky. Welfare Rights Org*,
  426 U.S. 26 (1975) ................................................................................................1, 19

*Spencer v. Rumsfeld*,
  209 F. Supp. 2d 15 (D.D.C. 2002) ............................................................................13

*Spirides v. Reinhardt*,
  613 F.2d 826 (D.C. Cir. 1979) ....................................................................................9

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................................................................11

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................................4, 5, 6

*Stewart v. Dep't of Agric.*,
    Civ. A. No. 23-1194 (TSC), 2024 WL 4332618 (D.D.C. Sep. 27, 2024).................................24

*Texas v. Equal Emp. Opportunity Comm'n*,
    785 F. Supp. 3d 170 (N.D. Tex. 2025).....................................................................................20

*Thompson v. Board of Education*,
    709 F.2d 1200 (6th Cir. 1983) ...................................................................................................7

*Thompson v. N. Am. Stainless, LP*,
    562 U.S. 170 (2011) ......................................................................................................9, 11, 25

*United States v. Skrmetti*,
    605 U.S. 495 (2025) ..........................................................................................................16, 18

*United States v. Trucking Employees, Inc.*,
    75 F.R.D. 682 (D.D.C. 1977)..................................................................................................6, 7

*Verizon Washington, D.C., Inc. v. United States*,
    254 F. Supp. 3d 208 (D.D.C. 2017) ...................................................................................12, 13

*Welch v. Skorton*,
    299 F. Supp. 3d 102 (D.D.C. 2018) .........................................................................................24

*Wiley v. Glassman*,
    511 F.3d 151 (D.C. Cir. 2007)..................................................................................................15

*Women's Equity Action League v. Cavazos*,
    906 F.2d 742 (D.C. Cir. 1990)..................................................................................................14

*Wong v. Wells Fargo Bank*,
    789 F.3d 889 (8th Cir. 2015) .....................................................................................................6

**Statutes**

10 U.S.C. § 10501(b) .......................................................................................................................13

10 U.S.C. § 10508(b)(3).............................................................................................................4, 10

42 U.S.C. § 2000e-16(a).................................................................................................................22

Defendants reply as follows in support of their Motion to Dismiss (ECF No. 28). For reasons discussed below, in addition to those set forth in Defendants' motion, this action should be dismissed.

## ARGUMENT

### I.    Plaintiff Lacks Standing to Assert Claims Against Most Title VII Defendants.

Plaintiff's employer is the Illinois National Guard—.not any of the other federal departments, agencies, or officials identified in the Complaint as "Title VII Defendants." Plaintiff does not have standing to assert a Title VII claim against any of the other "Title VII Defendants," and the Title VII claims against them should be dismissed.

That Plaintiff purports to bring Title VII claims on behalf of a putative class does not confer standing on Plaintiff to sue under Title VII federal agencies at which Plaintiff is not, and has never been, employed. Because Plaintiff's standing to sue under Title VII is limited to Plaintiff's employer, Plaintiff's standing as a putative class representative is likewise limited to that employer. At most, standing extends to representing a putative class of individuals employed by the Illinois National Guard and does not extend to federal agencies that have no employment relationship with Plaintiff.[1]

As the Supreme Court has recognized, a decision to assert class allegations in a complaint "adds nothing to the question of standing[.]" *Simon v. E. Ky. Welfare Rights Org*, 426 U.S. 26, 40 n.20 (1975). Like all plaintiffs, class representatives must prove their own "case or controversy with the defendants" to seek relief for "any other member of the class." *O'Shea v. Littleton*, 414

---

[1]    The question of standing is distinct from whether the requirements of Rule 23 have been satisfied. Defendants maintain that Plaintiff is not a proper class representative for any putative class under Rule 23 even as to the Title VII claim against the Illinois National Guard and will address that issue at an appropriate time if necessary.

U.S. 488, 494 (1974). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Id.*

To have standing to sue a particular defendant, the named plaintiff must allege an injury-in-fact that is "fairly traceable to the challenged action of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). "[S]tanding is not dispensed in gross," *Davis v. FEC*, 554 U.S. 724, 734 (2008); consequently, "[j]ust as a plaintiff's standing to seek damages does not give the plaintiff standing to seek an injunction, . . . so too a plaintiff's standing to sue one defendant does not give the plaintiff standing to sue every other defendant." *Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023).

Thus, if a named plaintiff lacks standing to bring a challenge against a particular defendant's actions, then the claim fails even if that defendant has allegedly injured unnamed putative class members that the named plaintiff purports to represent. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996). The required connection between a particular defendant's conduct and the asserted injury "is no less true with respect to class actions than with respect to other suits." *Id*. Even named plaintiffs who claim to represent a class must allege as to each defendant "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *See id.* (citation modified) When, as here, there is only one named plaintiff, that means standing exists for a Title VII claim only as to that one named plaintiff's employer. Put another way: "Standing cannot be acquired through the back door of a class action," *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part and dissenting in part), as Plaintiff suggests, *see* Resp. (ECF No. 45) at 24–27.

Here, Plaintiff lacks standing to bring a Title VII claim against agencies for which he never was employed.  Plaintiff's alleged injury-in-fact is specific to his employer.  Plaintiff acknowledges that there is a single-user restroom in the building in which he works, Compl. (ECF No. 1) ¶ 15, a bathroom that is within fifty feet of Plaintiff's office.  Ex. 1, Declaration of Mark G. Alessia ("Alessia Decl.") ¶ 3 (attached hereto).[2]  To the extent Plaintiff has standing at all to assert a claim under his Title VII theory of bathroom access, therefore, it is based on Plaintiff's additional allegations that he occasionally may be called into "an urgent meeting" elsewhere on campus where single-user restrooms are not available or may visit nearby Illinois National Guard facilities, some of which lack single-user restrooms.  Compl. ¶¶ 15, 171; Resp. at 31.[3]  That alleged harm is "fairly traceable," if at all, to the particular layout of buildings at Camp Lincoln that Plaintiff allegedly "at times" visits for his job, Compl. ¶ 171, not the actions of any of the other "Title VII Defendants."  Plaintiff, in short, has not alleged any injury-in-fact to him that is traceable to any conduct by those Defendants and thus has no standing to sue them.

