**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LEANNE WITHROW,<br><br>     ***Plaintiff***<br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br>***et al.***<br><br>     ***Defendants*** | Civil Action No. 1:25-4073 (LMC) |

## PROPOSED DEFENDANT-INTERVENOR'S MOTION TO INTERVENE

Defendant-Intervenor Jane Doe hereby moves to intervene as defendant in this matter. This motion is made pursuant to Federal Rules of Civil Procedure 24(a) or, alternatively, Rule 24(b). This motion is supported by the accompanying Memorandum of Points and Authorities, the Declaration of Jane Doe, and such argument counsel may present at any hearing ordered by this Court.

Pursuant to Local Rule 7(f), Jane Doe respectfully request an oral hearing on her motion.

Dated: June 19, 2026                Respectfully submitted,


/s/ *Karin M. Sweigart*

Karin M. Sweigart
(Bar #CA00145)
Jesse D. Franklin-Murdock
(Bar #CA00147)

i

**SWEIGART MURDOCK, LLP**
1160 Battery Street, Suite 100
San Francisco, California 94111
(415) 873-0123
Karin.Sweigart@sm-llp.com
Jesse@sm-llp.com

Nancy K. Stade (D.D.C. Bar No. 471601)
Women's Liberation Front
1930 18th Street NW,
Suite B2 #2036
Washington, DC 20009
boardtreasurer@womensliberationfront.org

*Counsel for Defendant-Intervenor*
 *Jane Doe*

**TABLE OF CONTENTS**

Table of Contents ...................................................................................................................iii

Table of Authorities ...............................................................................................................iv

Introduction ............................................................................................................................1

Factual Background.................................................................................................................2

Argument ............................................................................................................................. 7

      I.        The Proposed Defendant-Intervenor has Standing ..................................................7

            A.     Jane Doe Seeks to Intervene as a Defendant……………………….……7

            B.     Jane Doe Has and Will Suffer Multiple Injuries in Fact…………..…..…11

      II.      The Proposed Intervenor is Entitled to Intervention as a Right........................... 12

            A.     The Motion to Intervene is Timely. ..........................................................13

            B.     The Proposed Intervenor Has an Interest in the Matter That May Be Impaired Without Intervention............................................................................... 14

            C. Existing Parties Do Not Adequately Represent Intervenor's Interests. .......... 14

      III. Alternatively, the Proposed Intervenor Should be Granted Permissive Intervention..16

Conclusion ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135 (9th Cir. 2011) ................ 11

Citizens United v. FEC, 130 S. Ct. 876 (2010) .......................................... 8

*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n, 788 F.3d 312 (D.C. Cir. 2015) .... 9, 10, 12, 14

Daggett v. Comm'n on Gov't Ethics & Election Pracs., 172 F.3d 104 (1st Cir. 1999) ...... 16

*EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042 (D.C. Cir. 1998) ............... 16, 17

*Fund for Animals, Inc. v. Norton, 322 F.3d 728 (D.C. Cir. 2003) ....................... 13

Jones v. Critchfield, 803 F. Supp. 3d 1078 (D. Idaho 2025) ............................. 11

Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992) ........................................ 9

*McConnell v. FEC, 540 U.S. 93 (2003) ................................................. 8

Military Toxics Project v. EPA, 146 F.3d 948 (D.C. Cir. 1998) ......................... 14

S.D. ex rel. Barnett v. U.S. Dep't of Interior, 317 F.3d 783 (8th Cir. 2003) ........... 13

Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt, 331 F.R.D. 5 (D.D.C. 2019) .... 16

Southern Utah Wilderness All. v. U.S. Dep't of Interior, 2025 WL 1743939 (D.D.C. June 24, 2025) .... 13

*Spokeo, Inc. v. Robins, 578 U.S. 330 (2016) ........................................... 9

Tirrell v. Edelblut, No. 24-cv-251-LM-TSM, 2025 WL 1939965 (D.N.H. July 15, 2025) ...... 16

*Town of Chester v. Laroe Estates, Inc., 581 U.S. 433 (2017) ........................... 8

*TransUnion LLC v. Ramirez, 594 U.S. 413 (2021) ................................. 9, 10, 11

United States v. Skrmetti, No. 23–477 (U.S. June 18, 2025) ............................ 15

Va. House of Delegates v. Bethune-Hill, 139 S. Ct. 1945 (2019) ........................ 8

//

iv

**Statutes and Rules**

Administrative Procedure Act, 5 U.S.C. § 706 ............................................ 1