Although effectively conceding that Plaintiff has suffered no alleged injury from the conduct of any other "Title VII Defendant," *see* Resp. at 13–18, Plaintiff nevertheless contends that he has standing to assert a Title VII claim against those defendants (1) based on the disfavored

---

[2]    The Court may consider materials outside the pleadings to resolve a challenge to its jurisdiction under Rule 12(b)(1).  *See, e.g.*, *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

[3]    In evaluating standing, the Court must assume that Plaintiff's claims have merit.  Here, that means the Court must assume—solely for purposes of evaluating standing—that Plaintiff has asserted a cognizable Title VII claim against Plaintiff's employer.  *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) ("[I]n reviewing the standing question, the court must . . . assume that on the merits the plaintiffs would be successful in their claims").  But that assumption does not carry over to the Court's evaluation of Defendant's motion to dismiss under Rule 12(b)(6).  For reasons discussed in that section of the reply, Plaintiff's Title VII claim against Plaintiff's employer should be dismissed for failure to state a claim.

"juridical link doctrine" and (2) because, pursuant to 10 U.S.C. § 10508(b)(3), the nominal defendant for a Title VII claim by a federal employee working within a State's National Guard is the United States and not the state official who is the head of the National Guard.  Resp. at 13–18. Neither argument has merit.

### A.    The Juridical Link Doctrine is an Outdated and Disfavored Doctrine that Conflicts with Basic Principles of Standing.

Contrary to Plaintiff's suggestion, there is not a meaningful split among the Circuits regarding the so-called "juridical link doctrine" for this Court to choose between.  Resp. at 14–16. No Circuit appears to have recognized the doctrine as an exception to Article III standing.

The doctrine originated, in *dicta*, from a 1973 Ninth Circuit decision, *La Mar v. H & B Novelty & Loan Company*, 489 F.2d 461 (9th Cir. 1973), that "did not address Article III standing" but instead "concluded that it was unnecessary to [do so] because the plaintiffs' claims failed under Rule 23 even assuming they had standing."  *Martinez v. Newsom*, 46 F.4th 965, 971 (9th Cir. 2022).  The Ninth Circuit now recognizes that its prior "practice of assuming standing" was improper and that a named plaintiff in a class action first must demonstrate standing to sue each named defendant before the requirements of Rule 23 are considered.  *Id.* ("The Supreme Court has since disapproved of our practice of assuming standing, so we cannot make the same assumption in this case." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998))).

In *Martinez*, the named plaintiffs sued hundreds of school districts in which they were not enrolled, without alleging that those defendants harmed them personally.  The Court applied a modern standing analysis that looked to whether the named plaintiffs had met the *Lujan* factors as to each defendant and held that the named plaintiffs "lack[ed] standing to sue defendants that have not injured them personally, even if they allege that those defendants injured absent class members."  *Id.* at 970.  The Court rejected plaintiffs' reliance on *La Mar*, disagreeing that *La Mar*

- 4 -

even "recognized a 'juridical link' exception to the[] ordinary rules of standing." *Id.* The concurrence was more emphatic, finding it "hard to imagine a juridical link exception to Article III standing [that] could exist in any form" in light of "post-*La Mar* decisions from the Supreme Court [that] have unequivocally closed the books on any potential 'juridical link' exception to Article III standing." *Id.* at 977–78 (Lee, J., concurring).

The other Circuit case cited by Plaintiff, *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), discussed a juridical link exception to standing but did not adopt it. The Court instead made the same error as *La Mar* by deciding the issue under Rule 23 without first engaging in a standing analysis. *Id.* at 680. The Court deferred the standing inquiry, concluding that the "plaintiffs may be entitled to represent a class suing all 19 defendant counties if, under the reasoning of *La Mar* and its progeny, they fulfill all the requirements of Rule 23."[4] *Id.* at 681. But the Supreme Court has since clarified that the practice of assuming jurisdiction to first resolve other issues "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Steel*, 523 U.S. at 94. Given that clarification, the Ninth Circuit has recognized that *La Mar*'s approach of assuming standing is no longer viable. *Martinez*, 46 F.4th at 971. And because *Payton* followed *La Mar*, its reasoning is equally flawed. There is now no dispute that the existence of standing determines a court's jurisdiction, so a plaintiff must have standing "at the outset of the litigation," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000), and must have it as to each claim that is asserted against each

---

[4]    The Seventh Circuit in *Payton* cited *Moore v. Comfed Savings Bank*, 908 F.2d 834 (11th Cir. 1990), as having supported the doctrine. *Payton*, 308 F.3d at 679. But the Eleventh Circuit in *Moore* did not adopt the juridical link doctrine and "did not address standing at all." *Farley v. Saxon Mortg. Co.*, No. CV-06-BE-1864-W, 2007 WL 9711658, at *4 (N.D. Ala. Oct. 19, 2007) (emphasis in original). *Payton* also cited as support a Sixth Circuit decision from 1998, but the Sixth Circuit has since expressly rejected the doctrine. *Fox*, 67 F.4th at 294.

named defendant, *Davis*, 554 U.S. at 734 (Standing is "'not dispensed in gross.'"). The analysis cannot be deferred for expediency until after class certification is addressed. *See Steel*, 523 U.S. at 94.