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ................... 1

28 U.S.C. § 1331 ........................................................ 16

Fed. R. Civ. P. 24(a) ...................................................... 2, 7, 12, 17

Fed. R. Civ. P. 24(b) ...................................................... 2, 7, 16, 17

**Executive and Regulatory Authorities**

Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ............................... 1

Federal Management Regulation; Nondiscrimination Clarification in the Federal Workplace, 81 Fed. Reg. 55148 (Aug. 18, 2016) .... n.17

**Secondary Authorities**

Aaron Kimberly, Sex and Violence: What the Data on Trans Offenders Really Show, Reality's Last Stand (May 27, 2025) .... n.11

Dhejne C, Lichtenstein P, et al., Long-Term Follow-Up of Transsexual Persons Undergoing Sex Reassignment Surgery: Cohort Study in Sweden, PLOS ONE 6(2) (2011) .... n.10

Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health (7th ed. 2003) .... n.1

U.S. Department of Justice, Bureau of Justice Statistics .............................. n.7

7C Charles Alan Wright et al., Federal Practice & Procedure § 1917 (3d ed. 2010) ....... 16

**Other Authorities**

Alex Hammer, Transgender 'pervert' is arrested 15 months after she 'exposed herself to women and girls at Wi Spa in LA', Daily Mail (Dec. 9, 2022) .... n.9

Defense Freedom Institute, Press Release: DFI Files Federal Civil Rights Complaint Against Fairfax County Public Schools... (Sept. 24, 2025) .... n.9

F.B.I. Crime Data Explorer ................................................. nn.4–6, 8, 16

Family Research Council, Bathroom Incidents ........................................... n.9

Independent Council of Women's Sports (ICONS), Fast Facts ............................ n.3

OPM, Women in Federal Service (2014) .................................................. n.15

OPM, Workforce Size and Composition ................................................... n.13

Virginia family sues school system for $30 million over student's sexual assault in bathroom, AP News .... n.9

YouGov (2024) Transgender Issues Survey ............................................. n.12

**INTRODUCTION**

On November 21, 2025, Plaintiff Leanne Withrow filed this class action seeking to compel federal agencies, including the United States Army, to allow males identifying as transgender to use women's restrooms and other single-sex[1] intimate spaces in federal facilities. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Administrative Procedure Act, challenging Executive Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025), and implementing agency policies that maintain biological sex-based restroom designations.

Proposed Defendant-Intervenor Jane Doe is a female civilian employee of the U.S. Army with nearly eighteen years of service. Declaration of Jane Doe ("Doe Decl.") ¶ 5. She seeks to intervene as a defendant to protect her concrete, particularized interests in safety, privacy, and dignity in single-sex facilities—interests directly threatened if Plaintiff prevails. While Jane Doe[2] shares the ultimate objective of upholding the Executive Order and agency policies with the named Defendants, her personal stake as a long-serving federal employee, military spouse, and survivor of sexual assault, combined with the government's potentially mutable institutional

---

[1] "Sex" as used throughout Defendant-Intervenor's submissions to this Court means "the fundamental distinction, found in most species of animals and plants, based on the type of gametes produced by the individual," and the resulting classification of human beings into those two reproductive classes: female (women and girls) or male (men and boys). *See* Sex, Male, and Female, Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health (7th ed. 2003), https://medical-dictionary.thefreedictionary.com.

[2] In addition to being represented by Sweigart Murdock, LLP, Doe is represented by Women's Liberation Front (WoLF), a non-profit radical feminist organization founded in September of 2013 whose mission is to "restore, protect, and advance the rights of women and girls," especially as it pertains to private single-sex spaces.

interests across administrations, demonstrates that existing parties may not adequately represent her unique interests. Intervention is therefore warranted as of right under Fed. R. Civ. P. 24(a), or alternatively as permissive intervention under Rule 24(b).

## FACTUAL BACKGROUND

Jane Doe is a 54-year-old woman who has been employed by the Department of the Army for almost eighteen years in various roles. Doe Decl. ¶¶ 3, 5. She is married to a member of the National Guard in the United States Army and resides in Virginia. Doe Decl. ¶ 4. Several members of her family have served in the Army, including a grandfather who served in World War II, a great-uncle who served in the Korean War, and a brother who was deployed to Iraq. Doe Decl. ¶ 6.