More recent cases have rejected attempts to create a "juridical link" exception to standing as contrary to Supreme Court precedent developed since *La Mar*. *See, e.g.*, *Fox*, 67 F.4th at 294 (holding that "[t]he juridical link doctrine conflicts with Supreme Court precedent in at least three ways"); *see also Wong v. Wells Fargo Bank*, 789 F.3d 889, 896 (8th Cir. 2015) ("Although our court has not previously addressed this doctrine, we agree with other circuits that, under similar circumstances, have found it inapplicable"); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) ("Mahon, however, fails to explain why a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties."); *Martinez*, 46 F.4th at 978 (Lee, J., concurring) ("Given these developments in standing doctrine, it is hard to imagine a juridical link exception to Article III standing could exist in any form.").

No binding or persuasive precedent for juridical link exists for this Circuit. The D.C. Circuit does not appear to have addressed the issue, and the two district court cases that have been guided by *LaMar* and *Payton* are outdated and lack any precedential value. The first case, and the decision on which Plaintiff largely relies, is a district court decision, *United States v. Trucking Employees, Inc*., 75 F.R.D. 682 (D.D.C. 1977), that does not even address standing. In that case, the plaintiffs—the United States and the Equal Employment Opportunity Commission— unquestionably had standing to sue a class of defendants for allegedly violating a discrimination statute. The question was not standing but whether the named defendant-class satisfied the requirements of Rule 23. *Id*. at 686 ("In view of the significance and novelty of the issues involved

in this case, the court today will discuss at some length its rationale for having allowed this suit to proceed under Rule 23(b)(2) as a defendant class action."). The court cited *La Mar* solely for the proposition that, in the context of assessing class certification, "all defendants are juridically related in a manner that suggests a single resolution of the [entire] dispute would be expeditious." *Id.* at 690 (citation modified). That is hardly the endorsement for a novel exception to Article III standing that Plaintiff suggests. Pl. Resp. at 15.

Although not cited by Plaintiff, one other decision in this judicial district references the juridical link doctrine. *See Lightfoot v. Dist. of Col.*, No. 01-1484 (CKK), 2004 U.S. Dist. LEXIS 22158 (D.D.C. Jan. 14, 2004).[5] *Lightfoot* relied on *La Mar* and *Payton* as well as a Sixth Circuit decision, *Thompson v. Board of Education*, 709 F.2d 1200 (6th Cir. 1983), to allow a claim to proceed against a defendant that had not harmed the plaintiff. *Lightfoot*, 2004 U.S. Dist. LEXIS 22158 at *27–29. But *La Mar* and its progeny in *Payton* are analytically flawed. The Ninth Circuit has distanced itself from the doctrine, *Martinez*, 46 F.4th at 971, and the Sixth Circuit has soundly rejected it. *Fox*, 67 F.4th at 294; *supra* n.3. Thus, to the extent *Lightfoot* supports the juridical link doctrine, it stands alone, is contrary to Supreme Court precedent, is not persuasive, and should not be followed.[6]

But even if the Court recognized a juridical link exception to standing, the limited situation where that doctrine could apply—a "common rule applied by instrumentalities of a single state" causing the same injury among all putative class members, *see La Mar*, 489 F.2d at 469–70—is

---

[5]    It does not appear that this decision is available on Westlaw, and therefore, Defendants cite to Lexis.

[6]    A later decision in *Lightfoot* granting partial summary judgment to the plaintiffs was later reversed by the D.C. Circuit and on remand the case was dismissed. *See Lightfoot v. Dist. of Col.*, Civ. A. No. 01-1484 (CKK), 2007 WL 148777, at *1 (D.D.C. Jan. 16, 2007).

inapplicable here for several reasons. *First*, Plaintiff claims to have standing to sue other agencies because those agencies "all are required to follow the Executive Order, the OPM Guidance, and the GSA Recission." Pl. Resp. at 16. But the Complaint only makes specific allegations regarding the alleged implementation of the Order and Guidance with respect to the Illinois National Guard, which is not an instrumentality of the federal government but a state-level entity that employs some civilian federal workers. According to Plaintiff's own allegations, the implementation at that level was the result of separate guidance specific to the Illinois National Guard. Compl. ¶ 165. The Complaint does not allege whether or when any of the approximately 80 federal agencies identified as "Title VII Defendants" implemented the Executive Order or OPM Guidance. As to those Defendants, Plaintiff asserts solely "[u]pon information and belief" that they "have likewise banned transgender and intersex federal employees from using restrooms that align with their gender identity," *id.* ¶ 167, but he pleads no specific facts to support that conclusory allegation. *Air Excursions v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023).

*Second*, Plaintiff's alleged injury-in-fact is unique to Plaintiff's specific circumstances. Because Plaintiff has access to a single-user bathroom within fifty feet of his office, Alessia Decl. ¶ 3, his allegations of harm necessarily focus on bathroom access outside his immediate workplace. He contends that (1) "none of the other buildings at Camp Lincoln" have single-user restrooms and Plaintiff "is constantly worried that [Plaintiff] will be called into an urgent meeting in one of those buildings" and (2) "[o]f the twelve National Guard facilities that [Plaintiff] must visit to supervise the work of other department employees, eight do not have any single-user restrooms." Compl. ¶ 15; *see also* Pl. Resp. at 31 ("The campus on which [Plaintiff] primarily works has only one single-user restroom, and [Plaintiff's] role requires [Plaintiff] to regularly visit facilities that do not have any single-user restrooms.").

To fall within the juridical link doctrine, Plaintiff would have to plead that transgender employees in other agencies are similarly impacted by the Executive Order and OPM Guidance. But Plaintiff pleads no facts about the situation faced by transgender employees at other agencies following issuance of the Order or Guidance, including whether single-user restrooms are available to employees at those agencies and whether their jobs center around a single office location, where such a restroom may be located, or are more dispersed. That is not enough to establish standing. "If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. That is of course not the law." *Lewis*, 518 U.S. at 358 n.6.