In her current role, which she has held for over six years, Jane Doe oversees intellectual property matters—including patents, trademarks, trade secrets, technical data, and licensed software—related to Army acquisitions. Doe Decl. ¶ 7. She was hired in 2019 as an Acquisition Policy Specialist; although her title changed in August 2023, her day-to-day responsibilities remained largely the same. Doe Decl. ¶¶ 8–9. Prior roles included Operations Officer (until 2019) and work in acquisitions (until 2023), with positions located in the Pentagon and the Taylor Building in Arlington, Virginia. Doe Decl. ¶¶ 7, 12.

Jane Doe views her work as a critical part of procuring equipment that keeps members of the armed forces—including her husband—safe so they can protect and defend the country. She genuinely enjoys her role, finds it a strong match for her skills in research and analysis, and considers it a significant contribution to the military's advancement. Doe Decl. ¶¶ 10–11.

2

Throughout her federal service, Jane Doe has relied on dedicated women's restrooms in federal buildings. She strongly believes that women's restrooms and private spaces in federal buildings should remain free from men. She experiences anxiety at the mere thought of encountering men in public restrooms and would refrain at all costs from using "all-gender" bathrooms out of concern for her safety and dignity. She is a modest person who values her privacy as part of her dignity and does not want men in her restroom. Doe Decl. ¶¶ 23–24, 26, 29.

Jane Doe is a survivor of sexual assault. This personal history heightens her concerns about male access to enclosed, intimate spaces reserved for women and makes her particularly vigilant about minimizing risk in such settings. Doe Decl. ¶ 28.

A concrete example illustrates the distress she experiences when single-sex facilities are unavailable. While visiting the University of Maryland (her alma mater) in a familiar academic building, she went to the floor where the women's restroom had previously been located, only to find it redesignated as an "all-gender" bathroom. She immediately retreated, encountered a men's room on the next floor and another "all-gender" restroom on the floor above, and—panicked because she urgently needed to urinate and would not risk disrobing in a space any man could enter—left the building entirely. She traveled to another building in the university center to find a single-sex women's restroom. Doe Decl. ¶ 25. She has also avoided situations that could expose her to men in women's private spaces, such as declining a Planet Fitness membership after seeing coverage of men entering women's locker rooms. Doe Decl. ¶ 27.

Jane Doe's work and personal life require regular access to federal buildings and military installations. Although she currently works remotely (enabled by her husband's recent three-year

3

active-duty commitment beginning in October 2025), she expects to attend in-person meetings, trainings, or other gatherings in federal office buildings from time to time—for example, a planned meeting in Arlington, Virginia, in September 2026. Doe Decl. ¶¶ 17–18. She has attended family days, ceremonies, and other events with her husband at installations including Aberdeen Proving Grounds and Fort Myer. Doe Decl. ¶¶ 21–22. If called back to full in-office work, the prospect of sharing restrooms with men would cause her extreme stress and anxiety. Doe Decl. ¶ 20.

Proposed Intervenor's fear of encountering unfamiliar men in enclosed, private spaces is self-protective and adaptive. There is extensive data supporting differences between men and women both in terms of size and physical strength,[3] and in rates of violent crime, specifically in committing sexual offenses.[4] According to FBI statistics, between March 2021 and March 2026, of the 546,914 rapes for which the sex of the perpetrator was recorded, 520,249 were committed by males and 26,665 by females, meaning a rapist was almost twenty times more likely to be man than to be a woman.[5] On the other hand, females are far more likely to be victims of rape than men. Of 586,832 documented rapes between March 2021 and March 2026, 520,650 victims were specified to be female.[6]

The numbers for all sexual assault are similarly lopsided. A widely cited statistic from the Department of Justice is that 91% of victims of rape and sexual assault are female and nearly

---

[3] *See* Independent Council of Women's Sports (ICONS), *Fast Facts*, https://iconswomen.com/wp-content/uploads/2023/04/Fast-Facts-Sports.png, *accessed on* April 21, 2026.
[4] *See, e.g.* F.B.I. Crime Data Explorer, https://cde.ucr.cjis.gov/LATEST/webapp/#/pages/explorer/crime/crime-trend (*fields for aggravated assault, homicide, and rape*).
[5] *Id.*
[6] *See id.*

99% of perpetrators are male.[7] Current FBI data bears out a stark contrast between the sexes of

perpetrators and victims of sex crimes. For example, in 2024, approximately 93% of perpetrators

of sexual assault and rape were male (where sex was reported) while over 85% of the victims

were female (where sex was reported).[8] There have been multiple widely reported accounts of

males using access to bathrooms and other single sex spaces to engage in voyeurism and to

record, expose themselves to, and assault females.[9]

There is no indication that a male assuming a transgender identity alters these general

trends. A thirty-year Swedish study of over 300 trans-identifying individuals found that

"regarding any crime, male-to-females had a significantly increased risk for crime compared to

female controls … but not compared to males …. This indicates that they retained a male pattern

---

[7] *Bureau of Justice Statistics*, U.S. Department of Justice. p. 3. NCJ-163392. (Archived) (PDF) from the original on 1 July 2015).