Even under the juridical link doctrine, Plaintiff still would have to plausibly plead allegations establishing that absent class members have experienced an injury-in-fact based on an alleged uniform rule. The single, conclusory allegation "upon information and belief" directed at over 80 distinct federal agencies, Compl. ¶ 167, is insufficient to allege that absent class members working for those agencies have experienced any injury-in-fact as to restroom access. *See Air Excursions*, 66 F.4th at 277.

Finally, the juridical link doctrine cannot be reconciled with the specific language of Title VII, which covers "only 'employees in a direct employment relationship' with the employer." *Delbert v. Duncan*, 923 F. Supp. 2d 256, 259 (D.D.C. 2013) (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 829 (D.C. Cir. 1979)). Although the absence of statutory standing to sue non-employers "does not implicate subject-matter jurisdiction," *Lexmark Int'l, Inc. v. Static Control Components, Inc*, 572 U.S. 118, 128 n.4 (2014) (citation modified), it remains informative. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177 (2011) ("We . . . conclude that the term "aggrieved" [under Title

VII] must be construed more narrowly than the outer boundaries of Article III."). For instance, in *Easter v. American West Financial*, 381 F.3d 948 (9th Cir. 2004), the court rejected plaintiff's argument that a statute conferred "joint and several liability on all Trust Defendants and therefore creates a juridical link between them," finding nothing in the statute that did so. *Id*. at 962 ("Nothing in the language of [the statute] purports to confer standing on a plaintiff to sue a defendant against whom that plaintiff cannot otherwise assert a cause of action."). There is likewise nothing in Title VII that could support such an argument here.

**B.      Standing is Not Impacted By the Statutory Provision Identifying the United States as the Nominal Defendant.**

"'The only proper defendant in a Title VII suit' by a federal employee 'is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired.'" *Elmore v. Burrows*, Civ. A. No. 21-2347 (JMC), 2022 WL 7458796, at *4 (D.D.C. Oct. 13, 2022) (quoting *Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975)). Congress specifically designated the Adjutant General as the head of the Illinois National Guard and the Guard as the employing agency of its federal employees, including Plaintiff. *See* 10 U.S.C. § 10508(b)(3)(A) ("The adjutant general of the jurisdiction concerned shall be considered the head of the agency and the National Guard of the jurisdiction concerned shall be considered the employing agency of the individual and the sole defendant or respondent in any administrative action."). At the administrative level, the National Guard defends claims against it brought by its federal employees but does not do so once those claims proceed to court. *Id*. § 10508(b)(3)(B). At that point, the statute provides that "United States shall be the sole defendant" and the claim defended by the Attorney General. *Id*. ¶ 10508(b)(3)(C–D). Plaintiff contends that this section entitles Plaintiff to sue not only the United States but also all federal agencies as the putative representative of transgender employees within the entire federal workforce. Pl. Resp. at 17–18.

- 10 -

This section cannot be read to reach so broadly.  First, to the extent this statute has any impact on the provisions of Title VII, it is limited to making the nominal defendant the United States in court actions when the National Guard (a state entity) is the employing agency of the plaintiff.  The statute, in other words, addresses the practical need of designating a federal entity as the nominal defendant in lawsuits by federal employees against their state-entity employer so that the Attorney General can represent the federal government's interests in those actions.  The statute does not purport to impact any other provision of Title VII, including its "zone of interest," which remains the employment relationship between the allegedly aggrieved employee and his specific employer.  *Thompson*, 562 U.S. at 177–78 (recognizing that "a plaintiff may not sue unless he 'falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint'" and concluding that "Thompson falls within the zone of interests protected by Title VII" because he "was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions" and therefore Thompson "is a person aggrieved with standing to sue" NAS).

The issue is not whether a judgment against the United States here would be binding on the agencies of the United States, Pl. Resp. at 17—a question related at most to redressability— but whether the separate injury-in-fact requirement of standing has been satisfied as to the other "Title VII Defendants."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'").  As already addressed, it has not been and that analysis remains undisturbed by section 10508(b)(3).

Plaintiff's argument also is undermined by case law involving other statutes in which the United States is designated as the sole defendant. For instance, the United States is the designated defendant under the Federal Tort Claims Act ("FTCA"), but that does not entitle a FTCA plaintiff to sue government agencies simply because they are part of the United States. *Kissi v. Simmons*, Civ. A. No. 09-1377 (EGS), 2009 WL 3429567, at *1 (D.D.C. Oct. 22, 2009) ("[T]he proper defendant to an action under the FTCA is the United States of America, *see* 28 U.S.C. § 2679(a), and the complaint fails to name the proper defendant."). Indeed, courts routinely dismiss government agencies when they are named as defendants in FTCA actions. *See, e.g.*, *Allen v. Brown*, 185 F. Supp. 3d 1, 10 (D.D.C. 2016) (dismissing FTCA count against the Secretary of Veterans Affairs in his official capacity because the count "should have been filed against the United States as the FTCA does not authorize suits against federal officials or federal agencies"); *Verizon Washington, D.C., Inc. v. United States*, 254 F. Supp. 3d 208, 215 (D.D.C. 2017) (dismissing FTCA claims against the General Services Administration for lack of subject matter jurisdiction). The same applies here.

## II.    Venue Does Not Lie in this Judicial District.

Nothing about section 10508(b)(3) purports to change the special venue provisions of Title VII and Plaintiff does not argue otherwise. Plaintiff's sole argument on venue is that this judicial district is where the "governing decisions as to restroom use . . . that form the basis of [Plaintiff's] claims . . . were made." Pl. Resp. at 19. But that is belied by Plaintiff's own allegations.