[8] *See* F.B.I. Crime Data Explorer, *supra*.

[9] For example: in Loudoun County, Virginia, a male used access to female bathrooms to rape a fellow student, *see Virginia family sues school system for $30 million over student's sexual assault in bathroom,* AP NEWS, *available at* https://apnews.com/article/loudoun-virginia-lawsuit-transgender-bathroom-sexual-assault-a26168568cc20c2aa6cec9bef50e7c3f (*accessed on* May 27, 2026); a civil rights complaint has been filed against public schools in Fairfax County, VA, for failure to take action against a boy entering girl's locker rooms to watch them undress, *see* Defense Freedom Institute, PRESS RELEASE: DFI Files Federal Civil Rights Complaint Against Fairfax County Public Schools for Authorizing a Boy to Repeatedly Use the Girls' Locker Room (September 24, 2025), *available at* https://dfipolicy.org/press-release-dfi-files-federal-civil-rights-complaint-against-fairfax-county-public-schools-for-authorizing-a-boy-to-repeatedly-use-the-girls-locker-room/ (*accessed on* May 27, 2026); and in a California women's only spa locker, a convicted sex offender exposed himself to women and at least one girl, *see* Alex Hammer, *Transgender 'pervert' is arrested 15 months after she 'exposed herself to women and girls at Wi Spa in LA' triggering violent protests from Antifa goons who branded allegations a bigoted hoax,* DAILY MAIL (December 9, 2022), *available at* https://www.dailymail.com/news/article-11555915/Transgender-pervert-arrested-15-months-exposed-women-Wi-Spa-LA.html (*accessed on* May 27, 2026). A list of incidents involving bathrooms has been compiled by the Family Research Council. *See* Family Research Council, *Bathroom Incidents, available at* https://downloads.frc.org/EF/EF16F27.pdf (*accessed on* May 27, 2026).

regarding criminality. The same was true regarding violent crime."[10] Multiple studies of prison populations have found trans-identifying incarcerated males commit sexual violence at markedly higher rates than other incarcerated males.[11]

Additionally, Proposed-Intervenor is not alone in her concerns. According to a February 2024 YouGov survey, a majority of Americans—and women in particular—support requiring transgender individuals to use bathrooms matching their sex rather than their gender identity.[12] Women make up a significant part of the Federal workforce. According to data published by the United States Office of Personnel Management, as of March 1, 2026, there are 2,028,138 employees in the Federal Civilian workforce in the Executive branch.[13] OPM reports that 45% of this workforce[14] is female.[15]

---

[10] *See* Dhejne C, Lichtenstein P, *et al.* (2011) *Long-Term Follow-Up of Transsexual Persons Undergoing Sex Reassignment Surgery: Cohort Study in Sweden.* PLOS ONE 6(2): 16885. https://doi.org/10.1371/journal.pone.0016885.

[11] *See* Aaron Kimberly, *Sex and Violence: What the Data on Trans Offenders Really Show,* REALITY'S LAST STAND (May 27, 2025), https://www.realityslaststand.com/p/sex-and-violence-what-the-data-on (*accessed on* April 21, 2026).

[12] YouGov (2024), *Do you think transgender people should use the bathrooms that correspond with their assigned sex at birth or with their current gender identity?;* https://yougov.com/en-us/daily-results/20241121-dddbb-, *accessed* April 21, 2026; *see also* YouGov (2024), *Transgender Issues,* https://d3nkl3psvxxpe9.cloudfront.net/documents/crosstabs_Transgender_Issues_Issues_20240216.pdf , *accessed* April 21, 2026.

[13] OPM, WORKFORCE SIZE AND COMPOSITION, https://data.opm.gov/explore-data/analytics/workforce-size-and-composition, *accessed on* April 21, 2026.