Plaintiff works for a state-entity, the Illinois National Guard. Compl. ¶ 1. Any connection between Plaintiff's Title VII claim and this judicial district, therefore, is several steps removed from the Executive Order and OPM Guidance as Plaintiff's own allegations establish.[7] Plaintiff

---

[7]    Plaintiff references only Illinois National Guard facilities in his Complaint (Compl. ¶¶ 15, 171, 173) and has not alleged that such facilities are managed by the General Services

alleges that, following issuance of the Executive Order and OPM Guidance, the Secretary of Defense issued a memorandum for "senior Pentagon leadership, commanders of the combatant commands, and Defense agency and Department of Defendant field activity directors."  Compl. ¶ 42.  Plaintiff alleges that this memorandum directed "the National Guard Bureau . . . to '[e]nsure that intimate spaces designated for women . . . are designated by sex and not identity.'"  *Id.*  The National Guard Bureau, however, serves as "the *channel of communications* on all matters pertaining to the National Guard . . . between (1) the Department of the Army and Department of the Air Force, and (2) the several States."  10 U.S.C. § 10501(b) (emphasis added).

According to Plaintiff's allegations, it was the so-called Garrison Memorandum—issued by the Chief of Staff for the Illinois National Guard—that directed that "the Illinois National Guard would 'need to confirm compliance with . . . restrooms.'"  Compl. ¶ 165.  Plaintiff appears to acknowledge this distinction in arguing (incorrectly) that his APA claim should not be dismissed because Title VII "does not" afford him an "adequate remedy."  Pl. Resp. at 38.

Ultimately, the Illinois National Guard's connection to the federal government runs through the National Guard Bureau—the "channel of communications" between the state and the Department of Defense.  Neither the Bureau nor the Department is located in the District of Columbia.[8]  *See Muldrow v. Garland*, Civ. A. No. 20-2958 (APM), 2021 WL 6844248, at *2 (D.D.C. Oct. 26, 2021) ("Claims that merely implicate national policies and involve limited acts by District-based officials but otherwise rest on events occurring entirely elsewhere do not justify

---

Administration ("GSA").  Plaintiff thus has failed to plausibly plead any connection between the so-called "GSA Rescission" (Compl. ¶ 11) and Plaintiff's workplace.

[8]    *See, e.g.*, *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94–95 (D.D.C. 1983) (National Guard Bureau is located in Virginia); *Spencer v. Rumsfeld*, 209 F. Supp. 2d 15, 18 (D.D.C. 2002) ("principal offices" of the Secretary of Defense "are in Arlington, Virginia" for venue purposes); *Jackson-Spells v. Rumsfeld*, 457 F. Supp. 2d 39, 40 n.1 (D.D.C. 2006) (same).

maintaining this action here."). Accordingly, because this case cannot be heard in its present form in this judicial district, this case should be dismissed for improper venue or transferred to the Central District of Illinois.

### III.    Plaintiff's Allegations Fail to State a Claim.

#### A.    The Remedy Available Under Title VII Precludes an APA Claim.

Plaintiff acknowledges, as he must, that Title VII is the exclusive scheme for the redress of employment disputes by federal employees even when, as here, a plaintiff's specific claim is not actionable. Yet, in an effort to salvage his APA claim, he jettisons another deficient argument—that he has standing under Title VII to sue over 80 federal agencies that do not employ him—to contend that a Title VII remedy would be incomplete because it would not reach "other federal buildings" that Plaintiff allegedly visits as part of his job. Pl. Resp. at 38. The Complaint, however, does not reference "other federal buildings" but only other "National Guard facilities" in Illinois that Plaintiff claims Plaintiff "must visit[.]" Compl. ¶¶ 15, 171, 173.

Title VII exclusivity, moreover, does not depend on whether a suit under the APA "would be more *effective*" but whether the available remedy under Title VII is "*adequate*." *Council of & for the Blind of Del. Co. Valley v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983) (emphasis in original). And "situation-specific litigation affords an adequate, even if imperfect, remedy," so it precludes an APA claim. *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990); *see also Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("[T]his court has held that the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"). Accordingly, for these reasons, and those set forth in Defendants' motion, Plaintiff's APA claim should be dismissed even though the remedy available under Title VII's comprehensive scheme is not available to Plaintiff's specific claim.

**B.      Plaintiff's Title VII Claim Fails.**

Plaintiff cannot prevail on his Title VII disparate treatment claim unless his allegations plausibly allege he is treated worse off because of his sex. *See Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). His complaint does not come close to plausibly making that showing. And Plaintiff's Response to Defendants' Motion to Dismiss proves why: his faulty legal theory turns on purported discrimination against an unprotected class. Plaintiff agrees requiring individuals to use the restroom corresponding to their sex is differential treatment based on *sex*. Pl. Resp. at 24. He even concedes that "sex-based policy," however, "causes no harm," so it does not violate Title VII as neutrally understood. Pl. Resp. at 34. That should be the end of the analysis. But Plaintiff attempts improperly to rewrite his disparate treatment claim into a disparate impact claim, contending the neutral policy violates Title VII given its special effect on the unprotected class of trans-identifying persons. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (distinguishing disparate treatment claims from disparate impact claims).

Plaintiff relies on a broad reading of *Bostock*, arguing the Supreme Court created a categorical rule that any and all differential treatment or impact affecting trans-identifying persons categorically considers sex. But the Supreme Court has held no such thing, nor has Congress extended Title VII so far. Regardless, Plaintiff cannot show the alleged harm stems from his sex. But even if it did, Plaintiff has not sufficiently alleged he is left worse off by having to use the restroom options available to all other employees based on their sex, so his claim fails regardless.

1.      *Bostock* Did Not Create a Categorical Transgender Rule.