[14] The reported percentage of women varies significantly among the federal employers named as defendants in this lawsuit. For example, in 2019, the percentage of women in defendant Department of Health and Human Services exceeded 60%, while in defendant Department of Transportation that number was just 25.7%. The number for the Department of the Army in 2019 was 34.4%.[14]

[15] The data source does not reveal whether "female" includes males who identify as female or excludes females who identify as male. For this reason, the exact percentage of federal employees who are women is unclear. In 2014, before the explosion in transgender identification, OPM reported that approximately 43% of the federal civilian workforce was women. OPM WOMEN IN FEDERAL SERVICE (2014), https://www.opm.gov/fevs/reports/special-reports/women-

Jane Doe seeks to intervene as a defendant in this action to defend women's rights to private, single-sex spaces—particularly in the federal buildings where she works and visits in and around Washington, D.C. Her intervention will allow the Court to hear directly from a long-serving female federal employee and military spouse whose daily life, professional duties, and personal safety are directly implicated by the policies at issue.

## ARGUMENT

The Federal Rules of Civil Procedure authorize intervention as of right under Rule 24(a) or, alternatively, permissive intervention under Rule 24(b). As a female federal civilian employee who faces concrete, particularized, and imminent harm if Plaintiff prevails, Jane Doe satisfies the standards for intervention as of right. Her participation will ensure this Court hears directly from a member of the class most affected by Plaintiff's claims: women who rely on single-sex facilities in federal buildings for safety, privacy, and dignity. In the alternative, the Court should grant permissive intervention because Jane Doe represents the group most directly affected if Plaintiff prevails and her perspective will not otherwise be fully represented.

### I.      The Proposed Intervenor has Standing.

#### A.      Jane Doe Seeks to Intervene as a Defendant.

At the outset, we note that the Supreme Court has questioned the requirement to establish standing for some potential intervenors. The Court has acknowledged potential exceptions to the requirement to affirmatively argue standing where the proposed intervenor seeks identical relief

---

in-the-federal-service-a-seat-at-every-table-2014.pdf, *accessed on* April 21, 2026. Even if the exact percentage cannot be determined, these numbers indicate a significant number of women in federal civilian employment.

to the proposed Plaintiff and, similarly, where a proposed defendant intervenor stands in the same position as the named defendant. *See Town of Chester v. Laroe Estates,* 581 U.S. 433 (2017); *McConnell v. FEC,* 540 U.S. 93, 233 (2003) (finding where it was "clear … that the [named defendant] has standing," the Court "need not address the standing of the intervenor-defendants, whose position here is identical to the [named defendant's]"), *overruled on other grounds Citizens United v. FEC*, 130 S. Ct. 876 (2010); *see also Va. House of Delegates v. Bethune-Hill,* 587 U.S. __, 139 S. Ct. 1945, 1951 (2019) (distinguishing cases in which a proposed intervenor seeks to intervene as a defendant to argue alongside named defendants from cases in which the intervenor alone seeks to appeal a judgment. The Court noted that only in the latter cases does the intervenor "invoke[e]the court's jurisdiction," triggering the need to demonstrate standing.)

In *Town of Chester*, the Court wrote "at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the Plaintiff requests," *Chester* at 438, suggesting the requirement does not necessarily apply to a proposed intervenor like Jane Doe, who seeks no relief other than what the government seeks: namely, upholding of the Executive Order and Agency Implementation Actions. More to the point, in *McConnell* the Court found standing was implicit for defendant-intervenors because, like the FEC, the defendant-intervenors sought to defend the laws and raised no counterclaims against Plaintiffs. Jane Doe, who seeks to defend the policy of the Executive Order and Agency Implementation Actions as implemented by the U.S. Army mandating single-sex bathrooms in federal buildings, stands in the same position as the U.S. Army for purposes of determining standing. Under McConnell's reasoning, Jane Doe is presumed to have standing.

**B.    Jane Doe Has and Will Suffer Multiple Injuries in Fact.**

8

Here, the Court need not rely solely on any presumption of standing for defendant-intervenors because proposed intervenor Jane Doe's standing is plain. Like named litigants, those seeking to intervene in litigation must have a "case" or "controversy" under Article III. To affirmatively demonstrate standing, a litigant must show: (1) an "injury in fact" that is (2) traceable to conduct challenged in the case and (3) and can be redressed by the court. *See e.g., Spokeo, Inc. v. Robins*, *supra* at 338 (2016). Applying standing doctrine to defendant intervenors, the D.C. Circuit asks whether the proposed defendant-intervenor is in the same position as that of the named defendants and, independently of defendants, she would experience concrete injuries were Plaintiff to prevail. *See Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n,* 788 F.3d 312, 320 (D.C. Cir. 2015) ("[f]or standing purposes, it is enough that a Plaintiff seeks relief, which, if granted, would injure the prospective intervenor.")