The Supreme Court has not held that any and all action negatively affecting trans-identifying persons constitutes sex discrimination. Plaintiff contends *Bostock*'s reasoning that "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex," *Bostock v. Clayton Cnty.*, 590 U.S. 660, 644 (2020), means

all "discrimination against transgender employees necessarily constitutes discrimination because of sex under Title VII." Pl. Resp. at 33 (quoting *Bostock*, 590 U.S. at 655–56). But *Bostock*'s holding did not stretch so broadly. The question before the Court was merely whether undisputably firing an employee "simply for being homosexual or transgender" violates Title VII. *Bostock*, 590 U.S. at 651. And in response to that precise question, the Court explained that taking a direct employment action against an employee simply because they are transgender necessarily turns on the employee's sex because the person was fired "for traits or actions [the employer] would not have questioned in members of a different sex." *Id.* at 652; *see also United States v. Skrmetti*, 605 U.S. 495, 520 (2025) (explaining the extent of *Bostock*'s holding). Thus, it is not true that any condition of employment affecting trans-identifying persons constitutes sex discrimination as Plaintiff suggests, Pl. Resp. at 33, but instead only that termination (or some other discrete personnel action) based on trans-identifying status alone would.

Given its limited holding, *Bostock* has little relevance to the question before this Court for two reasons. First, *Bostock* concerned a direct employment action like hiring or firing that was intentionally discriminatory. 590 U.S. at 591 ("[W]e must decide whether an employer can fire someone simply for being homosexual or transgender."). Here, Plaintiff challenges a broad, facially neutral policy that applies to all employees, regardless of sex or trans-identifying status. And the policy does not single out trans-identifying persons in its application. So Plaintiff's attempt to invoke *Bostock*'s discussion of "penalize[ing] a person assigned male at birth 'for traits that it tolerates in an employee' assigned female at birth," Pl. Resp. at 33, fails given the Court's reasoning pertained to a direct, intentional decision taken in its view because of a person's trans-identifying status, *Bostock*, 590 U.S. at 660–61. Here, Plaintiff does not challenge a direct employment action against or even allege intentional action on account of trans-identifying status.

Instead, Plaintiff's claims turn on incidental effect of an otherwise general policy, Pl. Resp. at 34–35, which *Bostock* did not pass on or even hint could count as a Title VII injury, 590 U.S. at 681.

Second, the Court already noted its limited holding, removing any doubt as to whether *Bostock* controls the instant question. The Court explicitly reserved whether "sex-segregated bathrooms, locker rooms, and dress codes" violate Title VII. *Bostock*, 590 U.S. at 681. It did not purport to pass on whether any such policies would even "injure protected individuals," a necessary element for Plaintiff's Title VII claim. *Id.* ("Whether other policies and practices might or might not qualify as unlawful discrimination or find justifications under other provisions of Title VII are questions for future cases, not these."). Thus, neither *Bostock*'s holding nor reasoning has any bearing on neutral policies creating sex separate spaces, despite any alleged incidental effect on trans-identifying persons.

2.      Sex Separate Restrooms Are Not Intentionally Discriminatory.

Plaintiff errs in contending the restroom policy facially targets trans-identifying employees for different treatment on the basis of sex. Pl. Resp. at 34 ("The Restroom Policy . . . expressly subjects transgender federal employees to sex-based differentiation that causes harm."); ("[T]he Restroom Policy not only treats transgender people differently; it treats them 'worse because of sex.'"). True, the policy on its face is a sex-based classification, drawing a distinction based on sex for restroom usage. But all employees, regardless of sex or trans-identifying status, must use the restroom corresponding to their sex—a point Plaintiff concedes, acknowledging the rule causes no harm based on the sex classification itself. Pl. Resp. at 34 ("Withrow does not challenge separate men's and women's restrooms generally—those restroom designations alone do not cause harm even though they treat people differently based on sex."). Accordingly, the policy cannot be construed as an intentional policy facially classifying on the basis of trans-identifying status. *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 809 (11th

- 17 -

Cir. 2022) (noting a policy that classifies on the basis of biological sex does not implicitly then also classify on the basis of trans-identifying status). That is because trans-identifying persons fall into both camps of the sex classification, proving "a lack of identity" "between transgender status and [the] policy that divides [employees] into biological male and biological female groups." *Id.* (internal quotations omitted); *see also Skrmetti*, 605 U.S. at 520–21.

Seeking to avoid the general application of a nondiscriminatory policy, Plaintiff contends the policy is discriminatory in its effect, "but only to transgender employees." Pl. Resp. at 34. But Plaintiff alleged a disparate treatment claim, not a disparate impact claim, Compl. ¶¶ 16, 51, so his incidental effect arguments are of little value. That is because the discriminatory effects of a generally applicable policy that only allegedly harm a nonprotected class cannot violate Title VII. *See Chambers v. D.C.*, 35 F.4th 870, 874 (D.C. Cir. 2022) (explaining the injury from an employer's policy must "injure protected individuals" to violate Title VII). That is true even if the unprotected class is trans-identifying persons because "a policy can lawfully classify on the basis of biological sex without unlawfully discriminating on the basis of transgender status." *See Adams*, 57 F.4th at 809. *Bostock* does not displace that conclusion because it merely held intentional discrimination concerning a direct employment action based on trans-identifying status necessarily involved sex discrimination. *Id.* The Court did not hold "the converse of that statement—whether discrimination based on biological sex necessarily entails discrimination based on transgender status." *Id.*

3.    Sex is Not a But-For Cause of Plaintiff's Alleged Harm.

In any event, Plaintiff cannot show that any incidental harm to a nonprotected class is because of the protected characteristic: sex. In Plaintiff's own words, he must show his alleged harm was "based *expressly* on a protected characteristic." Pl. Resp. at 32. And under Title VII, only sex—not trans-identifying status—is a protected characteristic. Plaintiff's own briefing

- 18 -

repeatedly articulates alleged harm stemming from his status as a trans-identifying person, not his sex. *See, e.g.*, Pl. Resp at 12 ("Plaintiff, like all other transgender federal employees, is prohibited from using the restroom that aligns with her gender identity."); *id.* at 34 ("For the majority of employees, that expressly sex-based policy causes no harm, but for transgender employees, it does."); *id.* at 34 ("The Restroom Policy . . . cause[s] harm—but only to transgender employees."). His argument that trans-identifying status can merge with his sex to establish but for causation fails. True, *Bostock* noted his sex need not "be the only factor causing harm" or "even the main factor," Pl. Resp. at 35, but that is irrelevant because Plaintiff cannot establish his sex is even a contributing factor in the but for analysis.