Jane Doe's interest in this matter is imminent, particular, and individual. If Plaintiff prevails, she will lose access to intimate spaces in her workplace that are free from males. While we maintain that all federally employed women are entitled to single sex spaces, Jane Doe's history as a survivor of sexual assault removes any questions about the "particularity" and individual nature of the injury-in-fact she will suffer should Plaintiff's relief be granted. This injury-in-fact is sufficient on its own to confer standing. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (*quoting Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992)); *cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 421 (2021) (a "material risk of future harm can satisfy the concrete-harm requirement … so long as the risk of harm is sufficiently imminent and substantial.")

D.C. Circuit precedent further confirms Jane Doe's standing. The D.C. Circuit has recognized that where a defendant intervenor can show injury-in-fact from a successful ruling for

the Plaintiff, "it rationally follows" that the injury is traceable to the challenge and preventable by defeating the challenge. *Crossroads,* 788 F.3d at 316. This means Jane Doe need only establish an injury-in-fact from Plaintiff's victory; from that showing, the other standing criteria will "rationally follow."

Compelled use of mixed-sex bathrooms will cause multiple injuries-in-fact to Jane Doe, most notably: immediate anxiety and distress about the possibility that she will be compelled to use a mixed sex bathroom or to avoid bathroom use during the workday altogether; discomfort and potential health effects from avoiding bathroom use during the work day; imminent exposure to a heightened risk of violence, including sexual violence, from men in intimate spaces intended for women; and the affront to her dignity and privacy from having to tend to her intimate needs in the presence of men.

These are not hypothetical or generalized grievances. Jane Doe has already experienced the precise panic and dignitary injury she fears when single-sex facilities were unavailable (the University of Maryland incident), and that experience will be replicated daily in her workplace if Plaintiff prevails. Doe Decl. ¶¶ 25, 30. Exposure to the risk posed by males in the women's bathroom at work will cause Jane Doe deep distress. As the Supreme Court has written, when "exposure to the risk itself" constitute(s) "some other injury (such as an emotional injury)" there is an injury-in-fact. *See TransUnion LLC v. Ramirez*, 594 U. S. 413 (2021).

Apart from the anxiety and distress at the possibility of encountering a male in the women's restroom, and from having to avoid using the restroom during the workday, a victory for Plaintiff in this lawsuit will also expose Jane Doe to heightened risks of physical and sexual violence because of the simple, indisputable fact that men are more violent than women, and, due

10

to differences in physical strength, women are, on the whole, less able to defend themselves against such violent acts. Without the Executive Order and Agency Implementation Actions in place, any predatory male on the premises of a federal building can enter the isolated, enclosed space of any women's bathroom. This presents a real, elevated risk of harm to Jane Doe and other female federal employees.[16]

Finally, should plaintiff prevail, Jane Doe will suffer the injury-in-fact of the affront to her dignity and privacy of having to relieve herself and tend to personal hygiene in a women's room that men can enter at will. Courts have recognized that sex-segregated bathrooms and other intimate spaces are critical to the right to bodily privacy. "[S]hield[ing] one's unclothed figure from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Jones v. Critchfield*, 803 F. Supp. 3d 1078, 1091 (D. Idaho August 23, 2025), *citing Byrd v. Maricopa Cnty. Sheriff's Dep't.*, 629 F.3d 1135, 1141 (9th Cir. 2011).  The *Jones* decision further noted that separating restrooms by biological sex to reflect such privacy goals has been common for centuries. *Id.*

The need for sex-segregated intimate spaces to preserve the interests of both sexes—but especially women—in dignity and privacy has long been considered so fundamental as to need neither explanation nor defense. The historical recognition of the need for sex-segregated spaces provides precisely the kind of "close historical or common-law analogue for [an] asserted injury" needed to establish standing. *TransUnion*, 594 U.S. at 425. To deprive Jane Doe of such spaces would plainly constitute an injury-in-fact.

---

[16] *See, e.g.* F.B.I. Crime Data Explorer, *supra* n.**Error! Bookmark not defined.**.

11

The injuries Jane Doe would suffer from being compelled to use mixed-sex bathrooms are similar in kind to those Plaintiff alleges from being compelled to use the single-sex men's restroom. If the alleged harms to Plaintiff—a man—from using the men's restroom are sufficient to confer standing, then the harms to Jane Doe—a woman—from being compelled to use a bathroom open to men at her workplace (including anxiety, diminished physical safety, discomfort, and intrusions on her dignity and privacy) likewise constitute concrete "injuries in fact" sufficient for standing.