As Defendants already explained, changing Plaintiff's sex does not result in a different outcome. *See* Mot. to Dismiss (Doc. 28) at 23. Plaintiff is a biological male, so he must use the restroom corresponding to his sex. Switching Plaintiff's sex to female does not yield a different result because Plaintiff would still be required to use the restroom corresponding to biological sex. Those policy applications are unaltered regardless of whether an employee is trans identifying. Accordingly, the policy does not somehow tolerate actions of one sex it would not permit in another, *see Bostock*, 590 U.S. at 660; Pl. Resp. at 33, because the policy does not tolerate any male or female, or non-trans identifying or trans identifying person using the restroom inconsistent with their sex. All showing, Plaintiff's alleged harm does not stem from the sex-based classification of the policy. And Plaintiff does not contest Defendants' definition of sex, which excludes gender or trans-identifying status. *See* Pl. Resp. at 33.

The but for analysis proves Plaintiff is actually asserting a transgender discrimination claim dressed up as sex discrimination. Only when changing an employee's trans-identifying status—not his sex—does the analysis yield the differential treatment Plaintiff complains of. Accordingly,

- 19 -

Plaintiff's alleged harm stems from his trans-identifying status, not his sex, which is not a protected characteristic under Title VII. At best, that harm is an incidental effect of the policy, not the product of an intentional discriminatory action. But as amicus counsel aptly noted, Plaintiff cannot "mix and match the causality standards for disparate treatment and disparate impact" in attempt to prove liability. Amicus Br. (Doc. 34) at 19. At bottom, because Plaintiff's sex is not a but for cause of the harm Plaintiff alleges, much less a contributing one, his Title VII claim fails.

4.    Plaintiff Treats Trans-Identifying Persons as a Protected Class.

Plaintiff's entire theory turns on transforming "trans-identifying" into a protected class under Title VII. That is the basis for Plaintiff's challenge to the "GSA Rescission"—which Plaintiff defines as a Federal Register notice that withdrew a "2016 directive that federal agencies using space managed by GSA must allow individuals to use restrooms consistent with their gender identity" not just biological sex. Compl. ¶ 11. The difference between the 2016 directive and the current status is not over the maintenance of separate men's and women's restrooms but whether those restrooms are designated based on biological sex or gender identity. Plaintiff's assertion that it should be the latter—and if not, Title VII is violated—confirms Plaintiff seeks to transform identifying status into a protected class.

That move finds no support in precedent nor the statute's plain text. As relevant here, Title VII did not prohibit all discrimination, only discrimination on the basis of sex. And "sex" means biological sex, so it does not encompass "non-biological distinctions, gender, or trans-identifying status." Mot. to Dismiss at 29. Binding precedent has not held otherwise, as *Bostock* "expressly refused to redefine 'sex'" "to include 'gender identity.'" *Texas v. Equal Emp. Opportunity Comm'n*, 785 F. Supp. 3d 170, 188 (N.D. Tex. 2025).

Worse, Plaintiff seeks not only to transform trans-identifying persons into a protected class, but the most favored class. In Plaintiff's own words, there is nothing unlawful about "separate

men's and women's restrooms." Pl. Resp. at 34. Yet he requests this Court create an exemption to the general workplace policy requiring restroom usage corresponding with biological sex because the policy "only treats transgender people differently." Pl. Resp. at 34. But opening sex-separate spaces to the opposite sex shatters the privacy and safety concerns justifying separate spaces to begin with. *See* Mot. to Dismiss at 30–31. Not to mention the significant legal ramifications undoing decades of precedent and statute, not to mention exposing employers to significant liability. *See* Amicus Br. at 20–21. Plaintiff harkened our Nation's progress to ensure equality for women in the workplace, Pl. Resp. at 42, yet his argument ironically seeks to negate that progress by demanding greater protection for the preferences of a trans-identifying male, thereby negating the presence of sex-separate spaces for women altogether.

No doubt, Withrow's disguised attempt to shoehorn a transgender discrimination claim into a sex discrimination claim must be rejected by this Court.

5.    <u>Restricting Restroom Usage to Biological Sex is Not an Adverse Action.</u>

Plaintiff's complaint lacks sufficient allegations demonstrating an adverse action. Because Plaintiff is a federal government employee, the federal sector standards for discrimination control, which require a showing of significant harm. But even if *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) applied, Withrow's allegations do not even satisfy the lower standard of showing just some harm. That is because despite the challenged policy, Plaintiff still has access to a restroom at all work locations, in addition to a single-user restroom at his normal worksite, eliminating any alleged harm. His mere preference to use a different restroom is at most an inconvenience, which is insufficient to constitute an adverse action given "Title VII does not permit liability for petty trivialities or insubstantial annoyances." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 505 (5th Cir. 2023); *see also Ortiz v. Bank of Labor*, No. 22-3127, 2023 WL 3590699, at *3 (10th Cir. 2023) ("inability to use her preferred restroom does not rise above 'mere inconvenience'").

The standard for a federal sector discrimination claim controls given Plaintiff is a federal government employee. The federal sector provisions of Title VII provide that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination." 42 U.S.C. § 2000e-16(a). The Civil Service Reform Act defines "personnel actions" to include an appointment, promotion, disciplinary action, transfer or reassignment, reinstatement, performance evaluations, decision concerning pay, benefits, or awards, 5 U.S.C. § 2302(a)(2)(A)(i)–(xi), and also a change in working conditions but only if "significant," § 2302(a)(2)(A)(xii). Here, even if the Complaint contained allegations sufficient to show sex discrimination, the Complaint does not contain sufficient allegations showing that harm was significant.