In *Crossroads,* the court held that a defendant-intervenor like Jane Doe who seeks to defend agency action can establish standing by showing that she "benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the . . . benefit." 788 F.3d at 317. That is clearly the case for Jane Doe: because of the Executive Order, she now benefits from knowing her safety, dignity, and privacy will not be infringed by male use of the women's bathrooms of federal office buildings; that Order has been challenged in this lawsuit; and should Plaintiff prevail in this lawsuit, the benefit will be lost, causing a host of injuries-in-fact that more than suffice to establish her standing to join this case as a defendant-intervenor.

## II.    The Proposed Intervenor is Entitled to Intervention as a Right.

Once standing has been established, intervention must be granted "as a right" when a proposed intervenor meets the criteria established by Rule 24(a)(2). Thus, a court must allow intervention when: (1) the motion is timely; (2) the proposed intervenor "claims an interest relating to the property or transaction which is the subject of the action" that may be impaired by the litigation; and (3) the proposed intervenor's interest is not "adequately represented by

existing parties." *Fund for Animals, Inc. v. Norton*, 322 F. 3d. 728, 731-32 (D.C. Cir. 2003). To ensure legal rights and interests of those affected by litigation but not parties to it are heard, these criteria are liberally construed to favor intervention. *See, e.g.*, *S. D.* ex rel. *Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003) ("Rule 24 should be liberally construed with all doubts resolved in favor of the proposed intervenor.")  Jane Doe's motion readily meets these criteria.

### A.  The Motion to Intervene is Timely.

In considering the timeliness of a motion to intervene, courts weigh the time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicants' rights, and the probability of prejudice to those already parties.  *Southern Utah Wilderness Alliance v. U.S. Dep't of Interior*, 2025 WL 1743939, at *3 (D.D.C. June 24, 2025).

There can be no serious argument that the proposed intervenor's motion is untimely. Plaintiff filed the complaint on November 20, 2025. The Order granting a briefing schedule was issued on January 16, 2026, and Defendants' filed their Motion to Dismiss on March 13, 2026. The Court had granted named Defendants multiple extensions and Jane Doe's motion is filed before any substantive rulings at an early state of this case. Intervention will not prejudice existing parties. Jane Doe informed the Parties of her imminent request to intervene on June 11, 2026. Current Defendants responded that they take no position on Jane Doe's request, and Plaintiff did not respond with his position.

As to the purpose of the motion, Jane Doe seeks intervention to protect her rights—and the rights of women like her—from male intrusion into physical spaces reserved to women.

13

Intervention is necessary to protect these rights; a change in Administration could change the interests of the government, but the interests of Jane Doe and women like her in safety, privacy, and dignity will remain. Intervention will cause no prejudice to the parties. It will simply require Plaintiff to address head-on the injury he seeks to inflict on women who use federal facilities.

### B.  The Proposed Intervenor Has an Interest in the Matter That May Be Impaired Without Intervention.

The potential injury to Jane Doe as a female federal employee makes her interest in this matter clear and direct. As a female federal employee, she has an interest in maintaining single sex bathrooms in federal buildings to protect her safety, privacy, and dignity. This interest will be fully lost by an adverse ruling.

The interests that support Jane Doe's standing also support intervention as of right. This Court has held that a party has an interest to support intervention as a right "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefits." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015); *Military Toxics Project v. EPA,* 146 F.3d 948 (D.C. Cir. 1998). That is precisely the case here: Jane Doe benefits from the Executive Order and associated agency policy that precludes male intrusion into female bathrooms in federal buildings, and that benefit would be lost by granting Plaintiff the relief he seeks.

### C.  Existing Parties Do Not Adequately Represent Intervenor's Interests.

Defendants have filed a Motion to Dismiss arguing that Plaintiff lacks standing to sue as to all but one of the named defendants, that venue is improper as to the remaining defendant, and that Plaintiff fails to state a claim upon which relief can be granted. Only in the context of the

14

last argument does the government address the issues of safety, privacy, and dignity in single-sex bathrooms that are central to intervenor's case, and the government has not as yet argued the increased risk to women of experiencing sexual violence and harassment due to the presence of males in their intimate spaces. Plaintiff repeatedly contends that his use of women's restrooms in federal buildings has been without issue or incident. Dkt. 6, ¶ 4, 13, 177. Jane Doe is uniquely positioned to challenge these assertions. Where the government argues only that Plaintiff fails to state a ground for relief because Title VII does not mandate mixed-sex bathrooms, Jane Doe can attest to the fundamental harm to women of interpreting the word "sex" to include gender identity, the effect of such interpretation in subverting civil rights statutes intended to address the "severe and pervasive" discrimination historically experienced by women, *see United States v. Skrmetti,* No. 23–477, Slip Op. at 20 (June 18, 2025) (Alito, J., concurring), and the consequence of making advocacy for women impossible.