Even if *Muldrow* applied, Plaintiff must still "show *some harm* respecting an identifiable term or condition of employment," even though he need not "show . . . that the harm incurred was 'significant.'" *Muldrow*, 601 U.S. at 354–55 (emphasis added). And although terms or conditions of employment "is not used in the narrow contractual sense," Withrow must still "show some harm respecting an identifiable term or condition of employment." *Id.* (internal quotations omitted). Put simply, Withrow must show he is "worse off" with respect to his "employment terms or conditions" to plausibly allege an adverse action.

The policy requiring employees to use restroom facilities consistent with biological sex does not leave Withrow worse off for two reasons. First, even accepting Plaintiff's argument that an employee's ability "to use the restroom at work is plainly a condition of their employment," Pl. Resp. at 40, Withrow's allegations fail to show that he has been deprived of that ability. He concedes that he has access to a restroom at work: the restroom corresponding to his sex regardless of worksite location and a single-user restroom at his main worksite location. *See* Compl. at ¶ 15;

Pl. Resp. at 34 (noting Plaintiff still has the choice to access the restroom consistent with his sex). Thus, *Ramos Martinez v. Puerto Rico*, which concerned a complete prohibition on women using the restroom at the office headquarters, No. 07-2026, 2011 WL 13351065, at *5 (D.P.R. Feb. 15, 2011), is inapposite given no part of the challenged policy prohibits Withrow from using either restroom option available to him.

Second, Plaintiff enjoys the same restroom access and availability options as all other employees in his workplace: the single-user restroom and restroom corresponding to the employee's sex. And the complaint lacks any allegation that the conditions of the restroom available to one sex are inferior to that of the other. Accordingly, *Hinds v. PSEG Long Island LLC*, is also inapposite given *Hinds* concerned an employee being required to use an inferior restroom solely due to his race. No. 23-CV-08701, 2026 WL 266010, at *9 (E.D.N.Y. Feb. 2, 2026). Further distinguishing *Hinds*, the policy here was not crafted based on the invidious belief of inferiority. There is no allegation the policy stems from the employer's belief one sex is inferior to another but instead stems solely from the desire to promote mutual privacy interests. *See* Mot. to Dismiss at 30–31.

Plaintiff's self-selected harms do not change the analysis because harm "is a purely objective inquiry." *Chambers*, 35 F.4th at 877; *cf. Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (explaining that "self-inflicted harm doesn't satisfy the basic requirements for standing" because it is neither a cognizable injury, nor is it fairly traceable to the defendant's challenged conduct.).

Plaintiff alleges that he has "regular weekly" meetings at a building without a single-user restroom but implausibly suggests that—despite that regularity—he is somehow unable to use the single-user restroom at his main workplace before going to the meeting. Compl. ¶ 171. The failure

- 23 -

to plan a bathroom break before being away from a bathroom for a finite period of time—something regularly done before lawyers attend court or families take routine car rides—is not objective harm. Equally implausible is Plaintiff's assertion that he "starves" himself and that the skips "breakfast almost every day and generally lunch as well," Compl. ¶ 14, given the allegation that Plaintiff has a "single-user restroom" available "at work" and only complains about the lack of restroom access in other buildings for regularly scheduled meetings or the occasional unplanned meeting, *id.* ¶ 15; *see also id.* ¶ 171 (alleging that Plaintiff is "at times called without prior notice to meetings" in other buildings). At most, those allegations amount to subjective, self-imposed harms stemming from his preference not to use the readily available restroom options all other employees have based on their sex. But "mere preference[s]" are not enough. *Muldrow*, 601 U.S. at 361 (Thomas, J., concurring). Adverse action cannot be merely subjective—it must objectively impact a condition of employment to be actionable. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *see also Chambers*, 35 F.4th at 877 ("determining whether a challenged action relates to 'terms, conditions, or privileges of employment' is a purely objective inquiry"). Further, Plaintiff's allegations relating to anxiety, constant worrying, or other emotional distress are insufficient to show he is objectively worse off given the complaint fails to allege how those behaviors impact the terms and conditions of his employment. *See Welch v. Skorton*, 299 F. Supp. 3d 102, 111 (D.D.C. 2018) (finding "consequences such as anxiety, embarrassment," or "emotional anguish" cannot be said to "affect the terms, conditions, or privileges" of employment); *Stewart v. United States Dep't of Agric.*, Civ. A. No. 23-1194 (TSC), 2024 WL 4332618, at *6 (D.D.C. Sept. 27, 2024) (finding an employee's subjective "mental and emotional circumstances" is irrelevant to the adverse action analysis).

In sum, Plaintiff has not plausibly alleged a sex discrimination claim under Title VII for disparate treatment because the challenged policy does not discriminate because of sex or leave the employee worse off with respect to a term or condition of employment.

**C.    Plaintiff Has Failed to State a Claim Against the Title VII Defendants That Did Not Employ Him.**

For the same reasons that Plaintiff lacks standing to sue the approximately eighty "Title VII Defendants" that are not his employing agency, he has failed to state a claim against those defendants under Rule 12(b)(6).  *See Thompson*, 562 U.S. at 177 ("We . . . conclude that the term "aggrieved" [under Title VII] must be construed more narrowly than the outer boundaries of Article III.").

**CONCLUSION**

For these reasons, and those set forth in the Defendants' motion, the Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated: June 12, 2026                              Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

JEANINE FERRIS PIRRO
United States Attorney

ANNA L. EDWARDS
Counsel to the Associate Attorney General

By: _____/s/ *Dimitar P. Georgiev*_____
      DIMITAR P. GEORGIEV, D.C. Bar #1735756
      JEREMY S. SIMON, D.C. Bar #447956
      Assistant United States Attorneys
      601 D Street, NW
      Washington, DC 20530
      (202) 252 –2500 (main)

*Attorneys for the United States of America*

- 25 -