Further, Administrations change. In 2016, the Obama Administration issued a bulletin that amounted to a subregulatory action to displace sex with "gender identity" across a vast swath of facilities under federal "jurisdiction, custody, or control" and thus allow, among other things, male access to female bathrooms in federal office buildings.[17] On his first day in office, President Trump issued the Executive Order recognizing two sexes and directing agency heads to issue policies consistent with the Executive Order. Dkt. 6, pt. 157-167. Policy could change again with a new administration, potentially leading the named defendants to withdraw from the litigation or alter their position. Jane Doe's right to privacy and need for physical safety,

---

[17] *See Federal Management Regulation; Nondiscrimination Clarification in the Federal Workplace,* 81 Federal Register 55148 (August 18, 2016) (announcing, without notice and an opportunity for public comment, that denying trans-identifying people access to bathrooms in federal buildings designated for the opposite sex is discrimination).

15

however, will remain. Intervention must be granted to ensure this enduring interest is heard by the Court.

### III.    Alternatively, the Proposed Intervenor Should be Granted Permissive Intervention.

Jane Doe also satisfies the standard for permissive intervention, which requires, besides an independent ground for subject matter jurisdiction, only that the motion to intervene be timely and have a common question of law or fact with the main action. *See* Fed. R. Civ. P. 24(b); *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Permissive intervention "is an inherently discretionary enterprise" that affords the Court "wide latitude." *Id*. "This broad discretion allows the Court to consider 'almost any factor.'" *See Tirrell v. Edelblut*, No. 24-cv-251-LM-TSM, 2025 WL 1939965, at *4 (D.N.H. July 15, 2025) (*quoting Daggett v. Comm'n on Gov't Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999)).

The motion readily meets these requirements. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and "[i]n federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant[.]" 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1917 (3d ed. 2010) ("In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant[.]") Moreover, as demonstrated above, the motion is timely, filed before any rulings from the court and before the initiation of discovery.

Lastly, the proposed intervenor's defenses share common questions of law or fact with the main action. To establish a common question of law, it is sufficient that "movant[] seek[s] to defend" the agency's decision. *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331

16

F.R.D. 5, 14 (D.D.C. 2019). Plaintiff seeks to overturn the Executive Order which requires parties to use the restroom which corresponds with their biological sex, as observed at birth. The proposed intervenor, like the named defendants, intends to defend the Executive Order and maintain the sex-segregated spaces women rely on to maintain their bodily privacy, safety and protect their dignity.

Fed. R. Civ. P. 24(b)(3) also requires the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Given the early stage of litigation, there is no prejudice to Plaintiff. Intervention will simply require Plaintiff to address the claims of an affected party who otherwise will not be heard from directly. Indeed, allowing intervention here will "serve[ ] the interests of justice as well as judicial economy" by ensuring the Court hears from a female federal employee, a member of the group most directly affected by Plaintiff's quest to allow male access to women's intimate spaces. *See EEOC v. Nat'l Children's Center*, 146 F.3d at 1046.

## CONCLUSION

For the foregoing reasons, the Court should grant the Proposed Intervenor's motion to intervene as of right under Fed. R. Civ. P. 24(a), or alternatively grant permissive intervention under Rule 24(b).

> Respectfully Submitted,
>
> /s/ *Karin M. Sweigart*
> Karin M. Sweigart
> (Bar #CA00145)
> Sweigart Murdock, LLP
> 1160 Battery Street, Suite 100
> San Francisco, California 94111
> Telephone: (415) 873-0123

17

Facsimile: (873) 890-0791
Email: Karin.Sweigart@sm-llp.com

Nancy K. Stade (D.D.C. Bar No. 471601)
Women's Liberation Front
1930 18th Street NW,
Suite B2 #2036
Washington, DC 20009
boardtreasurer@womensliberationfront.org

*Counsel for Proposed Defendant-Intervenor*

18